UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| **Matthew Couch,**<br><br>    Plaintiff,<br><br>v.<br><br>**Verizon Communications, Inc.,**<br>**Michael Isikoff,**<br>**National Public Radio, Inc.,**<br>**Aaron Rich,**<br>**Deborah Sines,**<br>**Joe Capone,**<br>**and**<br>**Mark Mueller,**<br><br>    Defendants. | **Case No. 20-cv-02151-RJL**<br><br>**Oral Argument Requested** |

**OPPOSITION TO MOTION TO DISMISS AND CROSS-MOTION FOR ORDER EXTENDING SERVICE DEADLINE TO NOVEMBER 6, 2020 AND DECLARING SERVICE EFFECTIVE *NUNC PRO TUNC***

EDEN P. QUAINTON, ESQ. (DC Bar No. NY0318)
DUNNINGTON, BARTHOLOW & MILLER LLP
230 Park Avenue, 21st Floor
New York, New York 10169
Tel: (212) 682-8811
Fax: (212) 661-7769
E-mail: equainton@dunnington.com
*Attorneys for Plaintiff Matthew Couch*

**PRELIMINARY STATEMENT**

Plaintiff Matthew Couch ("Plaintiff" or "Couch") submits this memorandum of law in opposition to the Motion to dismiss the Complaint pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure of Defendant National Public Radio, Inc. ("NPR" or "Defendant") and in support of his cross-motion pursuant to Fed. R. Civ. P. 4(m) for an Order extending the time to serve by two (2) days to November 6, 2020 and declaring service effective *nunc pro tunc*. The two (2) day extension is warranted, *inter alia*, given the impediments posed by the COVID-19 pandemic; the lack of prejudice to NPR; and the preference for resolving cases on the merits.

This case arises out of the unconscionable "piling on" of elements of the liberal media against Plaintiff, a conservative Internet personality and supporter of Donald Trump. As this Court knows, Plaintiff was sued in March 2018 by Aaron Rich for allegedly defamatory statements relating to the leak of DNC emails to Wikileaks in the spring/summer of 2016. *See Rich v. Butowsky, et al.*, 18-cv-0681 (the "Butowsky Litigation"). This Court recently referred the Butowsky Litigation to mediation. Dkt. 18-cv-0681, Minute Order, dated November 17, 2020.

The proponents of the view that any discussion of the possible links between Seth Rich and Aaron Rich and Wikileaks was a "conspiracy theory" were not content to let the Butowsky Litigation play out. Rather, led by one of the most prominent true conspiracy theorists in the country, Michael Isikoff, perhaps best known for promoting the theory that Donald Trump colluded with Russia to interfere in the 2016 election, the hyper-partisan liberal media sought to tar Plaintiff as a demonic villain conjuring up "Internet hordes" from the depths of Lake Ozark to bully and harass innocent victims, engaging in despicable acts such as placing mass murderer Jeffrey Dahmer's head on a widely circulated image of a Seth Rich murder witness and

promoting the outrageous claim that Plaintiff had accused bartender Joe Capone of secretly colluding with Hillary Clinton to murder Seth Rich.

None of these scurrilous accusations has the remotest basis on fact. The attacks are simply conjured up out of whole cloth to create a fictitious Ozark monster preying on the weak and seeking to destroy democracy with "fake news" of the most despicable kind, thus driving traffic to the Yahoo! website on which Mr. Isikoff disseminated his smears on Couch. The attacks to which Plaintiff has been subjected are reminiscent of the "yellow journalism" of the later 19th and early 20th century, designed to sell copy with lurid, sensationalist tales and little regard for the victims of their lies. *See, e.g.*, B. Griffin, *Yellow Journalism, Sensationalism, and Circulation Wars, The Fourth Estate: Journalism in North America*, Cavendish Square Publishing (2018). Although it peddles the myth that is "neutral" and "non-partisan," NPR has in fact demonstrated the same animus towards Donald Trump and his supporters as the mainstream liberal media. Notably, without exercising any due diligence and in reckless disregard of minimal editorial standards, NPR gave conspiracy theorist Michael Isikoff a platform to smear and slander Plaintiff and promote Mr. Isikoff's insane and utterly baseless allegations.

