IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Civil Division

MATTHEW COUCH, *et al.*               )
                                      )
              Plaintiffs              )      Civil Action No: 1:20-cv-02151
                                      )
       vs.                            )
                                      )
VERIZON COMMUNICATIONS, INC, )
INC., *et al.*                        )
                                      )
              Defendants              )
                                      )

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MARK MUELLER'S MOTION TO DISMISS

Defendant, Mark Mueller., ("Mueller"), by his undersigned attorneys and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, hereby files this Memorandum of Points and Authorities in Support of his Motion to Dismiss.

Respectfully submitted,

McCARTHY WILSON LLP

By:     //s//  *Richard W. Evans, Esquire*
        Richard W. Evans, Esquire #448436
        2200 Research Boulevard, Suite 500
        Suite 500
        Rockville, Maryland 20850
        (301) 762-7770
        (301)926-7444-facsimile
        evansr@mcwilson.com
        Attorneys for Defendant
        Mark Mueller

## TABLE OF CONTENTS

**Page**

I.   Introduction ................................................................................................. **5.**

II.   Statement of Relevant Allegations of the *Complaint* ................................... **6.**

III.   Legal Standard ............................................................................................. **8.**

IV.   Argument ...................................................................................................... **9.**

    A.   Defamation and False Light Invasion of Privacy ................................ **9.**

        1. The statements attributed to Defendant Mueller are not actionable

      defamation ........................................................................................ **12.**

        2. The *Complaint* fails to allege facts to suggest Defendant Mueller

      "published" the statements .................................................................. **14.**

        3. The *Complaint* fails to allege actual malice ................................ **15.**

    B.   Defamation per se ........................................................................... **16.**

    C.   Intentional Infliction of Emotional Distress ..................................... **16.**

    D.   Civil Conspiracy .............................................................................. **17.**

    E.   Aiding and Abetting.......................................................................... **18.**

    F.   Intentional Interference with Business Relations.............................. **19.**

V.   Conclusion....................................................................................................**20.**

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ................................................................................................... 8

*Croixland Props. Ltd. P'ship v. Corcoran*
  174 F.3d 213 (D.C. Cir. 1999)..................................................................................... 8

*Deripaska v. Associated Press.,*
  282.F.Supp. 3d 133, 146 (D.D.C. 2017).............................................................. 13, 15

*Farah v. Esquire Magazine,*
  736 F.3d 528 (D.C. Cir. 213)............................................................................ 8, 10, 13

*First Annex, Inc. v. National Railroad Passenger Corp,*
  990 F.Supp.2d 1 (D.D.C. 2013)................................................................................. 19

*Flax v. Schertler,*
  935 A.2d 1091 (D.C. 2007) ....................................................................................... 18

*Forras v. Rauf,*
  39 F.Supp.3d 45, 56 (D.C. Cir. 2014) ........................................................................ 6

*Harris v. D.C. Water & Sewer Auth.*
  791 F.3d 65 (D.C. Cir. 2015)....................................................................................... 4

*Halberstam v. Welch,*
  705 F.2d 472, 476 (D.C. Cir. 1983).................................................................... 17, 18

*Jung v. Jung,*
  791 A.2d 46, 50 (D.C. 2002) ..................................................................................... 17

*Montgomery v. Reisen,*
  197 F.Supp. 3d 219 (D.C. Cir. 2017) ........................................................................ 14

*Nader v. Democratic Nat. Committee,*
  567 F.3d 692, 697 (D.C. Cir. 2009)........................................................................... 17

*New York Times v. Sullivan,*
  376, U.S. 254 (1964) ................................................................................................. 15

*Provisional Government of Republic of New Afrika v. American Broadcasting Companies, Inc,*
  609 F.Supp. 104 (D.C. 1985). ................................................................................... 12

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

*Sundberg v. TTR Realty, LLC*
    109 A.3d 1123, 1128 (D.C. 2015). ....................................................................... 8

*Zimmerman v. Al Jazeera America, LLC,*
    246 F. Supp.3d 257 (D.D.C. 2017)..................................................... 8, 11, 14, 15

STATUTES

*Federal Rule of Civil Procedure* 12(b)(6).............................................................. 8, 9

