## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MATTHEW COUCH, | * |
| Plaintiff, | * |
| v. | *    Civil Action No. 1:20-cv-02151-RJL |
| VERIZON COMMUNICATIONS INC. | * |
| and | * |
| MICHAEL ISIKOFF | * |
| and | * |
| NATIONAL PUBLIC RADIO, INC. | * |
| and | * |
| AARON RICH | * |
| and | * |
| DEBORAH SINES | * |
| and | * |
| JOE CAPONE | * |
| and | * |
| MARK MUELLER | * |
| Defendants. | |

*    *    *    *    *    *    *    *    *    *    *    *    *    *    *

## MOTION TO DISMISS
## PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6), OR, IN THE
## ALTERNATIVE, MOTION TO STRIKE PURSUANT TO
## FEDERAL RULE OF CIVIL PROCEDURE 12(f)

Defendants Verizon Communications Inc. and Michael Isikoff (collectively,

"Defendants") respectfully move this Court pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure to dismiss with prejudice the Complaint of Matthew Couch ("Plaintiff" or

"Couch") for failure to state a claim.  In the alternative, Defendants move to strike allegedly

defamatory and otherwise purportedly actionable statements and implications from the

Complaint pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.

Plaintiff's claims for defamation and defamation *per se* fail for a number of independent

reasons:

1. several of the alleged statements were not published or cannot reasonably be implied
   as a matter of law;

2. the alleged statements and implications are protected under the fair comment
   doctrine;

3. none of the statements and alleged implications are verifiable statements of fact;

4. several of the statements and alleged implications, even if verifiable, are substantially
   true;

5. several statements and alleged implications are protected by the common law fair
   report privilege;

6. several of the statements carry no defamatory meaning;

7. Plaintiff, who is a public figure, did not – and cannot – adequately allege
   constitutional actual malice; and

8. Plaintiff's claims against Verizon Communications Inc. ("Verizon") fail because
   Verizon has no connection to the allegations of the Complaint other than as the
   ultimate parent of the entity that offers the services at issue, and Plaintiff has not pled
   any facts to pierce the corporate veil.

In addition, Plaintiff's ancillary claims for intentional infliction of emotional distress,

false light, conspiracy, aiding and abetting, intentional interference with business relations and

negligent supervision and retention all fail for the same reasons Plaintiff's defamation claims fail and/or because they do not exist as independent torts.

This Motion is supported by the attached Memorandum of Law and concurrently-filed Request for Judicial Notice.

## <u>REQUEST FOR HEARING</u>

Defendants respectfully request a hearing on their Motion to Dismiss.

DATED:  January 29, 2021

Respectfully submitted,

/s/ Jean-Paul Jassy
Jean-Paul Jassy (*Pro Hac Vice* motion pending)
William T. Um (*Pro Hac Vice* motion pending)
Elizabeth H. Baldridge (*Pro Hac Vice* motion pending)
**JASSY VICK CAROLAN LLP**
800 Wilshire Boulevard, Suite 800
Los Angeles, CA 90017
Telephone: (310) 870-7048
Facsimile: (310) 870-7010
jpjassy@jassyvick.com
wum@jassyvick.com
ebaldridge@jassyvick.com

Laura C. Fraher (DC Bar No. 979720)
**SHAPIRO, LIFSCHITZ & SCHRAM P.C.**
1742 N Street NW
Washington, DC 20036
Telephone: (202) 689-1900
Facsimile: (202) 689-1901
fraher@slslaw.com

*Attorneys for Defendants Verizon Communications Inc. and Michael Isikoff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| MATTHEW COUCH, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 1:20-cv-02151-RJL |
| VERIZON COMMUNICATIONS INC. | * | |
| and | * | |
| MICHAEL ISIKOFF | * | |
| and | * | |
| NATIONAL PUBLIC RADIO, INC. | * | |
| and | * | |
| AARON RICH | * | |
| and | * | |
| DEBORAH SINES | * | |
| and | * | |
| JOE CAPONE | * | |
| and | * | |
| MARK MUELLER | * | |
| Defendants. | * | |

*       *       *       *       *       *       *       *       *       *       *       *       *       *       *

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**
**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6), OR, IN THE**
**ALTERNATIVE, MOTION TO STRIKE PURSUANT TO**
**<u>FEDERAL RULE OF CIVIL PROCEDURE 12(f)</u>**

Jean-Paul Jassy (*Pro Hac Vice* motion pending)
William T. Um (*Pro Hac Vice* motion pending)
Elizabeth Baldridge (*Pro Hac Vice* motion pending)
**JASSY VICK CAROLAN LLP**
800 Wilshire Boulevard, Suite 800

Los Angeles, CA 90017
Telephone: (310) 870-7048
Facsimile: (310) 870-7010
jpjassy@jassyvick.com
wum@jassyvick.com
ebaldridge@jassyvick.com

Laura C. Fraher (DC Bar No. 979720)
**SHAPIRO, LIFSCHITZ & SCHRAM P.C.**
1742 N Street NW
Washington, DC 20036
Telephone: (202) 689-1900
Facsimile: (202) 689-1901
fraher@slslaw.com

*Attorneys for Defendants Verizon Communications Inc. and Michael Isikoff*

# **TABLE OF CONTENTS**

Page

INTRODUCTION ......................................................................................................... 1

FACTUAL BACKGROUND ....................................................................................... 3

LEGAL STANDARD .................................................................................................. 6

ARGUMENT ............................................................................................................... 8

I.     PLAINTIFF'S DEFAMATION AND DEFAMATION *PER SE* CLAIMS FAIL
       AS A MATTER OF LAW ................................................................................. 8

       A.     Several of the Alleged Implications Are Not Reasonable As A Matter
              Of Law ................................................................................................... 8

       B.     All of the Statements and Alleged Implications Are Protected by the Fair
              Comment Privilege ............................................................................. 11

       C.     None of the Statements or Alleged Implications Convey Verifiable
              Statements of Fact, and Therefore None Can Support A Defamation Claim ... 12

              1.     The Purported Statements that Plaintiff "Lied" About Aaron Rich
                    Do Not Convey Verifiable Statements of Fact ............................ 17

              2.     The Purported Statements and Implications that Plaintiff Took
                    Actions Against Others Are Not, In Context, Verifiable ............ 20

              3.     The Hyperbolic Statements About Plaintiff Are Non-Verifiable,
                    Non-Actionable Opinion and Rhetorical Hyperbole ................... 22

       D.     Several of the Statements and Alleged Implications, Even if Verifiable,
              Are Substantially True ....................................................................... 24

              1.     Couch Has the Burden to Demonstrate Falsity ........................... 24

              2.     The "Gist" and "Sting" Of Several Statements And Alleged
                    Implications Are Substantially True ........................................... 25

       E.     The Fair Report Privilege Bars the Statements and Alleged Implications
              Concerning Plaintiff's Lies About Aaron Rich .................................. 27

       F.     Two of the Statements and Alleged Implications Carry No Defamatory
              Meaning .............................................................................................. 28

       G.     Plaintiff, a Public Figure, Does Not Adequately Allege Actual Malice .......... 29

        1.     Plaintiff is a Public Figure and is Therefore Required to Plead and Prove Actual Malice .................................................................... 29

        2.     Plaintiff's Complaint Fails to Allege Facts Sufficient to Give a Reasonable Inference of Actual Malice ................................... 32

        3.     Plaintiff Cannot Plausibly Allege Actual Malice .................................. 36

II.     PLAINTIFF'S ANCILLARY CLAIMS ALSO FAIL ................................................. 38

    A.    Plaintiff's Claims for Intentional Infliction of Emotional Distress, False Light and Intentional Interference with Business Relations Fail for the Same Reasons the Defamation Claims Fail ....................................................... 38

    B.    Plaintiff's Claims for Aiding and Abetting, Conspiracy, and Negligent Supervision and Retention Should Also Be Dismissed ................................... 39

        1.     Civil Conspiracy ...................................................................... 39

        2.     Aiding and Abetting ................................................................. 40

        3.     Negligent Supervision and Retention .................................... 41

III.    VERIZON COMMUNICATIONS INC. IS NOT A PROPER DEFENDANT .......... 42

CONCLUSION .......................................................................................................... 42

APPENDIX A - TABLE IN SUPPORT OF DEFENDANTS' RULE 12(b)(6) MOTION ... A-1

CERTIFICATE OF SERVICE ............................................................................ 44

## <u>TABLE OF AUTHORITIES</u>

Page(s)

CASES

*Adelson v. Harris*,
   973 F. Supp. 2d 467 (S.D.N.Y. 2013)...........................................................16

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)...........................................................................8, 31

*\*Arpaio v. Zucker*,
   414 F. Supp. 3d 84 (D.D.C. 2019) ..............................................32, 33, 34, 35

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................7, 32, 35, 39

*Automated Transactions LLC v. American Bankers Ass'n*,
   216 A.3d 71 (N.H. 2019) ................................................................................22

*Bannum, Inc. v. Citizens for a Safe Ward Five, Inc.*,
   383 F. Supp. 2d 32 (D.D.C. 2005) ....................................................................8

*\*Bauman v. Butowsky*,
   377 F. Supp. 3d 1 (D.D.C. 2019) ...................3, 7, 8, 9, 11, 13, 14, 15, 16, 20, 21, 25, 38

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)..................................................................7, 32, 35, 39

*Biro v. Conde Nast*,
   807 F.3d 541 (2d Cir. 2015)..........................................................................32

*Bond v. U.S. Dep't of Justice*,
   828 F. Supp. 2d 60 (D.D.C. 2011) ................................................................41

*Bose Corp. v. Consumer Union*,
   466 U.S. 485 (1984).......................................................................................31

*Buckley v. Littell*,
   539 F.2d 882 (2d Cir. 1976)..........................................................................22

*Carroll v. Fremont Inv. & Loan*,
   636 F. Supp. 2d 41 (D.D.C. 2009) ................................................................40

*Chen v. Bell-Smith*,
   768 F. Supp. 2d 121 (D.D.C. 2011) ..............................................................40

*Church of Scientology Int'l v. Time Warner, Inc.*,
   903 F. Supp. 637 (S.D.N.Y. 1995) ....................................................33, 34, 35

*Clemmons v. Academy for Educ. Dev.*,
   70 F. Supp. 3d 282 (D.D.C. 2014)..........................................................16, 20, 21

*Clyburn v. News World Commc'ns, Inc.*,
   903 F.2d 29 (D.C.Cir.1990) .......................................................................29, 31

*Coghlan v. Beck*,
    984 N.E.2d 132 (Ill. Ct. App. 2013) ....................................................22

*Daisley v. Riggs Bank, N.A.*,
    372 F. Supp. 2d 61 (D.D.C. 2005) .....................................................41

*Dall v. Pearson*,
    246 F. Supp. 812 (D.D.C. 1963) ........................................................12

*\*Deripaska v. Associated Press*,
    282 F. Supp. 3d 133 (D.D.C. 2017) ..............................28, 32, 33, 35

*Doe No. 1 v. Burke*,
    91 A.3d 1031 (D.C. 2014) ..................................................................29

*Dresbach v. Doubleday & Co., Inc.*,
    518 F. Supp. 1285 (D.D.C. 1981) ......................................................30

*\*Fairbanks v. Roller*,
    314 F. Supp. 3d 85 (D.D.C. 2018) ...................7, 24, 32, 33, 35

*\*Farah v. Esquire Magazine*,
    736 F.3d 528 (D.C. Cir. 2013) ..................................8, 19, 38

*Farah v. Esquire Magazine*,
    863 F.Supp.2d 29 (D.D.C. 2012) .......................................................38

*Findlay v. CitiMortgage, Inc.*,
    813 F. Supp. 2d 108 (D.D.C. 2011) ..................................................40

*Forsher v. Bugliosi*,
    26 Cal. 3d 792 (1980) .........................................................................30

*Fudge v. Penthouse Int'l, Ltd.*,
    840 F.2d 1012 (1st Cir. 1988) ............................................................14

*Geier v. Conway, Homer & Chin-Caplan, P.C.*,
    983 F. Supp. 2d 22 (D.D.C. 2013) .....................................................39

*Gracel v. Owens & Minor Distrib., Inc.*,
    666 F.3d 1142 (8th Cir. 2012) .....................................................17, 20

*Gray v. St. Martin's Press, Inc.*,
    221 F.3d 243 (1st Cir. 2000) ..............................................................16

*Greenbelt Coop. Publ. Assn. v. Bresler*,
    398 U.S. 6 (1970) .........................................................................15, 20

*\*Guilford Transp. Indus., Inc. v. Wilner*,
    760 A.2d 580 (D.C. 2000) .........................................11, 15, 18, 21

*Harte-Hanks Commc'ns v. Connaughton*,
    491 U.S. 657 (1989) ............................................................................31

*\*Haynes v. Alfred A. Knopf, Inc.*,
    8 F.3d 1222 (7th Cir. 1993) ...............................16, 17, 18, 20, 21

*Hourani v. Psybersolutions LLC*,
  164 F. Supp. 3d 128 (D.D.C. 2016) ........................................................32, 33, 34, 35

*Hupp v. Sasser*,
  490 S.E.2d 880 (W.Va. 1997) ...................................................................................22

*Hurd v. D.C. Gov't*,
  864 F.3d 671 (D.C. Cir. 2017) ...................................................................................7

*Hustler Magazine, Inc. v. Falwell*,
  485 U.S. 46 (1988)....................................................................................................12

*Islar v. Whole Foods Market Grp., Inc.*,
  217 F. Supp. 3d 261 (D.D.C. 2016) ..........................................................................41