Instead of attempting to address its substantive involvement in the scurrilous attacks on Plaintiff, NPR has instead sought to dismiss Plaintiff's Complaint because of a two-day delay in service in the middle of the Covid pandemic. For the reasons described in more detail below, there was "good cause" for Plaintiff's two-day delay in service. At the time the Complaint was filed, Plaintiff's counsel was a solo practitioner relying on an older paralegal with health challenges and limited availability in the context of a global pandemic. In addition to juggling constantly changing schedules upended by the pandemic, Plaintiff's counsel was also facing family health issues. In the middle of the pandemic, Plaintiff's counsel then transitioned to a larger firm that was also facing staffing and administrative challenges. These mitigating

circumstances surrounding the slight two-day delay provide a valid reason for a finding of "good cause."

However, even if the Court declines to find "good cause" for the two-day delay, the present circumstances – which include the Covid pandemic, the current staffing and administrative challenges faced by law firms of all sizes, the potential substantive foreclosure of relief for Plaintiff, the absence of prejudice to Defendant, the increased burden on the parties and the Court from a dismissal when Plaintiff's defamation action could possibly be re-plead as a false light invasion of privacy, and the potential impact on the mediation and settlement of the Butowsky Litigation – warrant the exercise of the Court's discretion to excuse the slight delay in service and permit the case to proceed to the merits.

## FACTS

This case was timely commenced on August 6, 2020. Dkt. 1. Defendant NPR was served on November 6, 2020 and proof of service was filed on November 24, 2020. Dkt. 25. In between the filing of the Complaint and service, Plaintiff's counsel transitioned from a solo practice to a new firm. Declaration of Eden P. Quainton dated December 8, 2020 (the "Quainton Decl.") ¶ 7.

## LEGAL ARGUMENT

### I.   APPLICABLE STANDARD

As a threshold matter, when a defendant moves to dismiss under Rule 12(b)(5), the plaintiff must show that the procedure employed for service satisfied the relevant portions of Fed. R. Civ. Pro. Rule 4(m) and other applicable law. *Robinson v. Ergo Sols., LLC*, 10 F. Supp. 3d 157, 160 (D.D.C. 2014). In the event of a delay in service of process, Rule 4(m) provides that the court "must" extend the deadline for service upon a showing of "good cause." If the plaintiff cannot show "good cause" the Court may nonetheless exercise its discretion to excuse the delay.

In the DC Circuit, Rule 4(m) has been interpreted to give courts discretion to extend the time even where good cause is not shown. *See Doe v. Hills*, 217 F. Supp. 3d 199, 204–05 (D.D.C. 2016); *Mann v. Castiel*, 681 F.3d 368, 375–76 (D.C. Cir. 2012) ("The Advisory Committee note for Rule 4(m) instructs that the district court has discretion to extend the time for effecting and filing proof of service even if the plaintiff fails to show 'good cause.' "); *Johnson v. Ashcroft*, No. 04-1158 (RMU), 2005 WL 2073752, at *3 (D.D.C. Aug. 17, 2005); *see also* 4B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1137 (4th ed. 2016) ("[T]he overwhelming majority of federal courts and *dicta* from the Supreme Court embrace the view that a district court has discretion ... to allow a plaintiff to cure a defect in service of process even in the absence of good cause.")

## II.   THE COURT SHOULD EXCUSE PLAINTIFF'S TWO-DAY DELAY IN SERVING NPR

### A.   There Was No Defect in the Procedure Employed for Service.

In the present case, NPR does not even attempt to argue that there was a defect in the procedure employed for service. This fact alone serves to distinguish the cases on which NPR principally relies, *Morrissey v. Wolf*, 333 F.R.D. 1 (D.D.C. 2019) and *Colston v. First Guarantee Commercial Mortgage Corp.*, 665 F. Supp. 2d 5 (D.D.C. 2009).[1] In both of these cases, in addition to delay, there was a substantive defect in service. In *Morrisey*, not only did the plaintiff ignore an express order of the court, the plaintiff also failed to comply fully with the substantive requirements for service on a government official by failing to serve the relevant U.S. attorney or the Attorney General. *Morrissey*, 333 F.R.D. at 3. In *Colston*, the plaintiff argued that because the defendant did not maintain a registered agent for service of process in the District of

---

[1] *Morrisey v. Wolf* is currently on appeal, Appellate Case No. 20-5024.