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

## I.   Introduction

Plaintiff, Matthew Couch, a self-described, "widely known independent investigator[]" has filed the instant *Complaint* seeking compensatory damages of "no less than" $15,000,000.00, actual damages of "no less than $25,000,000.00, and mental anguish damages of "no less than" $35,000,000.00 in relation to statements made in a six-part podcast entitled *"Conspiracyland"* published on August 6, 2020. *"Conspiracyland"* deals with the various conspiracy theories that have emerged on the Internet regarding the death of Seth Rich on July 10, 2016[1]. According to the Plaintiff, he is one of the "foremost" investigators seeking "to research the links between Seth Rich, his brother Aaron and Wikileaks." Complaint, ¶3. Defendant Mark Mueller ("Mueller") was interviewed in relation to the *"Conspiracyland"* podcast. Defendant Mueller was a neighbor of Seth Rich at the time of his death and had the unfortunate experience of identifying Mr. Rich for police after he was shot. Defendant Mueller was interviewed for the podcast regarding his experience being the target of Internet based harassment and his voice is heard briefly in the last episode. Despite Defendant Mueller's obviously quite minor role in the Seth Rich murder investigation, and an even more minor role in the subsequent podcast, Plaintiff has included Mr. Mueller in the instant lawsuit in which Plaintiff alleges, *inter alia*, that the producers of *Conspiracyland*, media outlets, and Mr. Rich's brother have "engaged in one of the most irresponsible smear campaigns in contemporary journalism" and have defamed the

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

---

[1] Plaintiff's Complaint mistakenly states that Mr. Rich's death occurred on July 10, 2020. ¶10.

Plaintiff as part of a conspiracy "personally destroy" him in an effort to discredit his "research" into the death of Seth Rich. ¶¶1-5. As set forth more fully below, Plaintiff has failed to state a claim for which relief can be granted as against Defendant Mueller.

## II.   Statement of Relevant Allegations in the *Complaint*[2]

1.     Michael [sic] Mueller was a neighbor of Seth Rich and the person who identified Seth Rich for the police in the morning of July 10, 2020 [sic]. ¶ 13.

2.     Defendant Mueller was interviewed for the "*Conspiracyland*" podcast and his voice is heard briefly in the 1st and 6th episodes. The 6th episode is entitled "Collateral Damage" and deals with the backlash experienced by some friends, family members, and neighbors of Seth Rich who found themselves unwittingly entangled in theories involving Mr. Rich's death primarily found and disseminated anonymously on the Internet. According to the Plaintiff, Defendant Mueller's interview was "used" in the podcast in an effort by Defendant Isikoff to "smear" the Plaintiff. ¶113 (section title: Isikoff uses and collaborates with Mark Mueller to smear and defame Plaintiff).

3.     The Plaintiff, who apparently views himself as "omnipresent" inexplicably takes personal offense to Defendant Mueller's description of being attacked by anonymous individuals on the internet. ¶ 114.[3]

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

---

[2]  Most of the 50 fifty-page Complaint centers around allegations and background that bear no relevance to Defendant Mueller's very insignificant "role" in the subject podcast. So insignificant, in fact, that the Plaintiff misnames Defendant Mueller as "Michael" Mueller in his very first mention of him and as "Capone" in his second, apparently confusing him with (now dismissed) Defendant Joe Capone. ¶13.
[3]  Plaintiff's Complaint fails to set out the actual text of the statements made by Defendant Mueller and instead presents a piecemeal, self-serving description of the statements riddled with commentary.

4.      In the podcast, Defendant Mueller describes learning that people were "putting stuff about him on the internet" including doctored photographs and personal information regarding his friends and family. ¶114. He also describes what it was like to receive calls and emails from anonymous strangers. ¶ 114.

5.      Plaintiff apparently does not deny that Defendant Mueller was "doxxed" on the internet or that he had good reason to feel threatened when his personal information became public, he simply takes offense to what he perceives as a connection being made by the podcast between his "widely known," "independent" investigation "seeking to uncover the truth of what happened to Seth Rich" and the actions of those people who were inspired by internet based theories and used information found on the internet to threaten and harass Defendant Mueller.