*Kahl v. Bureau of Nat'l Affairs, Inc.*,
  856 F.3d 106 (D.C. Cir. 2017) ..........................................................................6, 7, 31

*Lane v. Random House, Inc.*,
  985 F. Supp. 141 (D.D.C. 1995) .............................11, 12, 13, 14, 15, 22, 23, 24, 42, 43

*Levin v. McPhee*,
  119 F.3d 189 (2d Cir. 1997)..........................................................................16, 18, 21

*Liberty Lobby, Inc. v. Dow Jones & Co.*,
  838 F.2d 1287 (D.C. Cir. 1988) ................................................................................24

*Libre By Nexus v. Buzzfeed, Inc.*,
  311 F.Supp.3d 149 (D.D.C. 2018) ......................................................................25, 28

*Lohrenz v. Donnelly*,
  223 F.Supp.2d 25 (D.D.C. 2002) .........................................................................24, 34

*Lohrenz v. Donnelly*,
  350 F.2d 1272 (D.C. Cir. 2003) .......................................................................30, 36, 37

*Mar-Jac Poultry, Inc. v. Katz*,
  773 F. Supp. 2d 103 (D.D.C. 2011) .............................................7, 9, 15, 16, 18, 20, 21

*Masson v. New Yorker Magazine, Inc.*,
  501 U.S. 496 (1991).......................................................................................24, 30, 31

*Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*,
  674 F.3d 369 (4th Cir. 2012) ....................................................................................32

*McCafferty v. Newsweek Media Grp., Ltd.*,
  No. CV 18-1276, 2019 WL 1078355 (E.D. Pa. Mar. 7, 2019)....................................22

*McCord v. Bailey*,
  636 F.2d 606 (D.C. Cir. 1980) ..................................................................................39

*McFarlane v. Esquire Magazine*,
  74 F.3d 1296 (D.C. Cir. 1996) .............................................................................30, 37

*McFarlane v. Sheridan Square Press, Inc.*,
  91 F.3d 1501 (D.C. Cir. 1996) .............................................................................31, 36

*Michel v. NYP Holdings, Inc.*,
  816 F.3d 686 (11th Cir. 2016) ..................................................................32

*Milkovich v. Lorain Journal Co.*,
  497 U.S. 1 (1990)..........................................................................12, 14, 15

*Moldea v. New York Times*,
  15 F.3d 1137 (D.C. Cir. 1994) (*Moldea I*)............................11, 13, 16, 21, 38

*Moldea v. New York Times Co.*,
  22 F.3d 310 (D.C. Cir. 1994) (*Moldea II*) ...................................16, 21, 25, 36

*Montgomery v. Risen*,
  197 F. Supp. 3d 219 (D.D.C. 2016).................................13, 15, 17, 19, 20, 21

*Murray v. HuffingtonPost.com, Inc.*,
  21 F. Supp. 3d 879 (S.D. Ohio 2014) ...........................................................17

*Nelson Auto Center, Inc. v. Multimedia Holdings Corp.*,
  951 F.3d 952 (8th Cir. 2020) .....................................................................32

*New York Times v. Sullivan*,
  376 U.S. 254 (1964)....................................................................30, 31, 36

*Newton v. Nat'l Broadcasting Co., Inc.*,
  930 F.2d 662 (9th Cir. 1990) ...............................................................35, 37

*Ning Ye v. Holder*,
  644 F.Supp.2d 112 (D.D.C. 2009).............................................................24

*OAO Alfa Bank v. Center for Public Integrity*,
  387 F. Supp.2d 20 (D.D.C. 2005) .............................................................35

*Ollman v. Evans*,
  750 F.2d 970 (D.C. Cir. 1984) .............................................................13, 15

*Oparougo v. Watts*,
  884 A.2d 63 (D.C. 2005) ..........................................................................10

*Parisi v. Sinclair*,
  845 F. Supp. 2d 215 (D.D.C. 2012).............................................32, 33, 34, 35

*Pearce v. E.F. Hutton Grp., Inc.*,
  664 F.Supp. 1490 (D.D.C. 1987) ...............................................................24

*Philadelphia Newspapers, Inc. v. Hepps*,
  475 U.S. 767 (1986)..................................................................................24

*Plummer v. Safeway, Inc.*,
  934 F. Supp. 2d 191 (D.D.C. 2013) ...........................................................41

*Purcell v. Ewing*,
  560 F. Supp. 2d 337 (M.D. Pa. 2008) .........................................................22

*Raboya v. Shrybman & Assoc.*,
  777 S. Supp. 58 (D.D.C. 1991) ..................................................................8

*Rosen v. American Israel Public Affairs Comm., Inc.*,
   41 A.3d 1250 (D.C. 2012) ......................................................................8

*Schatz v. Republican State Leadership Comm.*,
   669 F.3d 50 (1st Cir. 2012) ..................................................................32

*Secord v. Cockburn*,
   747 F. Supp. 779 (D.D.C. 1990) ...........................................................10

*Sharon v. Time, Inc.*,
   599 F.Supp. 538 (S.D.N.Y. 1984) .........................................................24

*Shipkovitz v. Washington Post Co.*,
   571 F. Supp. 2d 178 (D.D.C. 2008) ......................................................27

*Sinclair v. TubeSockTedD*,
   596 F. Supp. 2d 128 (D.D.C. 2009) ......................................................19

*Smith v. Clinton*,
   253 F.Supp.3d 222 (D.D.C. 2017) ........................................................25

*Smith v. Clinton*,
   886 F.3d 122 (D.C. Cir. 2018) .............................................................28

*St. Amant v. Thompson*,
   390 U.S. 727 (1968).............................................................31, 34, 35

*Tavoulareas v. Piro*,
   817 F.2d 762 (D.C. Cir. 1987) .......................................................9, 34, 35

*Time, Inc. v. Pape*,
   401 U.S. 279 (1971)...........................................................................36

*U.S. v. Eisenberg*,
   149 F. Supp. 3d 71 (D.D.C. 2015) .......................................................40

*Underwager v. Channel 9 Australia*,
   69 F.3d at 361 (9th Cir. 1995).............................................................20

*Waldbaum v. Fairchild Publ., Inc.*,
   627 F.2d 1287 (D.C. Cir. 1980) ...........................................................29

*Washington v. Smith*,
   80 F.3d 555 (D.C. Cir. 1996) ...............................................................14

*Washington v. Smith*,
   893 F. Supp. 60 (D.D.C. 1995)........................................................38, 39

*Waskow v. Associated Press*,
   462 F.2d 1173 (D.C. Cir. 1972) ...........................................................29

*Weyrich v. New Republic, Inc.*,
   235 F.3d 617 (D.C. Cir. 2001) .............................................................15

*White v. Fraternal Order of Police*,
   909 F.2d 512 (D.C. Cir. 1990) ........................................................14, 28

*Woods v. Evansville Press Co., Inc.*,
    791 F.2d 480 (7th Cir. 1986) ....................................................................31

*Xereas v. Heiss*,
    933 F.Supp.2d 1 (D.D.C. 2013) ................................................................19

*Zelaya v. UNICCO Serv. Co.*,
    587 F.Supp.2d 277 (D.D.C. 2008) .............................................................39

## U. S. CONSTITUTION

First Amendment ....................................................6, 7, 12, 14, 24, 31, 32, 33, 36, 38

## FEDERAL RULES

Fed. R. Civ. P. 12(b)(5)................................................................................3

Fed. R. Civ. P. 12(b)(6)......................................................3, 7, 39, 40, 41, 43

Fed. R. Civ. P. 12(f)...................................................................................43

## MISCELLANEOUS

https://thedcpatriot.com/statement-from-matt-couch/ ...............................................25

https://www.merriam-webster.com/dictionary/confederate ...................................23

## <u>INTRODUCTION</u>

This Court is very familiar with the nefarious conduct perpetrated by Plaintiff Matthew Couch and his comrades against Aaron Rich, the Rich family and many others.  Widely disseminated and wildly unsubstantiated conspiracy theories—enthusiastically spread by Plaintiff for financial gain—spawned a host of lawsuits nationwide, including *Rich v. Butwosky, et al.*, No. 18-cv-681, and *Bauman v. Butowsky, et al.*, No. 18-cv-1191, in this Court.  This action is another chapter in that tedious saga.

Plaintiff's current action complains about reporting over conspiracy theories that Plaintiff undeniably played a central role in perpetuating.  Defendant Michael Isikoff, a veteran professional investigative reporter, hosted *Conspiracyland*, a six-episode podcast series about the murder of Seth Rich and its aftermath ("Podcast").  The underlying facts of the death of Seth Rich remain unsolved, but the Podcast lays out the various theories behind the Rich murder.  As the name of the podcast suggests, *Conspiracyland* explores and debunks the sordid web of theories surrounding Seth Rich's murder by relying on documents and first-person interviews.  In episode six of the Podcast, Isikoff discusses conspiracy theories pushed by Plaintiff, including the concocted and profoundly hurtful narrative that Seth Rich's brother, Aaron Rich, helped "cover up" Seth Rich's murder and took money from foreign sources in the process.  Just recently, Plaintiff finally apologized to Aaron Rich and the Rich family, and retracted his baseless narrative.  But the Riches were not the only victims.  The episode also recounts how Seth Rich's friend, Joe Capone, and his neighbor, Mark Mueller, were targeted by Plaintiff's ilk.

Despite his heartless and breathless attacks against innocent figures suffering from the loss of their brother, friend and neighbor, Plaintiff harbors a special sensitivity to having his conspiracy theories challenged.  Plaintiff can dish it out, but he can't take it.  Plaintiff sues

Isikoff and Verizon Communications Inc. ("Defendants"), among others, for defamation and other ancillary claims.  Plaintiff alleges he was defamed by the suggestion that he "lied" about Aaron Rich, even though Plaintiff has now retracted all of his attacks against Aaron.  He alleges he was defamed by purported implications that Defendants never actually made concerning attacks against Joe Capone and Mark Mueller.  And, in the portion of the Complaint most strikingly lacking in self-awareness, Plaintiff sues for defamation because the Podcast suggested he is a "bully," among other things.  Plaintiff complains about the "hell" Aaron Rich—who is still mourning the loss of his brother—"is putting *Couch* through" for pushing back against Plaintiff and refusing to participate in his personal "investigation" into Aaron's conduct.  Compl. ¶¶ 46, 99 (emphasis added).  Plaintiff has no problem wreaking havoc on other people's lives, but he comes to this Court asking for relief for his hurt feelings and a vehicle to "prove" his crackpot theories, many of which he has already retracted.

As reflected in the chart at Appendix A at the end of this Memorandum of Law, Plaintiff's claims for defamation and defamation *per se* fail for a number of independent reasons. Many of the various purported statements and alleged implications either were not published or cannot reasonably be implied from the Podcast as a matter of law.  None of the alleged statements or implications is verifiable, because, as a matter of law, each is either fair comment or constitutionally protected as opinion, rhetorical hyperbole or the alternative presentation of facts on an ambiguous issue.  As a consequence, none of the alleged statements or implications can support a defamation claim.  Even if some of the statements were verifiable, many of them are true (and therefore constitutionally protected) and/or they are protected by the common law fair report privilege.  Other statements, such as the purported implication that Plaintiff said Joe Capone met with Hillary Clinton, are not defamatory.  Finally, Plaintiff, a self-described public

figure, did not—and cannot—adequately allege as to each and every statement and purported implication that Defendants acted with the requisite degree of constitutional actual malice.  For these reasons, the defamation claims can and should be dismissed with prejudice.

Plaintiff's ancillary claims fare no better.  Some of the claims simply are not recognized under the law as torts, and the remaining ones all fall with the defamation claims.  Plaintiff's claims against Verizon Communications Inc. ("Verizon") fail because Verizon has no connection to the allegations of the Complaint other than as the ultimate parent of the entity that offers the Podcast, and Plaintiff has not pled any facts to pierce the corporate veil.

Defendants respectfully request that Plaintiff's Complaint, and each claim therein, be dismissed with prejudice.[1]

## **FACTUAL BACKGROUND**

Seth Rich, an employee of the Democratic National Committee ("DNC"), was murdered outside his home on July 10, 2016.  *Bauman v. Butowsky*, 377 F. Supp. 3d 1, 4 (D.D.C. 2019) (Leon, J.).  Seth's murder remains unsolved.[2]  *Id.*  The murder "spawned a number of conspiracy theories aiming to connect Seth Rich's death to the hack and leak of DNC emails to Wikileaks during the run-up to the 2016 presidential election."  *Id.*  The report of Special Counsel Robert S. Mueller III later recounted the view of the American intelligence community that Russia was

---

[1] Defendants concurrently filed a motion to dismiss with prejudice pursuant to Rule 12(b)(5) of the Federal Rules of Civil Procedure.  If the Court is not inclined to grant the Rule 12(b)(5) motion with prejudice, then Defendants respectfully request that this Rule 12(b)(6) be granted with prejudice.

[2] Seth Rich is occasionally referred to herein as "Seth" and his brother Aaron Rich is occasionally referred to as "Aaron" not out of any disrespect, but just to disambiguate the two Rich brothers.

behind the hack and the leak, and rejected the notion that Seth Rich was the source of the leaked DNC emails.  Ex. C at 48-49.[3]

The first season of the Podcast *Conspiracyland* focuses on the Seth Rich murder and the conspiracy theories spawned by his death.  The sixth and final episode of the Podcast—and a bonus episode accompanying the sixth episode—discuss in moving terms the "collateral damage" to Seth's family, friends and acquaintances exacted by various conspiracy theories. Exs. A, B.  The sixth episode and bonus episode discuss Plaintiff, a "conservative commentator" with a "wide following on social media."  Compl. ¶ 6.  The episodes recount—and challenge— Plaintiff's suggestion that Aaron was involved in downloading DNC data, that Aaron received payment for such data and that Aaron supposedly was helping to "cover up" the investigation into Seth's murder.   Ex. A at 11:11-16:19.[4]  Plaintiff's Complaint recites some of his conspiracy theories, but Plaintiff asserts that he "never postulated any particular answer to [the] Seth Rich murder mystery, but he has, in parallel, sought to research the links between Seth Rich, his brother Aaron and Wikileaks."  Plaintiff asserted, "Seth and Aaron may have worked together to download DNC emails and transfer the emails and other data to Wikileaks, and received payment in exchange for such data from Wikileaks."  Compl. ¶¶ 3, 23-34, 37-40.