Columbia, she had good cause for her failure to effect service in a timely fashion. *Colston* 665 F. Supp. at 9 (D.D.C. 2009). However, the relevant D.C. statute provided for service on the Mayor of D.C. in the event a corporate defendant does not maintain a registered agent, and plaintiff failed to serve the defendant under that statute for over four <u>months</u>. *See Colston* 665 F. Supp. at 10; Case No. 09-cv-0776 Dkt 1, Dkt. 13 (showing a lapse of four months from the time the court found plaintiff should have effected service on the mayor to the filing of defendant's motion to dismiss). The absence of any substantive defect in service reduces this case to the question of whether a non-prejudicial two-day delay in the middle of the Covid pandemic should substantively bar a good faith plaintiff from pursuing his case on the merits.

    B.    <u>There is Good Cause for Granting a Two-Day Extension of the Time to Effect Service</u>.

NPR makes much of Plaintiff's acknowledgement that there was a "miscalendering" of the date for service, which resulted in November 6, not November 4 being entered in counsel's litigation calendar. *See* Defendant National Public Radio's Motion to Dismiss Plaintiff's Complaint ("Def's Mot. Dismiss") at 3, 5, 6. However, Defendant deliberately distorts the telephonic conversation between counsel in which Plaintiff's counsel provided greater background to the calendaring issue. According to Defendant, all Plaintiff's counsel stated was that "everything takes longer" as a result of Covid and moving to a new firm "meant working with a new paralegal." But Plaintiff's counsel's time sheets reflect that counsel engaged in telephone conversations discussing 12(b)(5) and 12(b)(6) lasting well over an hour. Quainton Decl. ¶ 5. During those conversations, counsel explained that prior to joining his current firm, he was a solo practitioner who shared a paralegal with another attorney based in New Jersey. Quainton Decl. ¶ 7. This paralegal is 64 years old, suffers from health issues and was limiting his interactions with other attorneys as a result of the pandemic. Quainton Decl. ¶ 8. Counsel also

stressed that the Covid pandemic was causing great disruption to timetables for practitioners and courts. Quainton Decl. ¶ 9. This statement was not controversial. As the Court well knows, as a result of the Covid pandemic, timetables generally were slipping on a host of matters. Both courts and law firms were struggling to meet deadlines and organize their cases in the context of staffing shortages, lack of in person contact, transition to remote law practice and case administration, and the ripple effect of delays in one case causing delays in others. Indeed, the D.C. courts have tolled statutes of limitations as a result of the Covid "emergency." https://www.dccourts.gov/sites/default/files/matters-docs/General%20Order%20pdf/Amended-Order-6-19-20-FINAL.pdf. The District Court has issued a series of rulings regarding the COVID pandemic, including excusing the Marshall Service from completing service. *See* https://www.dcd.uscourts.gov/coronavirus-covid-19-response-information-and-announcements.

This was a time of great confusion generally, for attorneys, judges and members of the public, and juggling the personal and the professional was particularly difficult. Counsel's son, who suffers from a rare condition known as congenital adrenal hyperplasia, was set to begin his college career in Oregon but returned to New Jersey to undergo surgery, itself a process made more complicated by the effects of the pandemic on the provision of medical care. Quainton Decl. ¶ 10 and Quainton Decl., Ex. A. While counsel did not raise this issue in discussions with opposing counsel, it was an issue he had previously brought to the attention of the Southern District of New York in connection with a separate calendaring issue, in which the relief sought was granted by the Court. Quainton Decl. ¶ 11.