6.      According to the Plaintiff, Defendant Mueller's description of the behavior of these anonymous people on the internet causes the listeners of the podcast to recall an Episode 1 description of "internet hordes" which the listener should then associate with "the omnipresent Couch." ¶114.

7.      The Plaintiff alleges that "Isikoff asks Mueller if he had to take all of these precautions 'because of Internet trolls'" to which Mr. Mueller responds, "people like Matt Couch." ¶115.

8.      According to the Plaintiff, Defendant Mueller's statement that he takes "precautions" because of "people like Matt Couch" is a defamatory statement in which Defendant Mueller is implying that Plaintiff (1) superimposed Mueller's photo on Jeffrey Dahmer or Dexter's picture (2) "doxed" Defendant Mueller's family and

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

neighbors (3) sought to rent a room in Defendant Mueller's basement, (4) is an internet troll, and (5) is "alt-right". ¶¶117, 136.

### III.   Legal Standard

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint by raising the question of whether or not the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Zimmerman v. Al Jazeera America, LLC*, 246 F. Supp.3d 257, 271 (D.D.C. 2017)(citing *Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015)(*see also, Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While in determining whether or not a complaint sufficiently sets forth a claim, the court must construe the complaint in the light most favorable to the plaintiff and must take the facts alleged in the claim as true. *Sundberg. TTR Realty, LLC*, 109 A.3d 1123, 1128 (D.C. 2015). "However, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* Mere threadbare recitals of the elements of a cause of action, support by mere conclusory statements do not suffice." *Id.*    If it is "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations," the complaint should be dismissed. *Croixland Props. Ltd. P'ship v. Corcoran,* 174 F.3d 213, 215 (D.C. Cir. 1999).

Judicial notice is properly taken of publicly available historical articles," which are in some cases attached to a defendant's motion to dismiss." *Farah v. Esquire Magazine*, 736 F.3d.528 (D.C. Cir. 2013).

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

## IV.    Argument

For the reasons set forth below, this Court should dismiss all claims as against Defendant Mark Mueller pursuant to Rule 12(b)(6) of the *Federal Rules of Civil Procedure* as Plaintiff has failed to state a claim to relief which is plausible on its face.

### A.    Defamation and False Light Invasion of Privacy

Plaintiff sets forth (16) sixteen "false statements" he claims that the Defendants publicized within the roughly three and a half hour long "*Conspiracyland*" podcast. The vast majority of those statements are unrelated to the allegations against Defendant Mueller. The statements alleged to be relevant to the claims against Defendant Mueller are:

"i.    'Doxxed' Mark Mueller by publishing the addresses and phone numbers of his siblings and neighbors;

j.    Superimposed Mr. Mueller's head on pictures of serial killer Jeffrey Dahmer and Dexter;

k.    Sought to rent out Mr. Mueller's basement room to gain access to documents relating to Seth Rich…

m.    Was an 'internet troll;'…

p.    Was a member of the 'alt-right;'"

¶ 136 (i)-(k),(m),(p) and ¶ ¶113-117.

Importantly, Plaintiff does not, and cannot, allege that Defendant Mueller said that Plaintiff "doxed" him, doctored his photos, or tried to rent his basement. Instead, Plaintiff alleges that by some reference to an earlier mention of "internet hordes" the

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

listener is meant to associate or "connect[] all the horrible acts of which he complains to "alt-right" "people like Matt Couch." ¶¶114-116. Though the actual text of the podcast is not included in Plaintiff's Complaint, this Court can, and should, take judicial notice of the actual statements made and should not have to rely upon Plaintiff's colorful retelling. *See Farah v. Esquire Magazine*, 736 F3d.528 (D.C. Cir. 2013).

> Isikoff: Mark Mueller wasn't a friend of Seth's, but he too got sucked into the conspiracy. As you might remember from episode 1, he was the first neighbor on the scene of the killing. After he gave interviews to the local TV station, the internet sleuths jumped on what he said.

> Mueller: I was at work one day and I got a call from an ex saying, "watch out, there's people after you," and sent me some screen shots from Twitter and Facebook and whatever. And suddenly I realized I had ***all these people*** putting stuff out on the internet about me, fake stuff.

> Isikoff: Soon enough Mueller was being linked to Jeffrey Dahmer, the notorious Milwaukee serial killer.