The episode also discusses how some conspiracists claimed that Seth's friend, Joe Capone, met with Hillary Clinton in the days before Seth's death.  Ex. A at 19:20-21:19.  The Podcast further contains an interview with Seth's neighbor, Mark Mueller, who was victimized by conspiracists who: published the addresses and phone numbers of Mueller and his siblings

---

[3] Defendants respectfully request that the Court take judicial notice of their exhibits for the reasons discussed in their concurrently-filed Request for Judicial Notice.

[4] Specific cites to Exhibits A and B refer to the certified transcripts of episode six and the bonus episode accompanying episode six, respectively.  As discussed in the concurrently-filed Request for Judicial Notice, the actual episodes are available as well.

and neighbors; superimposed pictures of serial killer Jeffrey Dahmer's face on photos of Mueller; and caused Mueller to believe that bad actors might want to rent his (Mueller's) basement apartment.  *Id.* at 21:20-23:7.

Finally, peppered throughout the episode are statements that, frankly, call Plaintiff what he is: a conspiracy entrepreneur (because he seeks money and sells goods while peddling his conspiracies), a troll and a crankster (for making life difficult for so many in Seth's orbit), while working with his confederate (*i.e.*, his ally) "Josh" when, for example, Plaintiff and Josh read aloud a letter from Aaron pleading with Plaintiff to stop harassing him and his family.  Ex. A at 11-23; Ex. B at 7.

Plaintiff complains about myriad aspects of the Podcast, but, from a legal perspective, his gripes coalesce around the following alleged statements and purported implications by Defendants as reflected in Paragraph 136 of the Complaint that Plaintiff:

     a.  "Lied about Aaron being involved in downloading DNC data;"

     b.  "Lied about Aaron receiving payment in exchange for said data;"

     c.  "Lied about Aaron covering up his role in downloading DNC data;"

     d.  "Lied about Aaron failing to cooperate with private investigators;"

     e.  "Lied about Aaron obstructing the official investigation;"

     f.  "Asserted that Aaron murdered his brother or participated in the murder of his brother or covered up his involvement in the murder of his brother;"

     g.  "Asserted that Joe Capone met Hilary [*sic*] Clinton or aides to Hilary [*sic*] Clinton in the days before Seth Rich's murder;"

     h.  "Asserted that Joe Capone plotted Seth Rich's murder/assassination with Hilary [*sic*] Clinton or aides to Hilary [*sic*] Clinton;"

    i.      "'Doxxed' Mark Mueller by publishing the addresses and phone number of his siblings and neighbors;"

    j.      "Superimposed Mr. Mueller's head on pictures of serial killer Jeffrey Dahmer and Dexter;"

    k.     "Sought to rent out Mr. Mueller's basement room to gain access to documents relating to Seth Rich;"

    l.      "Was an Internet 'conspiracy entrepreneur;'"

    m.    "Was an 'Internet troll;'"

    n.     "Was an 'Internet crankster;'"

    o.     "Was an 'Internet bully;'"

    p.     "Was a member of the 'alt-right;'"

    q.     "Was an associate of a Southern 'confederate.'"

Compl. ¶ 136(a)-(q).  Plaintiff employs some of those same alleged statements and implications to formulate his defamation *per se* claim alleging that Defendants "falsely asserted, or implied, that Plaintiff has committed crimes for which he can be criminally indicted and convicted, including falsely accusing a person of murder, illegally stealing and publishing personal information, and attempted burglary." *Id.* ¶ 144.  For the reasons articulated below, none of the statements and alleged implications in the Complaint can give rise to a claim for defamation, or any of the ancillary claims concocted by Plaintiff.

## **LEGAL STANDARD**

      "[T]he Supreme Court has directed courts to expeditiously weed out unmeritorious defamation suits" in order "[t]o preserve First Amendment freedoms[.]"  *Kahl v. Bureau of Nat'l Affairs, Inc.*, 856 F.3d 106, 109 (D.C. Cir. 2017).  Early resolution of defamation cases on a motion

to dismiss "not only protects against the costs of meritless litigation, but provides assurance to those exercising their First Amendment rights that doing so will not needlessly become prohibitively expensive." *Fairbanks v. Roller*, 314 F. Supp. 3d 85, 89 (D.D.C. 2018) (internal quotation marks omitted); *see also Kahl*, 856 F.3d at 109 ("[c]ostly and time-consuming defamation litigation can threaten those essential freedoms [of speech and of the press]"); *Mar-Jac Poultry, Inc. v. Katz*, 773 F. Supp. 2d 103, 111 (D.D.C. 2011) (courts should "dispose of defamation cases against the news media … as soon as possible").

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain sufficient factual allegations that, if true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plausibility requires that a complaint raise "more than a sheer possibility that a defendant has acted unlawfully," and requires "the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).  Pleading facts that are "merely consistent with" a defendant's liability "stops short of the line between possibility and plausibility." *Twombly*, 550 U.S. at 545–46.  Thus, a court evaluating a motion to dismiss for failure to state a claim does not accept the truth of legal conclusions, "naked assertion[s] devoid of further factual enhancement," or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678; *see also Bauman*, 377 F. Supp. 3d at 6 (same).  Consideration is limited to "well-pleaded factual allegations," *Iqbal*, 556 U.S. at 679, and "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice," *Hurd v. D.C. Gov't*, 864 F.3d 671, 678 (D.C. Cir. 2017).

## ARGUMENT

I.   **PLAINTIFF'S DEFAMATION AND DEFAMATION *PER SE* CLAIMS FAIL AS A MATTER OF LAW.**

The elements of defamation are: "(1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm."  *Bauman*, 377 F. Supp. 3d at 10 (quoting *Rosen v. American Israel Public Affairs Comm., Inc.*, 41 A.3d 1250, 1255-56 (D.C. 2012)).[5]  "A plaintiff must prove the defamatory nature of a libelous publication, unless the publication constitutes libel per se," which "requires the actual imputation of a criminal offense."  *Bannum, Inc. v. Citizens for a Safe Ward Five, Inc.*, 383 F. Supp. 2d 32, 40 (D.D.C. 2005) (citations omitted); *see also Raboya v. Shrybman & Assoc.*, 777 S. Supp. 58, 59-60 (D.D.C. 1991) (granting motion to dismiss because accusation of child neglect did not impute crime).

Plaintiff's defamation and defamation *per se* claims fail for a variety of independent reasons as discussed below and as reflected in the chart at Appendix A to this Memorandum.

### A.   Several of the Alleged Implications Are Not Reasonable As A Matter Of Law.

An essential element of defamation is that "the statement was published to a third party."  *Farah v. Esquire Magazine*, 736 F.3d 528, 533-534 (D.C. Cir. 2013).  And "[n]othing in law or

---

[5] Public figures, like Plaintiff here, must prove more than mere negligence; public figures must show constitutional actual malice with clear and convincing evidence.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-57 (1986).

common sense supports saddling a libel defendant with civil liability for a defamatory implication nowhere to be found in the published article itself." *Tavoularas v. Piro*, 817 F.2d 762, 781 (D.C. Cir. 1987). A claim for "defamation by implication requires 'an especially rigorous showing,' as the publication 'must not only be reasonably read to impart the false innuendo, but it must also affirmatively suggest that the author intends or endorses the inference.'" *Bauman*, 377 F. Supp. 3d at 15 (citations omitted). "A court first looks at whether a statement is 'capable of conveying' the alleged defamatory implication, which is a threshold issue that 'the courts are charged with the responsibility of determining' as a matter of law." *Mar-Jac Poultry*, 773 F. Supp. 2d at 114 n.6.

Plaintiff's Complaint puts in quotes that he was called an "Internet bully" and a member of the "alt-right." Compl. ¶¶ 136(o), (p). Those terms do not appear in the Podcast or Bonus Episode. *See generally* Exs. A, B. Defendants do not dispute that the Podcast implies Plaintiff is a bully, but that is a non-verifiable—and therefore non-actionable—term as discussed below in Section I.C.3, *infra*. Defendants dispute, however, that Plaintiff is labeled "alt-right" in the Podcast, but even if he were, that, too, is a non-verifiable term and is therefore protected. *Id.*

The Court can and should find that several of the implications alleged by Plaintiff are not reasonable as a matter of law. First, the purported implication that the Podcast claimed that Plaintiff "asserted that Aaron murdered his brother or participated in the murder of his brother or covered up his involvement in the murder of his brother," is not reasonable. Compl. ¶¶ 136(f); *see also Id.* ¶ 144 (claiming Defendants asserted Plaintiff "falsely accus[ed] a person of murder"). The Podcast recounts Plaintiff's repeated and adamant ***denial***, using Plaintiff's own voice, that Plaintiff ever asserted that "Aaron killed his brother." Ex. A at 15:20-21; *id.* at 16:1-3 ("we never once said that you [Aaron] killed your brother"). The Bonus Episode states, in

context, that Plaintiff accuses Aaron of being complicit in covering up the ***investigation*** of his brother's murder.  Plaintiff states: "Aaron Rich is like, why would he turn over anything to the likes of somebody like Matt Couch.  But when he refuses to do so, aha, you see. … There's a cover up.  He's covering up and therefore, and therefore he's complicit in his brother's murder.  He's obstructing the investigation into his brother's murder."  Ex. B at 7:8-15.  But Plaintiff ***admits*** that he says Aaron was involved in helping "cover up" the death of his brother.  Plaintiff states: "Now, did we say he was involved in helping cover things up [about Seth's murder], yeah, yeah we – we did, because Aaron, you won't release the phone records.  Aaron you won't release the laptops, the phone, you won't cooperate with investigators.  So yeah, we have said that you [Aaron] covered things up[.]"  Ex. A at 15:21-16:2.  ***Nowhere*** in the Podcast or Bonus Episode do Defendants state or imply that Plaintiff asserted "Aaron murdered his brother or ***participated*** in the murder of his brother or covered up his ***involvement*** in the murder of his brother" or "falsely accus[ed] a person of murder."  Compl. ¶¶ 136(f), 144 (emphases added).  Such purported implications are unreasonable as a matter of law.

Second, the Podcast does not reasonably imply that Plaintiff asserted "Joe Capone plotted Seth Rich's murder/assassination with Hilary [*sic*] Clinton or aides to Hilary Clinton."  Compl. ¶ 136(h).[6]  That alleged implication is simply invented out of whole cloth.  *See* Ex. A at 19:20-21:19.

---

[6] Plaintiff also suggests that Isikoff made this implication in an interview with NPR, *id.*, ¶ 109, but even Plaintiff admits that Isikoff's purported quote "has no connection to Plaintiff" and does not even mention or allude to Plaintiff in any way.  An essential element of a defamation claim is that the allegedly defamatory statements or implications are "of and concerning" – *i.e.*, about – the plaintiff.  *Secord v. Cockburn*, 747 F. Supp. 779, 783 (D.D.C. 1990); *Oparougo v. Watts*, 884 A.2d 63, 76 (D.C. 2005) (defamatory statements must be "concerning" the plaintiff).

<u>Third</u>, the Podcast does not reasonably imply that Plaintiff: (1) is the one who published information about Mark Mueller's siblings and neighbors, thereby "stealing and publishing personal information;" (2) that Plaintiff superimposed Mueller's head on pictures of Jeffrey Dahmer and the character Dexter; or (3) that Plaintiff ***personally*** "sought to rent out Mr. Mueller's basement room," let alone that he did so "to gain access to documents relating to Seth Rich" or "attempted burglary." *Compare* Compl. ¶¶ 136(i), (j), (k), 144 *with* Ex. A at 22:7-23:7. At most, Mueller says on the Podcast that an unspecified "***they***" and "***people***" did such things (never accusing anyone of "stealing and publishing personal information" or "attempted burglary"), and that it was "trolls" "***like*** Matt Couch" and his followers, who collectively caused Mueller considerable emotional distress and financial hardship.  Ex. A at 22:7-23:7 (emphasis added).

Finally, there are insufficient, if any, allegations in the Complaint that Defendants "intended or affirmatively endorsed" any of the purported implications raised by Plaintiff. *Bauman*, 377 F. Supp. 3d at 15; *Guilford Transp. Indus., Inc. v. Wilner*, 760 A.2d 580, 596 (D.C. 2000).  For this additional reason, the purported implications cannot as a matter of law support Plaintiff's defamation claims.  *Id.*

### B.  All of the Statements and Alleged Implications Are Protected by the Fair Comment Privilege.

"The common law privilege of fair comment applies where the reader is aware of the factual foundation for a comment and can therefore judge independently whether the comment is reasonable."  *Lane v. Random House, Inc.*, 985 F. Supp. 141, 150 (D.D.C. 1995); *see also Moldea v. New York Times*, 15 F.3d 1137, 1144 (D.C. Cir. 1994) (*Moldea I*) (fair comments are not actionable "[b]ecause the reader understands that such supported opinions represent the

writer's interpretation of the facts presented, and because the reader is free to draw his or her

own conclusions based upon those facts").  Moreover, in the District of Columbia, "the fair

comment privilege can be invoked even if the underlying facts ***are not*** included with the

comment."  *Lane*, 985 F. Supp. at 150 (emphasis added; citations omitted).  The application of

the fair comment privilege is determined as a matter of law.  *Dall v. Pearson*, 246 F. Supp. 812,

813 (D.D.C. 1963).