Against this backdrop, Plaintiff's counsel moved to a new firm, effective October 1, 2020 and transitioning files from an older paralegal to a new team, also largely working remotely and with its own staffing challenges, made the normally routine process of monitoring and checking

filing and service dates far more complex than under normal, non-pandemic, non-"emergency" circumstances. Quainton Decl. ¶ 13. Defendant's counsel brought none of these issues to the attention of the Court and reduced Plaintiff's counsel's lengthy discussion of the challenges he faced to a few cartoonishly simple statements. Def's Mot. Dismiss at 6.

Plaintiff's counsel does not deny that, at the end of the day, he was the attorney ultimately responsible for the two-day delay in filing. However, Plaintiff submits that the overall context of pandemic-related disruption to law practice, related staffing and health issues, the challenges of juggling multiple cases with moving deadlines, and the difficulty of changing firms in a time of a generalized disruption of legal practice, there is "good cause" for the two day delay in effecting service on NPR. Defendant's reliance on *Mann v. Castiel*, *supra* at 5, in this context is misplaced. Def's Mot. Dismiss at 5. Under *Mann*, a wholly "external obstacle" to service is a sufficient, but not necessary, requirement for a showing of good cause; rather *Mann* requires that plaintiff present a "valid reason" to benefit from the mandatory extension under Rule 4(m). *Mann*, 681 F.3d at 375. As this Court has held, such a reason is present, where, as here, there are "understandable mitigating circumstances." *Jewell v. BestBus Co.*, 319 F. Supp. 3d 323, 325 (D.D.C. 2018). "Good cause" for the two-day delay is present under the mitigating circumstances described above.

    C.    <u>The Court Should Exercise its Discretion to Excuse Plaintiff's Two-day Delay in Service</u>.

As discussed above, even in situations in which a mandatory extension of the service deadline is not warranted, courts have broad discretion to extend the deadline for service of process. *See supra* at 4-5. The U.S. Supreme Court has stated that that under Rule 4(m) "courts have been accorded discretion to enlarge the [service] period even if there is no good cause shown." *Henderson v. United States*, 517 U.S. 654, 662 (1996) (internal quotations omitted). In

accord with *Henderson*, most of the circuits that have considered the issue have decided that good cause need not be shown. *Zapata v. City of New York*, 502 F.3d 192, 196 (2d Cir. 2007); *Horenkamp v. Van Winkle & Co.*, 402 F.3d 1129, 1133 (11th Cir. 2005); *Mann v. Am. Airlines*, 324 F.3d 1088, 1090 (9th Cir. 2003); *Panaras v. Liquid Carbonic Indus. Corp.*, 94 F.3d 338, 340-41 (7th Cir. 1996); *Adams v. AlliedSignal Gen. Aviation Avionics*, 74 F.3d 882, 887 (8th Cir. 1996); *Thompson v. Brown*, 91 F.3d 20, 21 (5th Cir. 1996); *Espinoza v. United States*, 52 F.3d 838, 841 (10th Cir. 1995); *Petrucelli v. Bohringer & Ratzinger*, 46 F.3d 1298, 1305 (3d Cir. 1995).

In exercising its discretion, the Court should consider the full range of equitable factors in evaluating Plaintiff's two-day delay in serving the Complaint on Defendant. As a general matter, there is a strong jurisprudential preference in the D.C. Circuit, as in courts around the country, for "adjudication of cases on their merits." *See Ciralsky v. CIA,* 355 F.3d 661, 674 (D.C.Cir.2004). While effective service of process is necessary for the Court to exercise jurisdiction, both the text of Rule 4(m) and the discretion provided to the courts to fashion appropriate remedies testify to the general jurisprudential preference for adjudication of cases on the merits, particularly in the context of a *de minimus* delay in service.

In deciding whether an omission is "excusable," the Court must consider a range of factors, including "(1) the danger of prejudice to the party opposing the modification, (2) the length of delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith." *Arora v. Buckhead Family Dentistry, Inc.*, 263 F. Supp. 3d 121, 132 (D.D.C. 2017).