> Isikoff: How did they draw that connection? What was …

> Mueller: Who knows. I'm from Wisconsin near where Jeffrey Dahmer's from. They would take pictures of Jeffrey Dahmer and Dexter and they would superimpose my face on theirs. When they published phone numbers and addresses of all my brothers and sisters and me and my neighbors, that's pretty vicious. They were coming at in various ways over and over and over again and contacting me through every one of my email accounts and calling me at work and calling me at home on my cell phone. It's pretty intense. Yeah.

> Isikoff: How freaked out were you?

> Mueller: Well, freaked out enough that I stayed away from the house every weekend. Drank a little bit. I had Airbnb in the basement, so then suddenly I had to start turning people away that might be, ya know, alright trying to get into my home.

> Isikoff: Because of these trolls?

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

10

Mueller: Because, people like Matt Couch.

Isikoff: Couch did not respond to multiple requests to be interviewed for this podcast. On July 9, 2019, after nearly two years of tweets and parascopes, Couch wrote a letter to the federal Judge overseeing the defamation lawsuit brought by Aaron Rich. He said he was removing all content relating to Aaron from his website and was quote "even willing to issue an apology to Mr. Rich." He made no reference to those like Mueller and Capone, who he had also claimed were part of a supposed Seth Rich coverup. And Couch made clear that Seth himself was still fair game. Later, telling a YouTube host that goes by the name Spaceshots76, that he had big plans in the works.

*Conspriacyland*, Episode 6, 24:54

To state a claim for defamation under District of Columbia law, a plaintiff must allege (1) that he was the subject of a false and defamatory statement, (2) that the statement was published to a third party, (3) that publishing the statement was at least negligent; and (4) that the plaintiff suffered either actual or legal harm. *Zimmerman v. Al Jazeera America, LLC*, 246 F.Supp.3d 257, 272 (D.C.C. 2017). Relatedly, a claim for false light invasion of privacy requires a showing of "(1) publicity, (2) about a false statement, representation or imputation, (3) understood to be of and concerning the plaintiff; and (4) which places the plaintiff in a false light that would be offensive to a reasonable person. *Id.* When a defamation and false light invasion of privacy claim are based on the same set of facts, they are often analyzed in the same manner. *Id.* In the case at hand, the Plaintiff makes no differing allegations in regards to the two claims and thus they are properly considered together.

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

11

As set forth more fully below, the statements made by Defendant Mueller are not actionable defamation, Defendant Mueller did not "publish" the alleged statements, and Plaintiff's *Complaint* lacks facts supporting an inference of actual malice.

### 1.    The Statements Attributed to Defendant Mueller are not actionable defamation.

The defamation alleged by the Plaintiff as regarding Defendant Mueller can be categorized into two types:  First, Plaintiff alleges that Mueller attributed actions to Plaintiff which were false, i.e. "doxing" him, doctoring his photos, and attempting to rent a room in his basement. Second, Plaintiff alleges that he is accused of being a member of undesirable groups, i.e. an "internet troll" and a member of the "alt-right." None of these "statements" are actionable defamation. It is important to note that the operative statement made by Defendant Mueller is "people like Matt Couch" and that it is only alleged that by *implication* the Plaintiff is "made to stand in for all the people who do the horrible, outrageous things Mr. Mueller complains of." ¶116. That implication is not alleged to have been the result of Mueller's actual statements, but rather as the result of a reference to "hordes" on the internet made by a different speaker in an earlier episode of the podcast. ¶114.

"Defamation is personal; a plaintiff who alleges defamation must show that the statement was of and concerning him." *Provisional Government of Republic of New Afrika v. American Broadcasting Companies, Inc.*, 609 F.Supp. 104, 108 (D.C. 1985). Allegations or statements directed against a group does not give rise to a cause of action for an individual member. *Id.*  The statements regarding being harassed by "all of these

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

people" who were putting "fake stuff" about him on the Internet only, according to Plaintiff, relates to the Plaintiff because "the listener has in the back of his or her mind the previous evocation of Internet hordes led or inspired by, or acting with, the omnipresent Couch."¶114. In other words, Defendant Mueller never says that Plaintiff did <u>anything</u>, he says people "like" the Plaintiff caused him "to take precautions." ¶¶114-115. Essentially, Defendant Mueller expresses that he was scared of or as a result of people like the Plaintiff.