Here, the Podcast provides the underlying reference for every comment made about

Plaintiff, including several using Plaintiff's own words.  *See, e.g.,* Ex. A at 11-23.  The

statements concerning Aaron are supported by the interviews with Aaron, Aaron's counsel and a

prosecutor, Aaron's lawsuit against Plaintiff, and audio from Plaintiff and his accomplice Josh.

*Id.* at 11- 19; Exs. C, E.  The statements about Capone and Mueller are supported by interviews

with those individuals.  Ex. A at 19-23.  The common law fair comment privilege applies

because the listener to the Podcast has Defendants' bases for the statements and purported

implications raised in the Complaint.

### C.  None of the Statements or Alleged Implications Convey Verifiable Statements of Fact, and Therefore None Can Support A Defamation Claim.

The U.S. Supreme Court has made clear that the First Amendment limits defamation

plaintiffs to complaints about defamatory facts.  *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 19-

20 (1990).  Statements that "cannot 'reasonably [be] interpreted as stating actual facts' about an

individual" are not actionable.  *Id.* at 20 (*quoting Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46,

50 (1988)).  The Podcast is a documentary-style discussion of conspiracy theories, and the

damage those conspiracies can cause, including by conspiracy theorists like Plaintiff.  *See*

*generally* Ex. A.  That is the context.  And "'context is crucial', as it 'can turn what, out of

12

context, appears to be a statement of fact into 'rhetorical hyperbole,' which is not actionable." *Bauman*, 377 F. Supp. 3d at 13 (quoting *Ollman v. Evans*, 750 F.2d 970, 1000 (D.C. Cir. 1984) (Bork, J., concurring)). "The determination of whether a statement asserts actionable facts or implies such facts is a question of law for the court to determine as a threshold matter." *Bauman*, 377 F. Supp. 3d at 11 (internal quotation marks omitted; quoting *Montgomery v. Risen*, 197 F. Supp. 3d 219, 247-248 (D.D.C. 2016) and *Moldea I*, 15 F.3d at 1144).

In *Lane v. Random House*, the plaintiff, Mark Lane, claimed he was defamed by an advertisement for a book about the assassination of President John F. Kennedy. 985 F.Supp. at 144-145. Defendant's book reaffirmed the conclusion of the Warren Commission that Lee Harvey Oswald acted alone in killing President Kennedy. *Id.* at 144. Lane, however, advanced the following conspiracy theory: "[t]here is no convincing evidence that Oswald fired a gun from the sixth-floor window of the Book Depository or anywhere else on the day of the assassination." *Id.* at 145. The advertisement for Random House's book carried a photograph of Lane, among others, and the following statement: "GUILTY OF MISLEADING THE AMERICAN PUBLIC." *Id.* Judge Lamberth of this Court explained that Random House's statement was the "ideal prototype" of protected speech and "subjective belief" because the "evaluation cannot be objectively verified without resolving thirty years of controversy surrounding the Kennedy assassination." *Id.* at 150-151. Thus, "the challenged Random House statement has no provably false connotation, nor does it imply provable facts." *Id.* at 151.

In *Bauman*, this Court held that the plaintiff could not state a claim for defamation where the defendant, Edward Butowsky, stated that the plaintiff, Brad Bauman, "should apologize to the country for crafting a lie." 377 F. Supp. 3d at 13-14. The Court discussed the context of that statement, which parallels the context here: "Bauman was serving as a spokesman at the center

of a heated public controversy over the Seth Rich murder, and he and Butowsky were sparring in the mainstream and fringe press from opposite sides of the fray." *Id.* at 13-14 (citing, *inter alia, Fudge v. Penthouse Int'l, Ltd.*, 840 F.2d 1012, 1017 (1st Cir. 1988) ("In the charged context of a debate over a matter of public concern, the reader will expect a certain amount of hyperbole and loose characterization—in short, a certain amount of opinion")). Here, Defendants challenge and dispute Plaintiff's spreading of conspiracy theories concerning the Seth Rich murder and Plaintiff's conduct toward various persons caught up in the murder and its investigation. "While there is, of course, no real comparison to be made between the public debate over the Kennedy assassination and Seth Rich's murder, this case does share much with *Lane.* Like the Kennedy assassination," this Court held in *Bauman,* "the circumstances surrounding Seth Rich's death remain unresolved. Perhaps this would be a different case if the murderer had been caught, tried, and convicted and the motive made public; the present state of play, however, effectively precludes a factual determination as to the falsity of Butowsky's statement." *Bauman,* 377 F. Supp. 3d at 14 (citation omitted).

Under the First Amendment, unverifiable statements and implications, which are incapable of supporting a defamation claim, come in a variety of forms so as to preserve "the breathing space which freedoms of expression require in order to survive." *Milkovich*, 497 U.S. at 19 (quotation marks, alteration, and citation omitted). First, an opinion, "having no provably false factual connotation is entitled to full constitutional protection." *White v. Fraternal Order of Police*, 909 F.2d 512, 522 (D.C. Cir. 1990); *see also Washington v. Smith*, 80 F.3d 555, 556 (D.C. Cir. 1996) ("a statement of opinion is actionable only if it has a … factual foundation").[7]

---

[7] Four factors are considered in determining whether a statement is non-actionable opinion: (1) "the common usage or meaning of the specific language of the challenged statement itself;" (2) whether "the statement [is] capable of being objectively characterized as true or false;" (3) "the

For example, a defendant's statement that a plaintiff was a "con artist" behind "one of the most elaborate and dangerous hoaxes in American history," was held to be "a quintessential example of subjective opinion."  *Montgomery*, 197 F. Supp. 3d at 248-249.

Second, "rhetorical hyperbole," "imaginative expression," figurative language, and subjective impressions created by a publication all are constitutionally protected even where they might otherwise suggest criminal conduct.  *Milkovich*, 497 U.S. at 18, 20.  In *Greenbelt Coop. Publ. Assn. v. Bresler*, the U.S. Supreme Court held that an accusation that the plaintiff had engaged in "blackmail" was protected as it was "no more than rhetorical hyperbole, a vigorous epithet used by those who considered [the plaintiff's] negotiating position extremely unreasonable."  398 U.S. 6, 13-14 (1970); *see also Mar-Jac Poultry*, 777 F. Supp. 2d at 122 (statements in news report that chicken processing company may have been used as a conduit for laundering terrorist funds were "clearly hyperbolic, speculative, and as surmise did not imply a verifiably false fact").   The rule applies to vigorous and sharp epithets.  *See Weyrich v. New Republic, Inc.*, 235 F.3d 617, 624-625 (D.C. Cir. 2001) (same rules as applied to statements that plaintiff had bouts of "paranoia"); *Bauman*, 377 F. Supp. 3d at 13-14 (statement that plaintiff "should apologize to the country for crafting a lie" is not actionable in a dispute over controversies surrounding the murder of Seth Rich); *Lane*, 985 F. Supp. at 150 (statement that plaintiff was "guilty of misleading the American public" is "ideal prototype" of protected speech (emphasis removed)).

Third, statements reflecting varying interpretations or versions of events are classified as non-actionable for the purposes of a defamation claim.  *Guilford Transp. Indus.*, 760 A.2d at 597

---

full context of the statement;" and (4) "the broader context or setting in which the statement appears."  *Ollman*, 750 F.2d at 979.

("'if it is plain that a speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable'" (quoting *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993))); *Mar-Jac Poultry*, 773 F. Supp. 2d at 122 (same); *see also Clemmons v. Academy for Educ. Dev.*, 70 F. Supp. 3d 282, 308 (D.D.C. 2014) ("under District of Columbia law, opinion statements that lend themselves to varying interpretations are insufficient for a defamation claim because they cannot be proved false"); *Bauman*, 377 F. Supp. 3d at 12 (same); *accord Levin v. McPhee*, 119 F.3d 189, 197 (2d Cir. 1997) (differing "versions" or "personal theories" of events, imbued with "speculation," do not imply actionable facts); *Gray v. St. Martin's Press, Inc.*, 221 F.3d 243, 248 (1st Cir. 2000) (vague language subject to multiple interpretations not actionable).

Fourth, a view that is based on disclosed premises or facts is protected speech, particularly where there is an ongoing debate on a charged subject such as the circumstances surrounding the murder of Seth Rich.  *See Bauman*, 377 F. Supp. at 11 & n. 9; *see also Moldea v. New York Times Co.*, 22 F.3d 310, 317 (D.C. Cir. 1994) (*Moldea II*) (holding, where an "assessment is supported by revealed premises that we cannot hold to be false in the context of a book review," readers understand it carries opinion, *id.* at 315); *Moldea I*, 15 F.3d at 1144-45 ("Because the reader understands that such supported opinions represent the writer's interpretation of the facts presented, and because the reader is free to draw his or her own conclusions based upon those facts, this type of statement is not actionable in defamation"); *Adelson v. Harris*, 973 F. Supp. 2d 467, 490 (S.D.N.Y. 2013) (when a defendant provides the facts underlying the challenged statements, it is "clear that the challenged statements represent

his own interpretation of those facts," which "leav[es] the reader free to draw his own conclusions").

Fifth, statements of motivation, intent or purpose also cannot support a defamation claim. *Montgomery*, 197 F. Supp. 3d at 248 (an assertion of motivation is a "subjective judgment that is not verifiable"); *accord Haynes*, 8 F.3d at 1227 (a person's motivations "can never be known for sure," even by that person, "and anyone is entitled to speculate on a person's motives from the known facts of his behavior"); *Gracel v. Owens & Minor Distrib., Inc.*, 666 F.3d 1142, 1147-1148 (8th Cir. 2012) (same); *Murray v. HuffingtonPost.com, Inc.*, 21 F. Supp. 3d 879, 886 (S.D. Ohio 2014) ("there are no objective tests to determine [a person's] internal motivation").

Taken in the context of a podcast about conspiracy theories surrounding the death of Seth Rich, with first-person interviews from Aaron, Aaron's lawyer, Capone and Mueller, describing their positions and frustrated views on Plaintiff and others, it is clear that all of the allegedly defamatory statements and purported implications fall into at least one of the foregoing categories, and each, therefore, is non-actionable and incapable of supporting a defamation claim. *See* App'x A.

## 1.    The Purported Statements that Plaintiff "Lied" About Aaron Rich Do Not Convey Verifiable Statements of Fact.

Paragraphs 136(a) through 136(e) of the Complaint challenge statements and purported implications accusing Plaintiff of supposedly "lying" about Aaron Rich's conduct as it pertains to the acquisition and sale of DNC data and Aaron's purportedly insufficient cooperation in connection with official and private investigations into the death of his brother, Seth Rich. Defendants' evaluation of Aaron's and Plaintiff's conduct under these circumstances is protected speech.  The critical context here is that ***Plaintiff*** is attacking Aaron.  Plaintiff is suggesting

17

Aaron colluded to steal DNC data and profited from that crime by "accept[ing] money … from Wikileaks" that went into Aaron's "personal account." Ex. A at 11:11-12:15.  Plaintiff is asking why Aaron is "covering everything up," "involved in helping cover things up," and "try[ing] to stop this investigation" into his own brother's death.  *Id.* at 11:20-23, 15:21-16:3.  Plaintiff wants to use his lawsuit to prove his conspiracy theories "correct," and is using the Podcast's challenge to his theories to claim he is being defamed as a "liar."

At most, the entire discussion about Plaintiff's theories concerning Aaron's activities invites speculation and surmise over an ambiguous series of events, which cannot support a defamation claim.  *Mar-Jac Poultry*, 773 F. Supp. 2d at 122; *Guilford Transp. Indus.*, 760 A.2d at 597; *accord Haynes*, 8 F.3d at 1227; *Levin*, 119 F.3d at 197.  The Podcast plays audio where Plaintiff admits: "Now, did we say he [Aaron] was involved in helping cover things up, yeah, yeah we – we did, because, Aaron, you won't release the phone records.  Aaron you won't release the laptops, the phone, you won't cooperate with investigators.  So yeah, we have said that you covered things up[.]"  Ex. A at 15:21-16:2.  Isikoff explains his understanding of the situation: "Aaron had cooperated with the D.C. Police, but he was not about to turn his brother's personal records over to an internet troll like Matt Couch."  *Id.* at 16:5-7.  In the Podcast, Isikoff also notes that: "As for the supposed money flow into Aaron's bank account from Wikileaks, the basis for that was completely mysterious."  Ex. A at 12:22-24.  Counsel for Aaron recounts the lawsuit she filed, *Rich v. Butowsky*, and her perspective about Plaintiff's conduct.  *Id.* at 13:6-19.  The Podcast calls out Plaintiff's "contemptuous" reading of Aaron's letter where Aaron was pleading with Plaintiff to stop harassing him, and the Podcast plays audio where Plaintiff and his comrade mock Aaron and accuse him of "cover[ing] things up" in his own brother's murder.  *Id.* at 14:20-17:14.  Even Plaintiff asserts his views on these issues were equivocal:  that he merely

"suggested a '*possibility*,'" that "Aaron had worked with his brother, Seth, in downloading [DNC] emails," and that he "simply repeat[ed[ what he *believed* … to be a true statement, that Aaron received money in his account."  Compl. ¶¶ 58-59 (emphasis added); *see also Id. ¶* 68 (the "*suggestion*" that "Aaron worked with Seth in downloading DNC emails … cannot be a lie") (emphasis in original); Ex. A at 11:11-13 (Couch: "We do believe that it's *possible* that Aaron and Seth worked together and did the leaks together, folks" (emphasis added)).  Even if Plaintiff's perspective had credence—which Defendants do not concede—it is but one version of a very controversial set of events, with Plaintiff on one side, and Aaron, Aaron's counsel and a skeptical Podcast on the other.  The listener is left to draw his or her own conclusions.