Here, there is no material prejudice to NPR. Defendant argues that it would face "severe" prejudice because it would have to defend a case on the merits that may be time-barred. Def's

Mot. Dismiss at 7. This argument rings hollow and is contrary to the weight of authority in the D.C. Circuit and other Federal courts. Most courts that have considered the issue have concluded that the running of a statute of limitations is an equitable factor that cuts <u>against</u> defendants and in favor of the party seeking additional time for service. *Mann v. Castiel*, 729 F. Supp. 2d 191, 198 (D.D.C. 2010) (relief from dismissal may be justified if the applicable statute of limitations would bar a refiled action); *Rogers v. Amalgamated Transit Union Local 689*, 115 F. Supp. 3d 76, 80 (D.D.C. 2015)(exercising discretion to extend period for service and thereby continuing to toll statute of limitations that would otherwise have run); *see also Beauvoir v. U.S. Secret Serv.*, 234 F.R.D. 55, 58 (E.D.N.Y. 2006)("courts have consistently considered the fact that the statute of limitations has run on a plaintiff's claim as a factor favoring the plaintiff in a Rule 4(m) analysis [and] this factor alone may be sufficient to justify extending the time for service")(internal quotations and citations omitted); *Boley v. Kaymark*, 123 F.3d 756, 759 (3d Cir. 1997)("district courts have consistently interpreted Rule 4(m) in the same way, treating the running of the statute of limitations as a factor favoring the plaintiff and not as a basis for potential prejudice to the defendant"). As the Court in *Boley* put it:

> ***We conclude that while the running of the statute of limitations is a factor supporting the discretionary granting of an extension of time to make service under Rule 4(m), it is not a factor that standing alone supports a finding of prejudice to the defendant***. As stated by one district court, prejudice involves impairment of defendant's ability to defend on the merits, rather than foregoing such a procedural or technical advantage.

*Id. (*emphasis added*)(*internal citations omitted*).*

Similarly, the D.C. Court of Appeals has held that where a dismissal without prejudice was, in effect, a dismissal with prejudice due to the running of the statute of limitations, the prejudice should weigh in favor of the movant seeking more time. *Gibson v. Freeman*, 941 A.2d 1032, 1035 (D.C. 2008). Here there is no dispute that the claim against NPR was timely filed for purposes of the statute of limitations. Once a complaint is filed, the statute of limitations is tolled

unless and until the district court dismisses the action. *Mann v. Am. Airlines*, 324 F.3d at 1090. Because Plaintiff's claims were timely asserted and the delay in service was a mere two days, any prejudice analysis clearly cuts in Plaintiff's favor.

In addition, a dismissal here would likely only <u>increase</u> the burden on NPR (and the Court), as Plaintiff's claims can plausibly be re-plead as false light invasion of privacy claims. Under D.C. law, false light invasion of privacy claims are subject to a three-year statute of limitations. *Conejo v. Am. Fed'n of Gov't Emps., AFL-CIO*, 377 F. Supp. 3d 16, 28 (D.D.C. 2019)("for false light invasion of privacy, the statute of limitations is three years"). Even if Defendant argues for a different statute of limitations, there is sure to be litigation over the meaning and application of *Conejo*, which will be far more burdensome than simply filing the substantive motion NPR contemplates.[2] Finally, none of the other Defendants who were served on November 6, 2020 have raised the issue at this time, even while seeking extensions of time to respond to the Complaint. *See* Minute Orders granting extensions of time, dated November 25, 2020 and Dkt. 36 (joint motion of Verizon Defendants to further extend time answer). If Plaintiff's two-day delay in serving Plaintiff's Complaint caused such "severe" prejudice, one would have expected the four other Defendants, which include a sophisticated corporation, to have filed Rule 12(b)(5) motions rather than seeking to delay their time to respond. The fact that not a single Defendant even raised this issue in discussions with counsel illustrates the self-serving and unconvincing nature of NPR's "severe" prejudice.

---

[2] Counsel for NPR spent significant time arguing that Plaintiff should voluntarily dismiss its case because, according to NPR, it would easily prevail on a motion to dismiss as a substantive matter. Quainton Decl. ¶ 5. If the law is as clear as NPR has maintained, it would be much easier for NPR to file a Rule 12(b)(6) motion than to argue against the plain language of *Conejo*.

unless and until the district court dismisses the action. *Mann v. Am. Airlines*, 324 F.3d at 1090. Because Plaintiff's claims were timely asserted and the delay in service was a mere two days, any prejudice analysis clearly cuts in Plaintiff's favor.