"Under the First Amendment, liability for defamation arises, only if, at a minimum, a defendant's statement reasonably implies false and defamatory *facts*." *Farah v. Esquire Magazine*, 736 F.3d 528, 534 (D.C. Cir. 2013)(internal citations omitted)(emphasis added). If, like here, a defendant's statement is so subjective – that it cannot be proven true or false, it is not actionable defamation. *Id.* The implication that people like the Plaintiff "freaked out" Defendant Mueller cannot be proven true or false and is not actionable defamation.

"Defamation is not made up of hints and suggestions and it cannot be merely unpleasant or offensive." *Deripaska v. Associated Press*, 282.F.Supp. 3d 133, 146 (D.D.C. 2017). The fact that Plaintiff fails to set forth in his *Complaint* the actual text of the statements made by Defendant Mueller in the podcast and instead relies upon extensive mental gymnastics, hyperbole, and conjecture in order to describe Defendant Mueller's statements as defamatory highlights the fact that the statements made simply do not rise to the level of actionable defamation.

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

Furthermore, expressions of opinion regarding a person's motives or personality are not actionable defamation. *Montgomery v. Reisen*, 197 F.Supp. 3d 219, 248-249 (D.C. Cir. 2017)(referring to the plaintiff as crazy, a con artist, or a fraud is opinion and not actionable defamation). Therefore, even if one could attribute descriptions of the Plaintiff as "alt-right" and/or an "internet troll" to Defendant Mueller, those statements are simply opinions and not actionable.

> **2.    The Complaint fails to allege facts to suggest Defendant Mueller "published" the statements.**

Defendant Mueller was interviewed for the podcast. There is no allegation that he wrote, edited, or otherwise controlled the publication of the podcast. Plaintiff alleges that, via the statement "people like Matt Couch", Defendant Mueller "connects" his prior statements regarding the actions of unnamed people to Plaintiff. ("Here the listener has in the back of his or her mind the previous evocation of Internet 'hordes' led or inspired by, or acting with, the omnipresent Couch."¶114). This alleged "connection" is due only to the order in which the statements are published. In other words, the "context" the statements were made in was not in the control of Defendant Mueller, so any implication to be made via the context cannot be fairly attributed to him.

In *Zimmerman*, the Court concluded that an insider in the world of sports who was involved in the investigation that eventually resulted in a documentary film about performance enhancing drugs did not "publish or knowingly participate in publishing" the defamatory statements in the documentary when he did not serve as an editor or a producer. *Zimmerman*, 246 F.Supp.3d at 285. Certainly, a person who was interviewed

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

14

for a podcast and makes a roughly thirty (30) second appearance therein cannot be said to be involved in the publication of the podcast. Therefore, Plaintiff has failed to state a claim as to the element of publication necessary for both defamation and false light publicity.

### 3.  The Complaint fails to allege actual malice.

The applicable legal standard in a claim for defamation varies depending upon the status of the individual alleging to have been defamed. *Zimmerman v. Al Jazeera America, LLC*, 246 F.Supp.3d 257, 263 (D.C. 2017) (citing *New York Times v. Sullivan*, 376, U.S. 254, 278-280 (1964). In the case at hand, Plaintiff describes himself as a "conservative commentator" with "a wide following on social media" ¶6, a "gifted speaker," a former "mainstream sports commentator" ¶36, as well as the "foremost, and perhaps most widely known, independent investigator[] seeking to uncover the truth of what happened to Seth Rich." ¶3.  In other words, the Plaintiff actually asserts in his *Complaint* that he is a limited-purpose public figure. As such, in order to state a claim, he must allege that the allegedly false and defamatory statement was made with "actual malice" as opposed to "negligence." *Zimmerman*, at. 263, *See also, Deripaska,* 282 F.Supp. 3d 133 at 146. As a limited public figure, the Plaintiff is required to plausibly allege facts to support that Defendant Mueller made the allegedly defamatory statements with "actual malice" which he has failed entirely to plead.