Alternatively, even if the Podcast did state definitively that Plaintiff "lied" about his conspiracy theories (it did not), that would be protected opinion in the context of a podcast titled *Conspiracyland*, which is dedicated to examining conspiracy theories.  In *Farah*, the D.C. Circuit held that defendants' statements that plaintiffs were "spreading 'lies'" about a conspiracy concerning the place of President Obama's birth were "protected opinion" andcould not support a defamation claim.  736 F.3d at 539; *see also Sinclair v. TubeSockTedD*, 596 F. Supp. 2d 128, 133 (D.D.C. 2009) ("just stating that someone is 'spreading lies' or is a liar may not be actionable as defamation"); *Xereas v. Heiss*, 933 F. Supp. 2d 1, 18-19 (D.D.C. 2013) (statements that plaintiff engaged in "dishonest" and "deceptive" business practices were not provably false and therefore not actionable).  Similarly, in *Montgomery*, Judge Contreras of this Court held that the characterization of the plaintiff as a "con artist" responsible for "one of the most elaborate

and dangerous hoaxes in American history" were unverifiable—and therefore protected—expressions of opinion.  197 F. Supp. 3d at 248-249.[8]

Finally, even Plaintiff concedes that Defendants' purported assertions that Plaintiff "lied" about Aaron are really just "claims about Plaintiff's subjective mental state."  Compl. ¶ 63; *id.* at ¶ 69 ("It is impossible for Couch to 'lie' given his beliefs …").  That puts Paragraphs 136(a) through (e) squarely within the rule articulated in *Montgomery* that an assertion of motivation is a "subjective judgment that is not verifiable."  197 F. Supp. 3d at 248; *see also Haynes*, 8 F.3d at 1227; *Gracel*, 666 F.3d at 1147-1148.

Under several different approaches, Paragraphs 136(a) through (e) are not verifiable and therefore cannot support Plaintiff's defamation claims.

### 2. The Purported Statements and Implications that Plaintiff Took Actions Against Others Are Not, In Context, Verifiable.

Paragraphs 136(f) and 144 of the Complaint—alleging that the Podcast states that Plaintiff asserted that Aaron covered up his own "involvement" in Seth's murder and that Plaintiff "falsely accused [Aaron] of murder"—are not reasonable implications for the reasons discussed above.  *See* Section I.A, *supra*.  Even if they were reasonable implications, however, they would be protected as alternative versions of an ambiguous set of facts.  *See Bauman*, 377 F. Supp. 3d at 12; *Clemmons*, 70 F. Supp. 3d at 308; *Mar-Jac Poultry*, 773 F. Supp. 2d at 122;

---

[8] These holdings are akin to those in other jurisdictions.  For example, in *Underwager v. Channel 9 Australia*, 69 F.3d at 361, 367 (9th Cir. 1995), the Ninth Circuit analogized an assertion that someone had been "lying" to the mere "rhetorical hyperbole" of being accused of "blackmail" found in *Greenbelt*, 398 U.S. at 13-14.  In *Underwager*, the defendant directly accused the plaintiff of "lying" *to a court*, but the Ninth Circuit held that the plaintiff "failed to show that the statement implie[d] a verifiable assertion of perjury."  *Id.*  The court noted that "the term 'lying' applies to a spectrum of untruths including 'white lies,' 'partial truths,' 'misinterpretation,' and 'deception.'"  *Id.*

*Guilford Transp. Indus.*, 760 A.2d at 597; *accord Haynes*, 8 F.3d at 1227.  Plaintiff suggests that—although he is willing to accuse Aaron of "covering up" the investigation into Seth's murder and is effectively labeling Aaron an accessory-after-the-fact to murder—Plaintiff did not cross a line and accuse Aaron of being "involved" in Seth's death.  Compl. ¶¶ 136(f), 144.  That kind of hair-splitting is precisely why alternative interpretations are not considered verifiable.  Moreover, to the extent Paragraph 136(f) complains about the Podcast's interpretation of what Plaintiff was thinking by levying allegations about Aaron's "cover up," such an interpretation would also be protected speech because statements of motivation, intent or purpose also cannot support a defamation claim.  *Montgomery*, 197 F. Supp. 3d at 248; *accord Haynes*, 8 F.3d at 1227.

The purported implications listed at Paragraph 136(g) through (k) of the Complaint and the remainder of Paragraph 144 are not reasonable, as discussed above.  *See* Section I.A, *supra*.  Even if they were reasonable implications, however, they too would be protected speech.  First, the factual foundation for each statement is set forth for the listeners to evaluate.  Ex. A at 19-23; *see Bauman*, 377 F. Supp. at 11 & n. 9; *see also Moldea II*, 22 F.3d at 317; *Moldea I*, 15 F.3d at 1144-45.   Second, they discuss whether unspecified persons, "like" Plaintiff or followers of Plaintiff or of Plaintiff's ilk, took actions adverse to Capone and Mueller.  Ex. A at 19-23.  That kind of speculation or surmise is not actionable.  *See Bauman*, 377 F. Supp. 3d at 12; *Clemmons*, 70 F. Supp. 3d at 308; *Mar-Jac Poultry*, 773 F. Supp. 2d at 122; *Guilford Transp. Indus.*, 760 A.2d at 597; *accord Haynes*, 8 F.3d at 1227; *Levin*, 119 F.3d at 197.

### 3.     The Hyperbolic Statements About Plaintiff Are Non-Verifiable, Non-Actionable Opinion and Rhetorical Hyperbole.

The statements and alleged statements that Plaintiff is an "Internet 'conspiracy entrepreneur,'" "'Internet troll,'" "'Internet crankster,'" "Internet bully,'" "a member of the 'alt-right,'" and "an associate of a Southern 'confederate'" are not actionable.  Compl. ¶¶ 136(l)-(q).  Even if all of those statements were made or could be reasonably implied, such statements are all non-actionable, constitutionally protected opinion and/or rhetorical hyperbole.

Plaintiff is "certainly entitled to his beliefs; but it is not defamatory to criticize him."  *Lane*, 985 F. Supp. at 149.  Whether someone is a conspiracist, a troll, a crankster, a bully or alt-right are all matters of non-verifiable opinion, subjective expressions and rhetorical hyperbole.[9]  Plaintiff pushes his conspiracy theories far and wide, and cannot expect immunity from epithets, opinions and rhetorical criticism.  As for calling Plaintiff a "conspiracy entrepreneur," that opinion is based on Plaintiff's own words—Plaintiff asks his followers for money after repeating his accusation that Aaron "covered things up" in the investigation of Seth's murder.  Ex. A at 16:1-23.  Plaintiff acknowledges this conduct, but Plaintiff offers his own opinion that what he

---

[9] *See Lane*, 985 F. Supp. at 149-152 (challenging "conspiracists'" views not actionable); *Automated Transactions LLC v. American Bankers Ass'n*, 216 A.3d 71, 78-83 (N.H. 2019) (calling someone a "patent troll" is an opinion that cannot support a defamation claim); *Purcell v. Ewing*, 560 F. Supp. 2d 337, 342-344 (M.D. Pa. 2008) (calling someone a "bully" is an insult insufficiently verifiable to support a defamation claim); *Hupp v. Sasser*, 490 S.E.2d 880, 887 (W.Va. 1997) (labeling someone a "bully" is protected "opinion devoid of a provably false assertion of fact" and "totally subjective" as "[t]he threshold of what constitutes bullyism to one would necessarily not be the same for another individual"); *Coghlan v. Beck*, 984 N.E.2d 132, 148-149 (Ill. Ct. App. 2013) ("What constitutes … the actions of a bully will vary widely from one person to another," and "cannot be shown to be true or false"); *McCafferty v. Newsweek Media Grp., Ltd.*, No. CV 18-1276, 2019 WL 1078355, at *4 (E.D. Pa. Mar. 7, 2019) (calling someone a "'member'" of the "alt-right" is not actionable because it is "merely [a] characterization[]" of a "political view"), *aff'd*, 955 F.3d 352 (3d Cir. 2020); *accord Buckley v. Littell*, 539 F.2d 882, 895 (2d Cir. 1976) ("what constitutes … 'the radical right'" is a matter of opinion).

does is "a perfectly legitimate mode of fundraising."  Compl. ¶ 83; *see also Id.* ¶¶ 85, 86.  As Judge Lamberth articulated, "[a] conspiracy theory warrior outfitted with Lane's acerbic tongue and pen should not expect immunity from an occasional, constrained chastisement."  *Lane*, 985 F. Supp. at 149.

Further, Plaintiff takes the "confederate" comment in the Podcast entirely out of context, and, in context, it is also protected expression.  Defendants are not calling Couch a "Southern 'confederate'" as if he were wearing a grey uniform in the Civil War (although that, too, would obviously be protected hyperbole).  What the Podcast actually says is that Plaintiff is with one of his "confederates named Josh" while Plaintiff contemptuously and mockingly reads aloud a letter from Aaron Rich on the livestream platform Periscope.  Ex. A at 14:16-17:10; *see also* Compl. ¶ 49 (Plaintiff acknowledging Periscope clip).  Aaron's letter pleads with Couch to stop harassing the Rich family, but Plaintiff's response and obvious goal is just to do more damage.  Ex. A at 14:16-17:10.  Plaintiff derisively jokes that Aaron might have sent anthrax with his letter, insists that he (Plaintiff) merely accused Aaron of covering up an investigation into his own brother's murder, jokes again that there might have been "something on the letter" if he and Josh "don't wake up in the morning," and then Plaintiff concludes by using Aaron's letter as an opportunity to ask his followers for money.  *Id.*  Plaintiff's takeaway from the well-justified critique of his heartless and cruel conduct is that the Podcast should not have used the word "confederate."  Of course, according to *Merriam-Webster*'s dictionary, the word "confederate" simply means "ally or accomplice," which is precisely what Josh was.  *confederate*, https://www.merriam-webster.com/dictionary/confederate (last visited Jan. 20, 2021).  Any alternate definition, however, would be protected opinion or hyperbole in describing Plaintiff at one of the lowest points in his sick campaign against the Rich family.

None of the allegedly defamatory statements of implications, even if reasonably drawn, convey verifiable facts.  As such, none can support a defamation claim.

### D.  Several of the Statements and Alleged Implications, Even if Verifiable, Are Substantially True.

#### 1.  Couch Has the Burden to Demonstrate Falsity.

Falsity is an element of a defamation claim.  *Lohrenz v. Donnelly*, 223 F.Supp.2d 25, 39 (D.D.C. 2002).  "The burden of proving falsity rests ***squarely on the plaintiff***, [who] must demonstrate either that the statement is factual and untrue, or an opinion based implicitly on facts that are untrue."  *Lane*, 985 F. Supp. at 150 (emphasis added); *see also Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 776-777 (1986) (burden of proving falsity is on plaintiff in a defamation case against a media defendant where the underlying issue is of public concern).  If the plaintiff is a public figure then he or she must prove falsity with clear and convincing evidence.  *Pearce v. E.F. Hutton Grp., Inc.*, 664 F.Supp. 1490, 1512 (D.D.C. 1987); *Sharon v. Time, Inc.*, 599 F.Supp. 538, 558 (S.D.N.Y. 1984); *cf. Fairbanks,* 314 F.Supp.3d at 90 ("[t]he First Amendment requires public figures suing in defamation to 'demonstrate by at least a fair preponderance of the evidence that the [allegedly] defamatory statement is false,' with close cases decided against them") (citation omitted)).

A statement is nonactionable if "[t]he sting of the charge ... is substantially true," *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1296 (D.C. Cir. 1988) – *i.e.*, "[m]inor inaccuracies do not amount to falsity so long as the substance, the gist, the sting of the libelous charge be justified," *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991) (internal quotation marks omitted).  *See also Ning Ye v. Holder*, 644 F. Supp. 2d 112, 116 (D.D.C. 2009) (it is an "absolute defense" to a defamation claim if the statements are "substantially true").  The "court

must … determine the threshold question of law of whether the statement is false." *Smith v.*
*Clinton*, 253 F. Supp. 3d 222, 239 (D.D.C. 2017).  In the context of granting a motion to dismiss,
and "[w]here the question of truth or falsity is a close one, a court should err on the side of
nonactionability." *Libre By Nexus v. Buzzfeed, Inc.*, 311 F.Supp.3d 149, 155 (D.D.C. 2018)
(internal quotation marks omitted); *see also Bauman*, 377 F. Supp. 3d at 15 (same and quoting
*Moldea II*, 22 F.3d at 31).

> ## 2. The "Gist" and "Sting" Of Several Statements And Alleged Implications
> ## Are Substantially True.

As discussed above, Paragraphs 136(a)-(e) do not convey verifiable statements that
Plaintiff "lied" about Aaron Rich, but, even if they did, it is substantially true that Plaintiff did
"lie" about Aaron.  On January 14, 2021, presumably to settle the litigation in the *Rich v.*
*Butowsky* action, Plaintiff released a statement apologizing to Aaron and retracting his previous
attacks:

> In August of 2017 America First Media and I began to report that
> Aaron Rich, Seth's brother, was involved in [*sic*] transfer of DNC
> documents to WikiLeaks, and receiving money in exchange.  Our
> reports about Aaron Rich were largely driven by information given
> to us by a single source, who we now believe provided us with false
> information and who, as of this date, has retracted his statements.
> Today, we retract and disavow our statements, and we offer our
> apology to Mr. Rich and his family.  I take full responsibility for my
> actions and those of America First Media before its dissolution, and
> would like to apologize to Mr. Rich and his family. All references
> related to Mr. Rich have been removed from our websites and social
> media platforms to the best of our ability.