In addition, a dismissal here would likely only <u>increase</u> the burden on NPR (and the Court), as Plaintiff's claims can plausibly be re-plead as false light invasion of privacy claims. Under D.C. law, false light invasion of privacy claims are subject to a three-year statute of limitations. *Conejo v. Am. Fed'n of Gov't Emps., AFL-CIO*, 377 F. Supp. 3d 16, 28 (D.D.C. 2019)("for false light invasion of privacy, the statute of limitations is three years"). Even if Defendant argues for a different statute of limitations, there is sure to be litigation over the meaning and application of *Conejo*, which will be far more burdensome than simply filing the substantive motion NPR contemplates.[2] Finally, none of the other Defendants who were served on November 6, 2020 have raised the issue at this time, even while seeking extensions of time to respond to the Complaint. *See* Minute Orders granting extensions of time, dated November 25, 2020 and Dkt. 36 (joint motion of Verizon Defendants to further extend time answer). If Plaintiff's two-day delay in serving Plaintiff's Complaint caused such "severe" prejudice, one would have expected the four other Defendants, which include a sophisticated corporation, to have filed Rule 12(b)(5) motions rather than seeking to delay their time to respond. The fact that not a single Defendant even raised this issue in discussions with counsel illustrates the self-serving and unconvincing nature of NPR's "severe" prejudice.

---

[2] Counsel for NPR spent significant time arguing that Plaintiff should voluntarily dismiss its case because, according to NPR, it would easily prevail on a motion to dismiss as a substantive matter. Quainton Decl. ¶ 5. If the law is as clear as NPR has maintained, it would be much easier for NPR to file a Rule 12(b)(6) motion than to argue against the plain language of *Conejo*.

Second, the two-day delay here is truly *de minimus*. Courts have frequently excused greater delays. *Arora*, 263 F. Supp. 3d at 129, 131(lapse of fifteen days, standing alone, insufficient to merit dismissal of action); *Escalante v. Tobar Constr., Inc.*, No. 8:18-CV-00980-PX, 2019 WL 109369, at *5 (D. Md. Jan. 3, 2019)(granting motion to extend time to serve where 34-day delay would cause no prejudice even though it would require defense of otherwise time-barred claim); *Para v. Nicholson*, No. 06-CV-6492T, 2009 WL 1076314, at *1 (W.D.N.Y. Apr. 21, 2009)(denying motion to dismiss where delay in service was *de minimius*). Cases in which delay alone was used to justify dismissal generally involve **_substantial_** delay and a substantial period of neglect. *See, e.g., Garlington v. D.C. Water & Sewer Auth.,* 303 F.R.D. 417, 419 (D.D.C.), *on reconsideration*, 62 F. Supp. 3d 23 (D.D.C. 2014)(dismissing case after plaintiff failed to effect service within 190 days of filing complaint, after two court-ordered extensions and authorization to effect service by a US marshal).

Third, the reasons for the delay have been discussed in detail above. While counsel has forthrightly admitted his error, the Covid pandemic, the related staffing and practical difficulties counsel faced, and the personal and professional circumstances surrounding the delay were, to a significant degree, outside counsel's "reasonable control." *See supra* at 6-8.

Fourth, there is no suggestion that counsel acted in anything other than good faith, both in effecting service and in communicating with opposing counsel.

Beyond those discussed in *Arora* above, other equitable factors weigh in favor of excusing Plaintiff's two-day delay in effecting service. As noted, failure to extend the deadline for service and dismissal of the lawsuit would likely only increase the burden on Defendant and the Court, as Plaintiff could conceivably re-plead his cause of action to come within the three-year statute of limitations for false light invasion of privacy applicable under D.C. law. *See supra* at 11. Such a result does not make sense. In addition, this Court has recently referred the

Butowsky Litigation to mediation. *See supra* at 1. All of the Defendants, with the exception of Aaron Rich, were served on November 5 or 6, 2020. Quainton Decl. ¶ 15; Dkt. 22-26. However, counsel for Mr. Rich waived service of Summons and accepted service as of November 4, 2020. Quainton Decl. ¶ 16. As the Court knows, Mr. Rich's address is confidential and, as a result, service could only be effected with the consent of counsel and waiver of service of a summons. Quainton Decl. ¶ 17. Counsel had provided the Complaint in the manner requested by Mr. Rich's attorneys. Quainton Decl. ¶ 18 and Ex. B.