For the foregoing reasons, Plaintiff's claims as to defamation (Count I) and false light invasion of privacy (Count IV) should be dismissed.

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

15

### B.     Defamation Per Se

Plaintiff alleges that "Defendants' statements about Plaintiff constitute defamation per se because they falsely asserted, or implied, that Plaintiff has committed crimes for which he can be criminally indicted and convicted, including falsely accusing a person of murder, illegally stealing and publishing personal information, and attempted burglary." ¶144. For the reasons stated above, none of Defendant Mueller's statements constitute defamation and none of these allegedly false statements is attributable to any statement made by Defendant Mueller thus Plaintiff has failed to state a claim for which relief can be granted in relation to his claim of defamation per se as against Defendant Mueller.

For the foregoing reasons, Count II of the Complaint should be dismissed.

### C.     Intentional Infliction of Emotional Distress

Plaintiff's third cause of action sounds in Intentional Infliction of Emotional Distress. To establish such a claim, the Plaintiff must allege (1) extreme and outrageous conduct that (2) intentionally or recklessly caused (3) severe emotional distress to another. *Forras v. Rauf*, 39 F.Supp.3d 45, 56 (D.C. Cir. 2014), aff'd on other grounds, 812 F.3d 1102 (D.C. Cir. 2016). Mere insults do not rise to the requisite "extreme and outrageous level" of conduct necessary to state a cause of action. *Id.* The only "conduct" alleged in relation to Defendant Mueller is his singular statement that he was "freaked out" by people like the Plaintiff. While the Plaintiff may be insulted to have been referred to as an "internet troll" or "alt-right", at the most those statements are mere insults and not conduct that "goes beyond all possible bounds of decency and [is] regarded as

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

16

atrocious and utterly intolerable in a civilized community" as required for a claim of Intentional Infliction Emotional Distress. *See Jung v. Jung*, 791 A.2d 46, 50 (D.C. 2002).

For the foregoing reasons, Count III of the Complaint should be dismissed.

**D.    Civil Conspiracy**

Civil conspiracy is not an independent tort and thus must be dismissed because Plaintiff has failed to plead an underlying cause of action against Defendant Mueller. *See*, *Nader v. Democratic Nat. Committee*, 567 F.3d 692, 697 (D.C. Cir. 2009). The Plaintiff alleges that all of the defendants (apparently including Defendant Mueller) "agreed to intentionally and maliciously participate in a civil conspiracy…to defame [Plaintiff] through Episode 6 of *Conspiracyland*." ¶161. However, as Plaintiff fails to plead a cause of action for defamation, his claim of civil conspiracy must also fail.

Assuming, *arguendo*, that Plaintiff had properly plead a cause of action for defamation as against Defendant Mueller, his claim for civil conspiracy fails to state a cause of action when he fails to plead underlying facts tending to support the legal conclusions plead. It is insufficient to simply allege that a conspiracy existed. The tort of civil conspiracy requires a showing of (1) an agreement between two parties, (2) to participate in an unlawful act, or a lawful act in an unlawful manner, (3) an injury cause by an unlawful overt act performed by one of the parties to the agreement, (4) which overt act was done pursuant to and in furtherance of the common scheme. *Halberstam v. Welch*, 705 F.2d 472, 476 (D.C. Cir. 1983). The "essence of conspiracy is an agreement" and Plaintiff has failed entirely to plead that such an agreement existed

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

17

between the parties.[4]  *Id.* Plaintiff's complaint merely states that a "hub and spoke conspiracy" existed but fails to set for any facts in support of such a conclusion.

For the foregoing reasons, Count V of the Complaint should be dismissed.

### E.    Aiding and Abetting

The separate tort of aiding and abetting has not yet been recognized explicitly as a cause of action in the District of Columbia. *Flax v. Schertler*, 935 A.2d 1091 (D.C. 2007). However, the Court has analyzed the elements of the tort of aiding and abetting, which includes the following elements: (1) the party whom the defendant aids must perform a wrongful act that causes and injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides assistance; (3) the defendant must knowingly and substantially assist the principal violation. *Halberstam,* at 476. Again, even if the independent tort of Aiding and Abetting was recognized in the District of Columbia, Plaintiff has failed to plead any facts to support his conclusion that "Defendant…Mueller aided and abetted Defendants Isikoff and Verizon…" ¶ 169. The absence of any facts to support, among other elements, that Defendant Mueller was aware of his alleged role at the time the "assistance" was provided, is fatal to the claim. Furthermore, the assistance must be "substantial" in order to maintain the cause of action. *Halberstam,* at 478. The idea that a 30 second interview in the context of a podcast that spans about three and a half hours is "substantial" underlines the absurdity of such a claim being made against Defendant Mueller.