Ex. D (https://thedcpatriot.com/statement-from-matt-couch/).  With this statement, Plaintiff
concedes that—to the extent his statements about Aaron were verifiable—Plaintiff *did* lie about
Aaron.  He expressly acknowledges that he passed along "false information" about Aaron being
"involved in [*sic*] transfer of DNC documents." *Compare id. with* Compl. ¶¶ 136(a), (c).  He

also expressly acknowledges that he conveyed "false information" about Aaron "receiving money in exchange" for the "transfer of DNC documents." *Compare* Ex. D *with* Compl. ¶ 136(b).  Plaintiff's "retract[ion] and disavow[al] of [his] statements" about Aaron, and his apology to Aaron and his family, at least implicitly, if not completely, acknowledges Plaintiff was peddling untruths by asserting that Aaron "fail[ed] to cooperate with private investigators" and that Aaron "obstruct[ed] the official investigation" of Seth's death.  *Compare* Ex. D *with* Compl. ¶¶ 136(d), (e).  Plaintiff's apology, retraction and disavowal make it impossible for Plaintiff to have it both ways: if Plaintiff concedes that Paragraphs 136(a)-(e) are not verifiable then they cannot support his defamation claims; but if Plaintiff believes that his statements about Aaron are verifiable, then it was correct for Defendants to state that Plaintiff lied about Aaron, and that guts Paragraphs 136(a)-(e) of Plaintiff's defamation claim under the substantial truth doctrine.

The allegedly defamatory implication in Paragraphs 136(f) and 144 that Plaintiff asserted Aaron covered up his (Aaron's) "involvement" in Seth's murder and "falsely accused" Aaron of murder cannot reasonably be drawn from the Podcast or Bonus Episode.  *See* Section I.A, *supra*. Even if the implications were reasonable—which Defendants dispute—then they are protected as non-verifiable and therefore non-actionable recitations of an ambiguous set of circumstances concerning Plaintiff's various conspiracy theories.  *See* Section I.C.1, *supra*.  However, if the Court concludes that the implication exists and also concludes that the implication is verifiable, the purported implication is protected because it is substantially true.  Plaintiff admits, in his own voice, that he believes Aaron "was involved in helping cover things up" and that Aaron "covered things up."  *Id.* at 15:21-16:3.  Even if there were any verifiable implication along the lines Plaintiff suggests—which Defendants dispute—the gist and sting is that Plaintiff believed and

asserted that Aaron was, at a minimum, an accessory after the fact to his own brother's murder. And that belief and assertion has, like all of Plaintiff's other attacks on Aaron, now been retracted and disavowed so it is substantially true for that additional reason.  Ex. D.

With respect to Paragraph 136(l) of the Complaint, Defendants maintain that the phrase "conspiracy entrepreneur" is a matter of opinion, but, even if it were verifiable, Plaintiff admits that he collects money off peddling his theories.  Ex. A at 16:22-23.  After Plaintiff read Aaron's pleading letter to his followers via the livestream video application Periscope, mocking Aaron and reiterating his belief that Aaron was "helping cover things up," Plaintiff appealed to his followers for money: "We are 100 percent crowd funded.  We need your help.  This is what we do."  *Id*.  Moreover, in his Complaint, Plaintiff alleges that what he does is "a perfectly legitimate mode of fundraising," and maintains there is nothing wrong with his "professional work" "us[ing] legitimate fundraising and business techniques to finance an investigation in the public interest."  Compl. ¶¶ 83, 85, 86.  If the "conspiracy entrepreneur" statement is verifiable then it is substantially true.

Finally, if the Court concludes that the use of the term "confederate" is verifiable, it is substantially true because Josh *is* Plaintiff's "ally or accomplice" as Plaintiff mockingly reads Aaron's letter on Periscope.  Ex. A at 14:23-16:3; www.merriam-webster.com/dictionary/confederate; Compl. ¶ 136(q).

### E.  The Fair Report Privilege Bars the Statements and Alleged Implications Concerning Plaintiff's Lies About Aaron Rich.

Defendants in a defamation action in the District of Columbia may invoke a "common law privilege to publish fair and accurate reports of governmental proceedings," which extends to court proceedings.  *Shipkovitz v. Washington Post Co.*, 571 F. Supp. 2d 178, 183 (D.D.C.

2008) (quoting *White*, 909 F.2d at 527 (the "privilege extends broadly" to the report of any official proceeding)), *aff'd*, 408 Fed. Appx. 376, 378 (D.C. Cir. 2010).  The privilege applies where there is an "indication that the statements were a summary of an official document." *White*, 909 F.2d at 528.

Paragraphs 136(a) through (e) of the Complaint stem from remarks by Aaron Rich's counsel about Plaintiff in the Podcast.  Compl. ¶¶ 136(a)-(e); *see also Id.* ¶¶ 55-59; Ex. A. at 13:6-16.  The Podcast expressly references the "defamation lawsuit against Couch and Butowsky" filed "on behalf of Aaron" – *i.e., Rich v. Butowsky* – and immediately thereafter Aaron's counsel, Meryl Governski, summarizes the "key" allegations against the defendants, which include the allegations against Couch.  Ex. A at 13:6-16.  A comparison of Governski's summary and the allegations in the *Rich v. Butowsky* complaint reveals that the summary is fair and accurate and therefore entitled to protection under the fair report privilege.  *Compare id. with* Ex. E at ¶¶ 1-2, 6-7, 9, 36-47, 49-54, 64-65, 67-69, 73, 80, 85, 88, 100, 118.

**F.  Two of the Statements and Alleged Implications Carry No Defamatory Meaning.**

A statement conveys defamatory meaning if it "tends to lower plaintiff in the estimation of a substantial, respectable group[.]"  *White*, 909 F.2d at 518 (internal quotation marks and citation omitted).  However, "[a]n allegedly defamatory remark must be more than unpleasant or offensive; the language must make the plaintiff appear 'odious, infamous, or ridiculous.'"  *Smith v. Clinton*, 886 F.3d 122, 128 (D.C. Cir. 2018); *see also Deripaska v. Associated Press*, 282 F. Supp. 3d 133, 146 (D.D.C. 2017) ("[d]efamation is not made up of hints and suggestions and it cannot be merely unpleasant or offensive").  Whether a challenged statement is "capable of bearing a defamatory meaning" is a determination for the Court.  *White*, 909 F.2d at 518; *see also Libre by Nexus*, 311 F. Supp. 3d at 156 (same).

Even if verifiable and false, there is nothing defamatory about an implication that

Plaintiff said Joe Capone simply met with Hillary Clinton or her aides.  Compl. ¶ 136(g); *see*

*also Id.* ¶¶ 130, 132.  Thousands of people have met with Hillary Clinton.  It is also not

defamatory to Plaintiff to state that Plaintiff had a "confederate"–*i.e.*, an ally or accomplice–as

he read Aaron's letter on Periscope.  Compl. ¶ 136(q); Ex. A at 14:20-16:3.

### G.  Plaintiff, a Public Figure, Does Not Adequately Allege Actual Malice.

#### 1.      Plaintiff is a Public Figure and is Therefore Required to Plead and Prove Actual Malice.

A person involved in political activities and "extensive" writings is a public figure.  *Waskow*

*v. Associated Press*, 462 F.2d 1173, 1175 & n.3 (D.C. Cir. 1972).  The D.C. Circuit has "formulated

a three-part test for identifying a limited-purpose public figure, requiring (1) that there was a public

controversy; (2) that the plaintiff played a sufficiently central role in the controversy; and (3) that

the alleged defamatory statement was germane to the plaintiff's participation in the controversy."

*Clyburn v. News World Commc'ns, Inc.*, 903 F.2d 29, 31 (D.C. Cir. 1990) (citing *Waldbaum v.*

*Fairchild Publ., Inc.*, 627 F.2d 1287, 1296-98 (D.C. Cir. 1980)); *see also Doe No. 1 v. Burke*, 91

A.3d 1031, 1041 (D.C. 2014) (public figures are "individuals who assume roles in the forefront of

particular public controversies").  "Whether the plaintiff is a public figure is a question of law for

the court to resolve."  *Waldbaum*, 627 F.2d at 1293 n. 12.

The allegations in the Complaint establish that Plaintiff is a general purpose or at least a

limited purpose public figure.  Plaintiff boasts in the Complaint that he has general notoriety as the

"publisher of a widely read online blog, the DC Patriot, and a conservative commentator with over

400,000 followers[.]"  Compl. ¶ 1; *Id.* ¶ 6 (Plaintiff has a "wide following on social media,

including Twitter"), ¶ 36 (Plaintiff "was for many years a mainstream sports commentator with

conservative political views").[10]  Plaintiff further alleges that he has taken a special role and prominence in the controversy surrounding Seth Rich's murder and its aftermath, stating that he "has been one of the foremost, and perhaps most widely known, independent investigators seeking to uncover the truth of what happened to Seth Rich … he has … sought to research the links between Seth Rich, his brother Aaron and Wikileaks.  Based on his sources and research, Couch has asserted that Seth and Aaron may have worked together to download DNC emails and transfer the emails and other data to Wikileaks, and received payment in exchange for such data from Wikileaks."  *Id. ¶ 3; see also id.* ¶ 85 (Plaintiff says his "investigation" is "in the public interest").

Public figure plaintiffs like Plaintiff must plead and prove that the defendant published allegedly defamatory material with "actual malice"—*i.e.*, "with 'knowledge that it was false or with reckless disregard of whether it was false or not.'"  *Masson*, 501 U.S. at 510 (quoting *New York Times v. Sullivan*, 376 U.S. 254, 279-80 (1964)).  As the D.C. Circuit has made clear, "[t]he standard of actual malice is a daunting one," *McFarlane v. Esquire Magazine*, 74 F.3d 1296, 1308 (D.C. Cir. 1996), which imposes a "heavy burden" on public figure defamation plaintiffs, *Lohrenz v. Donnelly*, 350 F.2d 1272, 1283 (D.C. Cir. 2003).  This high barrier to recovery by public figure plaintiffs comes "against the background of a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks[.]"  *New York Times*, 376 U.S. at 270.  As the U.S. Supreme Court explained, "erroneous statement is

---

[10] Once a person becomes a public figure, they remain one regardless of the passage of time. *Dresbach v. Doubleday & Co., Inc.*, 518 F. Supp. 1285, 1290-91 (D.D.C. 1981) (finding continued public figure status even years after matters of public interest arose, and citing *Forsher v. Bugliosi*, 26 Cal. 3d 792, 811 (1980), for the rule that "once a man has become a public figure, or news, he remains a matter of legitimate recall to the public mind to the end of his days").

inevitable in free debate and … it must be protected if the freedoms of expression are to have the 'breathing space' that they 'need … to survive.'"  *Id.* at 271-72.

Consistent with the national commitment to open debate on public issues, the daunting actual malice standard focuses solely on the defendant's *actual* state of mind "at the time of publication."  *Bose Corp. v. Consumer Union,* 466 U.S. 485, 512 (1984).  "Mere negligence does not suffice."  *Masson*, 501 U.S. at 510.  Rather, the term "knowledge of falsity means simply that the defendant was *actually aware* that the contested publication was false."  *Woods v. Evansville Press Co., Inc.*, 791 F.2d 480, 484 (7th Cir. 1986) (emphasis added).  Similarly, to establish that the defendant published a statement with "reckless disregard" for the truth, the plaintiff must show "that the defendant actually had a 'high degree of awareness … of probable falsity.'"  *Harte-Hanks Commc'ns v. Connaughton*, 491 U.S. 657, 688 (1989); *Kahl*, 856 F.3d at 118 (same).  "Reckless disregard" is not measured "by what a reasonably prudent man would have published, or would have investigated before publishing."  *St. Amant v. Thompson,* 390 U.S. 727, 731 (1968).  Instead, "[t]here must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication."  *Id.*  This standard "is subjective; the plaintiff must prove that the defendant actually entertained a serious doubt."  *McFarlane v. Sheridan Square Press, Inc.*, 91 F.3d 1501, 1508 (D.C. Cir. 1996).  The actual malice standard is not satisfied even by proof of "highly unreasonable conduct constituting an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers."  *Clyburn*, 903 F.2d at 33 (internal quotation marks omitted).  As an additional safeguard, the First Amendment requires that the plaintiff must prove actual malice by "clear and convincing" evidence.  *Anderson*, 477 U.S. at 255-57.

### 2.      Plaintiff's Complaint Fails to Allege Facts Sufficient to Give a
### Reasonable Inference of Actual Malice.

"Every circuit that has considered the matter has applied the *Iqbal/Twombly* standard and

held that a defamation suit may be dismissed for failure to state a claim where the plaintiff has not

pled facts sufficient to give rise to a reasonable inference of actual malice." *Nelson Auto Center,*

*Inc. v. Multimedia Holdings Corp.*, 951 F.3d 952, 958 (8th Cir. 2020) (internal quotation marks and

brackets omitted)).[11]   This District Court routinely dismisses cases where the plaintiff has not

adequately pleaded actual malice.  *See, e.g. Arpaio v. Zucker,* 414 F. Supp. 3d 84, 91-94 (D.D.C.