As a result of the foregoing, if the Court were to find that Plaintiff did not have good cause for his two-day delay and if the Court otherwise did not excuse the delay in the exercise of its discretion, Plaintiff's claim could be time-barred against all Defendants *except* Aaron Rich. Without entering into the substance of any settlement discussions, it is readily apparent that limiting Plaintiff's recourse to Aaron Rich would greatly complicate settlement negotiations. Plaintiff respectfully submits that the Court should consider the overall Wikileaks-related litigation and should conclude that excusing a two-day delay under the totality of the circumstances would constitute a reasonable and judicious exercise of its discretion.

### CROSS MOTION FOR ORDER EXTENDING SERVICE DEADLINE TWO DAYS TO NOVEMBER 6, 2020 AND DECLARING SERVICE EFFECTIVE *NUNC PRO TUNC*

For the reasons set forth above, Plaintiff respectfully requests that the Court issue an Order pursuant to Fed. R. Civ. Pro. 4(m) extending the service deadline by two days to November 6, 2020, and declaring service effective *nunc pro tunc*. Courts routinely grant motions to extend service deadlines as the logical corollary to denials of Rule 12(b)(5) motions, since the substantive standards are identical in the two situations. *Norris v. D.C. Gov't*, No. CIV.A 05-1122HHKDAR, 2008 WL 7994986, at *8 (D.D.C. Aug. 1, 2008), *report and recommendation adopted sub nom. Norris v. Univ. of D.C.*, No. CIV.A 05-01122 HHK, 2008 WL 7994985

(D.D.C. Sept. 12, 2008)(granting 20-day extension of deadline for service in connection with denial of Rule 12(b)(5) motion). Here, because NPR has ***already*** been properly served, no additional time is necessary for service. Rather the Court should extend the deadline for service to November 6, and declare the service effective *nunc pro tunc*, thus curing the slight two-day delay in service. This relief will ensure that, if the Court is persuaded that there is good cause for an extension or that such an extension should be granted in the exercise of the Court's discretion, there is a remedy adequate to the relief sought by Plaintiff. *See Gipson v. Wells Fargo Corp.*, 382 F. Supp. 2d 116, 123 (D.D.C. 2005)(extending period authorized for service, *nunc pro tunc*); *cf. Alexander v. F.B.I.*, 186 F.R.D. 12, 21 (D.D.C. 1998)(extending period for production of responsive documents *nunc pro tunc*).

## CONCLUSION

For the reasons set forth above, the Court should deny Defendant's Motion to dismiss Plaintiff's Complaint under Rule 12(b)(5) and enter an Order extending the deadline for service of the Complaint to November 6, 2020 and declaring service effective *nunc pro tunc*.

Dated: December 8, 2020

>*/s/ Eden Quainton*_____
>EDEN P. QUAINTON, ESQ. (D.C. Bar No. NY0318)
>DUNNINGTON, BARTHOLOW & MILLER, LLP
>230 Park Ave. 21st Floor
>New York, NY 10169
>Telephone: (212) 682-8811
>E-mail: equainton@dunnington.com
>*Attorneys for Plaintiff Matthew Couch*

## **CERTIFICATE OF SERVICE**

The undersigned counsel certifies that on December 8, 2020, the foregoing document was filed through the CM/ECF system and thereby served electronically on counsel for National Public Radio.

**DUNNINGTON, BARTHOLOW & MILLER, LLP**

*/s/ Eden Quainton*_____
EDEN P. QUAINTON, ESQ.
230 Park Ave. 21st Floor
New York, New York 10169
Telephone: (212) 682-8811
E-mail: equainton@gmail.com
*Attorneys for Plaintiff Matthew Couch*