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

---

[4] The Plaintiff hasn't even plead facts to show that all of the parties had ever even communicated with each other, let alone come to some sort of agreement to defame the Plaintiff.

For the foregoing reasons, Count VI of the Complaint should be dismissed.

**F.      Intentional Interference with Business Relations**

Again, Plaintiff's Complaint fails to allege **facts** in support of his claim. In order to state a claim for intentional interference with business relations a complaint must plausibly allege (1) the existence of a valid contractual or other business relationship; (2) the defendant's knowledge of the relationship, (3) intentional interference with that relationship by the defendant and (4) resulting damages. *First Annex, Inc. v. National Railroad Passenger Corp.* 990 F.Supp.2d 1, 3-4 (D.D.C. 2013). In *First Annex*, the defendant was granted dismissal of the tortious interference claim when the complaint merely alleged legal conclusions without factual support. *Id.* (the court "need not accept" the mere allegation that the defendant's delays, neglect, and procrastination were willful, intentional, and done with knowledge that they would result in harm). Likewise, the Complaint at hand merely alleges that "defendants intentionally and improperly interfered with Plaintiff's relationships" but fails entirely to present a single factual allegation to support the legal conclusion that any interference was "intentional." In fact, the entire count is simply a recantation of the elements of the tort without a single factual allegation. This lack of factual support is highlighted by the failure to even set forth the nature of the alleged business relationship or contract which is alleged to have suffered interference.

For the foregoing reasons, Count VII of the Complaint should be dismissed.

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

**IV.    Conclusion**

For the foregoing reasons, Defendant Mueller respectfully requests that all counts against him be dismissed with prejudice.

Respectfully submitted,

McCARTHY WILSON LLP

By:    *//s//  Richard W. Evans, Esquire*
Richard W. Evans, Esquire #448436
2200 Research Boulevard
Suite 500
Rockville, Maryland 20850
(301) 762-7770
(301)926-7444-facsimile
evansr@mcwilson.com
Attorneys for Defendant Mueller

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 29th day of January, 2021 a copy of the foregoing Defendant Mueller's Memorandum of Points and Authorities in Support of Defendant Mueller's Motion to Dismiss was electronically filed and served through this Court's CM/ECF system on the following:

Eden P. Quainton, Esquire
Dunnington, Bartholow & Miller, LLP
230 Park Avenue, 21st Floor
New York, New York   10169
equainton@gmail.com
Attorneys for Plaintiff Matthew Couch

Laura C. Fraher
Shapiro, Lifschitz & Schram PC
1742 N Street, N.W.
Washington, D.C.   20036
fraher@slslaw.com

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM

Jean-Paul Jassy (Pro Hac Vice Pending)
William T. Um (Pro Hac Vice Pending)
Elizabeth H. Baldridge (Pro Hac Vice Pending)
Jassy Vick Carolan LLP
800 Wilshire Boulevard, Suite 800
Los Angeles, CA 90017
jpjassy@jassyvick.com
wum@jassyvick.com
ebaldridge@jassyvick.com

Attorneys for Defendants Verizon Communications, Inc.
And Michael Isikoff

Matthew E. Kelley, Esquire
Ballard Spahr LLP
1909 K Street, N.W.
12th Floor
Washington, D.C. 20006
kelleym@ballardspahr.com

David J. Bodney, Esquire
1 East Washington Street
Suite 2300
Phoenix, AZ 85004
bodneyd@ballardspahr.com

Attorneys for Defendant National Public Radio, Inc.


*//s//  Richard W. Evans, Esquire*
Richard W. Evans, Esquire  #448436

LAW OFFICES
McCARTHY WILSON LLP
A LIMITED LIABILITY PARTNERSHIP
WWW.MCWILSON.COM