2019) (acknowledging that "the burden of putting forward articulable facts of actual malice is a

difficult one to meet, especially when discovery is not yet available to the parties," and then

dismissing complaint with prejudice in order to "vigorously protect the First Amendment rights of

journalists and the press"); *Fairbanks*, 314 F. Supp. 3d at 93 (finding that complaint did not state a

defamation claim where it "do[es] not provide clear and convincing evidence of actual malice");

*Deripaska*, 282 F. Supp. 3d at 140 (rejecting argument that "alleging actual malice is unnecessary at

this [pleading] stage" and dismissing complaint with prejudice based in part on plaintiff's failure to

plead facts to show that defendant "acted with actual malice"); *Hourani v. Psybersolutions LLC*,

164 F. Supp. 3d 128, 144 (D.D.C. 2016) (dismissing complaint where "[t]he bald allegations of the

Complaint are insufficient to allege malice"); *Parisi v. Sinclair*, 845 F. Supp. 2d 215, 218 (D.D.C.

2012) (same).

---

[11] *See also Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 701-702 (11th Cir. 2016) (holding that plaintiff must allege *plausible* facts supporting a finding of actual malice); *Biro v. Conde Nast*, 807 F.3d 541, 544-45 (2d Cir. 2015) (the "plausibility standard [for federal pleading] applies to pleading intent" for purposes of actual malice supporting a defamation claim); *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377-78 (4th Cir. 2012) ("[a]pplying the *Iqbal* standard" and dismissing claim for failure to plead actual malice); *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 58 (1st Cir. 2012) (same).

In *Fairbanks*, the plaintiff's complaint went beyond mere recitations, and articulated four different bases for defendant's purported actual malice, including an alleged "fail[ure] to perform due diligence consistent with professional standards of journalism." 314 F.Supp.3d at 92-93. But even then the Court concluded that the plaintiff's allegations did not "come[] close to satisfying the First Amendment's demanding standard for public figures bringing defamation actions," and dismissed the defamation claim. *Id.* In *Deripaska*, the plaintiff "failed to adequately allege actual malice" even though his complaint articulated specific "crucial background" information that was allegedly intentionally omitted from a publication. 282 F.Supp.3d at 143-44. But even that, the Court ruled, did "not come close to plausibly alleging that the [defendant] acted with actual malice or reckless disregard for the facts when it published the article in question." *Id.* In *Parisi*, 845 F.Supp.2d at 218–19, this Court dismissed the complaint where it contained "no factual allegation, other than the plaintiffs' own assertions that the statements were false." Similarly, in *Hourani*, the Court quoted the plaintiff's conclusory allegations of actual malice and then held that the "Complaint does not allege any ***facts*** supporting the claim that [defendants] made statements knowing they were false or with reckless disregard to their truth." 164 F. Supp. 3d at 144 (emphasis added) (dismissing complaint). And, in *Arpaio*, the plaintiff made a rote allegation of recklessness and further alleged that defendants were "motivated by 'malice and leftist enmity,'" but the Court held that did "not come close to adequately pleading facts of actual malice." 414 F. Supp. 3d at 91-92.

As a final and critical safeguard for free speech and a free press discussing public figures and matters of public concern where multiple alleged statements and implications are at issue, a defamation plaintiff must establish actual malice with respect to ***each*** allegedly defamatory statement and implication—actual malice cannot be alleged or proven in the abstract. *Church of*

*Scientology Int'l v. Time Warner, Inc.*, 903 F. Supp. 637, 641 (S.D.N.Y. 1995) ("the Court considers each allegedly libelous statement individually to determine whether a rational finder of fact could find actual malice by clear and convincing evidence;" citing *Tavoulareas,* 817 F.2d at 794 ("defamation plaintiffs cannot show actual malice in the abstract; they must demonstrate actual malice *in conjunction* with a false defamatory statement") (emphasis in original))).

Here, Plaintiff alleges that Defendants acted with "knowledge of falsity" or "reckless disregard" for the truth.  Compl. ¶¶ 137, 146.  That alone is insufficient.  *Hourani*, 164 F. Supp. 3d at 144; *Parisi*, 845 F. Supp. 2d at 218.  Plaintiff also alleges that Defendants were motivated by a liberal, anti-Trump political agenda.  *See, e.g.,* Compl. ¶¶ 2, 4, 27-30, 35.[12]  That, too, is insufficient, even when coupled with conclusory allegations of recklessness.  *Arpaio*, 414 F. Supp. 3d at 91-92; *see also Lohrenz,* 223 F. Supp. 2d at 48 (any "pre-existing agenda," even one which may be noxious to some minds, is not indicative of actual malice, and this argument may therefore be summarily rejected"); *aff'd*, 350 F.3d 1272 (D.C. Cir. 2003).  Likewise, allegations that Defendants were biased against Plaintiff do not establish actual malice.  *Tavoulareas*, 817 F.2d at 795 (statements indicating an adversarial attitude towards plaintiff were "well within the everyday parlance of an investigative reporter;" "[i]t would be sadly ironic for judges in our adversarial system to conclude ... that the mere taking of an adversarial stance is antithetical to the truthful presentation of facts").

Plaintiff also summarily alleges that Defendants should have "investigate[d]" and found and included "information in the public domain" to Plaintiff's satisfaction.  Compl. ¶ 4, 50-54.  There is, however, no duty to investigate, seek out or include corroborating evidence.  *St. Amant*, 390 U.S. at

---

[12] Other portions of the Complaint are irrelevant to Plaintiff's claims as they ramble on about wild conspiracy theories without even mentioning Defendants.  *See, e.g.,* Compl. ¶¶ 23-26, 31-34, 37-39.

733; *see also Tavoulareas,* 817 F.2d at 798 ("we cannot agree that an allegation of insufficient investigation may itself constitute the very proof of the 'serious doubts' that is separately required"); *OAO Alfa Bank v. Center for Public Integrity*, 387 F. Supp.2d 20, 53 (D.D.C. 2005) (failure to investigate is not evidence of actual malice, since "a plaintiff will always be able to point to ways in which the defendant could have pursued another lead or sought another piece of corroborating evidence").  The Podcast states that "Couch did not respond to multiple requests to be interviewed," Ex. A at 23:8-9, which is evidence of a lack of actual malice.  *Newton v. Nat'l Broadcasting Co., Inc.*, 930 F.2d 662, 686 (9th Cir. 1990) (repeated attempts to interview plaintiff dispel accusation of actual malice and purposeful avoidance of the truth).  Plaintiff does not disagree that Defendants tried to interview him, but he simply states that Isikoff "never interviewed Plaintiff."  Compl. ¶ 63.  Either way, Defendants had no *duty* to interview Plaintiff and the absence of an interview is not evidence of actual malice.  *See OAO Alfa Bank,* 387 F. Supp. 2d at 55 (reporter's explanation of why he failed to contact plaintiffs was "less than compelling, and might not excuse defendant's failure to contact [plaintiffs] as a matter of ethics.  But it does not amount to actual malice").

Plaintiff's summary allegations of actual malice are akin to the rejected conclusory assertions in *Parisi* and *Hourani* that merely recited the element of actual malice without any plausible supporting facts.  Despite its verbosity, the Complaint falls short of the specific—but still flawed—allegations of actual malice in *Fairbanks, Deripaska* and *Arpaio* that did not "come close" to a sufficient allegation to satisfy the *Iqbal/Twombly* standard.  Finally, and critically, Plaintiff does not allege actual malice with respect to ***each*** purportedly defamatory statement and implication.  *Church of Scientology*, 903 F. Supp. at 641; *see also Tavoulareas,* 817 F.2d at 794.

Plaintiff failed to adequately plead actual malice, and his defamation claim should be dismissed for that additional reason.

### 3.   Plaintiff Cannot Plausibly Allege Actual Malice.

Plaintiff's failure to sufficiently allege facts to support a finding of actual malice supports a dismissal with prejudice.  Additionally, Plaintiff's Complaint and judicially noticeable material reinforces that he **cannot** plausibly allege actual malice as a matter of law.  Where, as here, defendants are called upon to interpret ambiguous events and they offer a rational interpretation in their publication, actual malice cannot be shown.  *Time, Inc. v. Pape*, 401 U.S. 279, 289-90 (1971) ("where an event lends itself to "a number of possible rational interpretations," an author's "deliberate choice of [one] such ... interpretation, though arguably reflecting a misconception, [is] not enough to create a jury issue of 'malice' under *New York Times [v. Sullivan]*"); *Moldea II*, 22 F.3d at 315 ("when a writer is evaluating or giving an account of inherently ambiguous materials or subject matter, the First Amendment requires that the courts allow latitude for interpretation").

Moreover, the Podcast relies on volunteered first person accounts; even if the accounts were questionable – which Defendants do not concede – Defendants had no legal obligation under the actual malice standard to independently corroborate each account.  *McFarlane*, 91 F.3d at 1509 ("To hold that a publisher who relies upon a questionable source must not only investigate the allegations but actually corroborate them ... would be to turn the inquiry away from the publisher's state of mind and to inquire instead whether the publisher satisfied an objective standard of care"); *see also Lohrenz*, 350 F.3d at 1285 ("Even where doubt-inducing evidence could be discovered, a publisher may still opt not to seek out such evidence and may rely on an informed source so long as there is no 'obvious reason to doubt' that source").  In his interview with Joe Capone, Mr. Capone

*volunteers* that it was Plaintiff who spread a conspiracy theory that Capone met with Hillary Clinton or her aides.  *Compare* Ex. A at 19:20-21:19 *with* Compl. ¶¶ 136(g)-(h).  Likewise, in his interview with Mark Mueller, it was Mr. Mueller who ***volunteered*** that it was "trolls" "***like*** Matt Couch" who were causing Mueller grief.  *Compare* Ex. A at 22:7-23:7 *with* Compl. ¶¶ 136(i)-(k).  Similarly, Aaron's lawyer, Meryl Governski, summarizes her complaint against Couch in *Rich v. Butowsky*.  *Compare* Ex. A at 13:6-16 and Ex. E at ¶¶ 1-2, 6-7, 9, 36-47, 49-54, 64-65, 67-69, 73, 80, 85, 88, 100, 118 *with* Compl. ¶¶ 136(a)-(f).  Even if Plaintiff contends that such sources were biased against him and provided purportedly incomplete information, that does not establish that Defendants acted with actual malice.  *Lohrenz*, 350 F.3d at 1284 (fact that defendants "acted on the basis of a biased source and incomplete information" did not establish actual malice).

The Complaint does not dispute the Podcast's statement that Plaintiff "did not respond to multiple requests to be interviewed."  Ex. A at 23:8-9.  Instead, Plaintiff evasively concurs by simply stating that he was not interviewed, but not that Defendants did not try.  Compl. ¶¶ 63, 70.  Efforts to interview Plaintiff show a lack of actual malice.  *Newton*, 930 F.2d at 686.  In any event, the Podcast repeatedly provided Plaintiff's point of view, including in his own words, which Plaintiff's Complaint acknowledges.  Ex. A at 11, 14-16, 23-24; Compl. ¶¶ 44-47, 50.  That, too, shows a lack of actual malice.  *Lohrenz*, 350 F.2d at 1286 ("Reporting perspectives at odds with the publisher's own 'tends to rebut a claim of malice'" (quoting *McFarlane*, 74 F.3d at 1304)).

Plaintiff not only fails to adequately allege actual malice, but he cannot plausibly do so based on the allegations and judicially noticeable facts before the Court.  For this additional and independent reason, Plaintiff's defamation claims should be dismissed with prejudice.

## II.      PLAINTIFF'S ANCILLARY CLAIMS ALSO FAIL.

Each of Plaintiff's remaining claims also fail as a matter of law.  The ancillary claims either fail for the same reasons Plaintiff's defamation claims fail, or the claims do not exist as independent torts, or both.

### A.      Plaintiff's Claims for Intentional Infliction of Emotional Distress, False Light and Intentional Interference with Business Relations Fail for the Same Reasons the Defamation Claims Fail.

Plaintiff's claims for intentional infliction of emotional distress ("IIED"), false light, and intentional interference with business relations are duplicative of the defamation claims and should be dismissed for the same reasons.  *Compare* Compl. ¶¶ 135-149 (allegations in defamation claims) *with Id.* ¶¶ 150-159; 173-177 (allegations in IIED, false light and intentional interference claims are expressly based on Defendants' alleged "false statements," "representations" and "lies about Plaintiff," *Id.* ¶¶ 151, 158, 174).  Where a "defamation claim fails, so do . . . other tort claims based upon the same allegedly defamatory speech," because the "First Amendment considerations that apply to defamation" also apply to "counts for false light and tortious interference."  *Farah*, 736 F.3d at 540.  This result is based on the well-established rule that "a plaintiff may not use related causes of action to avoid the constitutional requisites of a defamation claim."  *Moldea I*, 15 F.3d at 1151 ("a plaintiff may not avoid the strictures of the burdens of proof associated with defamation by resorting to a claim of false light"); *Farah v. Esquire Magazine*, 863 F. Supp. 2d 29, 39 (D.D.C. 2012) ("Plaintiffs' claim for tortious interference fails because it is grounded in the same nonactionable claim for defamation"), *aff'd*, 736 F.3d 528, 540 (D.C. Cir. 2013); *Bauman*, 377 F. Supp. 3d at 16 (dismissing defamation *per se* and false light claims based on failure to state claim for defamation); *Washington v. Smith*,

893 F. Supp. 60, 64 (D.D.C. 1995) (dismissing intentional infliction of emotional distress claim because defamation claim failed).[13]

Because Plaintiff's allegations tie the IIED, false light and intentional interference claims to Defendants' allegedly defamatory statements, and as a matter of law those statements cannot give support his defamation claims, Plaintiff's ancillary claims also fail to state a claim on which relief can be granted.  The Court should dismiss the IIED, false light and intentional interference claims with prejudice.

**B.      Plaintiff's Claims for Aiding and Abetting, Conspiracy, and Negligent Supervision and Retention Should Also Be Dismissed.**

Plaintiff's claims for aiding and abetting and conspiracy do not exist as independent torts, and cannot survive Defendants' Motion to Dismiss.  In addition, they—along with Plaintiff's negligent supervision and retention claim—necessarily fail for the same reasons as Plaintiff's other ancillary claims.

**1.   Civil Conspiracy.**

Plaintiff lists a claim for civil conspiracy to commit other torts (*see* Compl. ¶¶ 160-167), but civil conspiracy is not an independent cause of action under District of Columbia law.  *Geier v. Conway, Homer & Chin-Caplan, P.C.*, 983 F. Supp. 2d 22, 42 (D.D.C. 2013) (dismissing claims pursuant to Rule 12(b)(6) because "there is no independent action in the District of Columbia for civil conspiracy; it is a means for establishing vicarious liability for an underlying tort"); *McCord v. Bailey*, 636 F.2d 606, 611 n.6 (D.C. Cir. 1980) ("civil conspiracy is not in and

---

[13] Likewise, where an ancillary tort claim is based on an alleged defamation that fails the *Twombly/Iqbal* standard, the ancillary claim should be dismissed for that reason as well.  *Zelaya v. UNICCO Serv. Co.*, 587 F. Supp. 2d 277, 287 (D.D.C. 2008) ("[t]he intentional interference required for the plaintiff's claim is premised entirely on a defamation allegation that is fatally deficient under the *Twombly* pleading standard").

of itself a civil wrong, giving an independent cause of action").  Even if Plaintiff could assert a claim for civil conspiracy—which he cannot—the claim would fail for the same reasons as the underlying torts.  *See Findlay v. CitiMortgage, Inc.*, 813 F. Supp. 2d 108, 122 (D.D.C. 2011) (dismissing conspiracy claim pursuant to Rule 12(b)(6) and noting that "civil conspiracy is not recognized as an independent tort" and, regardless, the claim could not survive because the court already dismissed the underlying claim).

Plaintiff's Complaint states that the alleged conspiracy was to "commit the torts of: Defamation; Defamation Per Se; [IIED]; and False Light[.]"  Compl. ¶ 161.  For the reasons stated in Sections I and II.A, *supra*, those claims all fail.  Defendants therefore cannot be subject to a claim for conspiracy based on torts for which they are not liable as a matter of law.  The Court should dismiss the conspiracy claim.  Because the inherent problems with a civil conspiracy claim cannot be cured by amendment, dismissal should be with prejudice.  *See U.S. v. Eisenberg*, 149 F. Supp. 3d 71, 94 (D.D.C. 2015) (denying request to amend a complaint to *add* a conspiracy claim because such amendment "would be futile").

### 2.  Aiding and Abetting.

Aiding and abetting also is not recognized by the District of Columbia as an independent cause of action.  *Carroll v. Fremont Inv. & Loan*, 636 F. Supp. 2d 41, 53 (D.D.C. 2009) ("A claim of aiding and abetting is [] not an independent tort, but a means of establishing vicarious liability") (dismissing claim pursuant to Rule 12(b)(6)); *Chen v. Bell-Smith*, 768 F. Supp. 2d 121, 140 (D.D.C. 2011) ("D.C. courts have not yet recognized aiding and abetting as a separate, independent tort").  And even if it were recognized as a claim, there is no backing for aiding and abetting here because the torts upon which Plaintiff explicitly bases this claim fail as a matter of law.  *See* Compl. ¶ 169 (alleging that Defendants "aided and abetted . . . in committing tortious

acts, including Defamation, Defamation Per Se, [IIED], False Light, and Invasion of Privacy"). The aiding and abetting claim therefore must also be dismissed. For the same reasons as the civil conspiracy claim and the other underlying tort claims, dismissal should be without leave to amend. *Cf. Plummer v. Safeway, Inc.*, 934 F. Supp. 2d 191, 198 (D.D.C. 2013) (allowing plaintiff to amend certain civil rights claims, but not aiding and abetting claim, which failed as a matter of law as it was "not independently actionable").

### 3. Negligent Supervision and Retention.

Finally, Plaintiff's negligent supervision and retention claim must be dismissed because there is no remaining underlying tort on which it could be based. A claim for negligent supervision and retention must be based on a "predicate claim." *Islar v. Whole Foods Market Grp., Inc.*, 217 F. Supp. 3d 261, 268 (D.D.C. 2016) (dismissing negligent supervision and retention claim pursuant to Rule 12(b)(6)). Where a claimed underlying tort fails as a matter of law, courts will also dismiss an ancillary negligent supervision and retention claim. *See id.*; *Daisley v. Riggs Bank, N.A.*, 372 F. Supp. 2d 61, 81 (D.D.C. 2005) (dismissing negligent supervision and retention claim pursuant to Rule 12(b)(6) because plaintiff "has not identified a legally cognizable tort" associated with the claim).

Plaintiff's Complaint expressly links his negligent supervision and retention claim to the *Conspiracyland* podcast and Defendants' allegedly "tortious conduct." Compl. ¶¶ 180, 181. Because all of Plaintiff's other tort claims fail as a matter of law, his negligent supervision and retention claim has no predicate and must be dismissed. This fundamental inability to state a claim cannot be cured, and dismissal should therefore be without leave to amend. *See Bond v. U.S. Dep't of Justice*, 828 F. Supp. 2d 60, 82 (D.D.C. 2011) (dismissing negligent supervision claim pursuant to Rule 12(b)(6) and denying leave to amend).

41

### III.     VERIZON COMMUNICATIONS INC. IS NOT A PROPER DEFENDANT.

Defendant Verizon Communications Inc. ("Verizon") should be dismissed from this

action for the additional and separate reason that Plaintiff has sued the wrong entity by suing

Verizon.  Verizon has no connection to the allegations in the complaint other than as the ultimate

parent company of Oath Inc., Compl. ¶ 7, which is the entity that offers the complained of

services, and which should be the proper party for this dispute.  Ex. F at 8 (§ 14.2.a).  Here,

Plaintiff has failed to allege any facts connecting the alleged conduct supporting his causes of

action to the parent company and named defendant, Verizon.  Plaintiff merely states that

"*Yahoo!News* is a business and brand within that corporation," without alleging any facts to

support piercing the corporate veil connecting the alleged conduct with potential liability to the

parent company.

### CONCLUSION

Plaintiff went out of his way to spread damaging conspiracy theories about a tragic event.

Defendants explored all aspects of that event and its aftermath in its *Conspiracyland* podcast—

including Plaintiff's role as a malfeasant.  Plaintiff should not be heard to complain when his

theories are questioned and his motives are challenged.  Fundamentally, though, he simply has

no viable claims.  The alleged statements and implications that he points to either do not exist or

they cannot support any claim against Defendants as a matter of law.  As Judge Lamberth wrote

in *Lane*, if a plaintiff "is affronted by such minor provocations as the court addresses today, he

may elect to minimize his exposure by opting for a lower public profile.  More likely, having

acknowledged that publicity is the lifeblood of his career, [he] will have to overcome his brittleness—or seek solace elsewhere than from this court." 985 F. Supp. at 153.

Defendants respectfully request that Plaintiff's Complaint, and each claim therein, be dismissed with prejudice pursuant to Rule 12(b)(6).  At a minimum, Defendants request pursuant to Rule 12(f) that the Court strike alleged statements and implications serving as the basis for Plaintiff's claims to narrow the scope of the case if any portion of it were to remain.

Dated:   January 29, 2021

Respectfully submitted,

/s/ Jean-Paul Jassy
Jean-Paul Jassy (*Pro Hac Vice* motion pending)
William T. Um (*Pro Hac Vice* motion pending)
Elizabeth H. Baldridge (*Pro Hac Vice* motion pending)
**JASSY VICK CAROLAN LLP**
800 Wilshire Boulevard, Suite 800
Los Angeles, CA 90017
Telephone: (310) 870-7048
Facsimile: (310) 870-7010
jpjassy@jassyvick.com
wum@jassyvick.com
ebaldridge@jassyvick.com

Laura C. Fraher (DC Bar No. 979720)
**SHAPIRO, LIFSCHITZ & SCHRAM P.C.**
1742 N Street NW
Washington, DC 20036
Telephone: (202) 689-1900
Facsimile: (202) 689-1901
fraher@slslaw.com

*Attorneys for Defendants Verizon Communications Inc. and Michael Isikoff*

**APPENDIX A**
TABLE IN SUPPORT OF DEFENDANTS' RULE 12(b)(6) MOTION

| STATEMENT/ PURPORTED IMPLICATION | No Reasonable Implication | Fair Comment **and** No Verifiable Statement of Fact | Substantial Truth | Fair Report Privilege | No Defamatory Meaning | No Actual Malice |
|---|---|---|---|---|---|---|
| a. "Lied about Aaron being involved in downloading DNC data;" (Compl. ¶ 136(a)) | | X | X | X | | X |
| b. "Lied about Aaron receiving payment in exchange for said data;" (*Id.* ¶ 136(b)) | | X | X | X | | X |
| c. "Lied about Aaron covering up his role in downloading DNC data;" (*Id.* ¶ 136(c)) | | X | X | X | | X |
| d. "Lied about Aaron failing to cooperate with private investigators;" (*Id.* ¶ 136(d)) | | X | X | X | | X |
| e. "Lied about Aaron obstructing the official investigation;" (*Id.* ¶ 136(e)) | | X | X | X | | X |
| f. "Asserted that Aaron murdered his brother or participated in the murder of his brother or covered up his involvement in the murder of his brother;" (*Id.* ¶ 136(f)) | X | X | X | | | X |
| g. "Asserted that Joe Capone met Hilary Clinton or aides to Hilary Clinton in the days before Seth Rich's murder;" (*Id.* ¶ 136(g)) | | X | | | X | X |
| h. "Asserted that Joe Capone plotted Seth Rich's murder/assassination with Hilary Clinton or aides to Hilary Clinton;" (*Id.* ¶ 136(h)) | X | X | | | | X |
| i. "'Doxxed' Mark Mueller by publishing the addresses and phone number of his siblings and neighbors;" (*Id.* ¶ 136(i)) | X | X | | | | X |

**APPENDIX A**
TABLE IN SUPPORT OF DEFENDANTS' RULE 12(b)(6) MOTION

| | STATEMENT/ PURPORTED IMPLICATION | No Reasonable Implication | Fair Comment **and** No Verifiable Statement of Fact | Substantial Truth | Fair Report Privilege | No Defamatory Meaning | No Actual Malice |
|---|---|---|---|---|---|---|---|
| j. | "Superimposed Mr. Mueller's head on pictures of serial killer Jeffrey Dahmer and Dexter;" (*Id.* ¶ 136(j)) | X | X | | | | X |
| k. | "Sought to rent out Mr. Mueller's basement room to gain access to documents relating to Seth Rich;" (*Id.* ¶ 136(k)) | X | X | | | | X |
| l. | "Was an Internet 'conspiracy entrepreneur;'" (*Id.* ¶ 136(l)) | | X | X | | | X |
| m. | "Was an 'Internet troll;'" (*Id.* ¶ 136(m)) | | X | | | | X |
| n. | "Was an 'Internet crankster;'" (*Id.* ¶ 136(n)) | | X | | | | X |
| o. | "Was an 'Internet bully;'" (*Id.* ¶ 136(o)) | | X | | | | X |
| p. | "Was a member of the 'alt-right;'" (*Id.* ¶ 136(p)) | X | X | | | | X |
| q. | "Was an associate of Southern 'confederate.'" (*Id.* ¶ 136(q)) | | X | X | | X | X |
| | "…falsely accused a person of murder …" (*Id.* ¶ 144) | X | X | X | | | X |
| | " … illegally stealing and publishing information …" (*Id.* ¶ 144) | X | X | | | | X |
| | " … attempted burglary." (*Id.* ¶ 144) | X | X | | | | X |

## CERTIFICATE OF SERVICE

I hereby certify that on January 29, 2021, a copy of the foregoing Motion to Dismiss was electronically filed through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Eden P. Quainton                                    *Attorneys for Plaintiff*
DUNNINGTON BARTHOLOW & MILLER LLP    *Matthew Couch*
230 Park Avenue, 21st Floor
New York, NY 10169
Telephone: (212) 682-8811
Email: equainton@dunnington.com

David J. Bodney                                     *Attorneys for Defendant*
BALLARD SPAHR LLP                               *National Public Radio, Inc.*
1 East Washington Street, Suite 2300
Phoenix, AZ 85004
Telephone: (602) 798-5454
Email: bodneyd@ballardspahr.com

Matthew E. Kelley
BALLARD SPAHR LLP
1909 K Street, NW, 12th Floor
Washington, DC 20006
Telephone: (202) 508-1112
Email: kelleym@ballardspahr.com

Richard W. Evans                                    *Attorneys for Defendants*
James G. Fegan, III                                 *Mark Mueller and Joe Capone*
MCCARTHY WILSON LLP
2200 Research Boulevard, Suite 500
Rockville, MD 20850
Telephone: (301) 762-7770
Email: evansr@mcwilson.com
          feganj@mcwilson.com

**SHAPIRO, LIFSCHITZ & SCHRAM, P.C.**

/s/ Laura C. Fraher
Laura C. Fraher
1742 N Street NW

44

Washington, DC 20036
Phone: (202) 689-1900
Fax: (202) 689-1901
fraher@slslaw.com

*Attorneys for Defendants Verizon Communications Inc. and Michael Isikoff*