## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MATTHEW COUCH, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 1:20-cv-02151-RJL |
| VERIZON COMMUNICATIONS INC. | * | |
| and | * | |
| MICHAEL ISIKOFF | * | |
| and | * | |
| NATIONAL PUBLIC RADIO, INC. | * | |
| and | * | |
| AARON RICH | * | |
| and | * | |
| DEBORAH SINES | * | |
| and | * | |
| JOE CAPONE | * | |
| and | * | |
| MARK MUELLER | * | |
| Defendants. | * | |

*       *       *       *       *       *       *       *       *       *       *       *       *       *       *

**CONSOLIDATED <u>REPLY</u> IN SUPPORT OF VERIZON COMMUNICATIONS, INC.'S AND MICHAEL ISIKOFF'S MOTIONS TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE, RULES 12(b)(5) AND 12(b)(6), OR, IN THE ALTERNATIVE, MOTION TO STRIKE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(f)**

# TABLE OF CONTENTS

Page

I.  INTRODUCTION ....................................................................... 1

II.  PLAINTIFF ABANDONS HIS CLAIMS AS TO ALL STATEMENTS
RELATED TO AARON RICH, BUT THEY ARE NOT MOOT ................................. 2

III.  PLAINTIFF IGNORES THE CORE OF DEFENDANTS' ACTUAL MALICE
ARGUMENTS, AND OFFERS NO WAY TO AMEND HIS COMPLAINT TO
PLAUSIBLY ALLEGE ACTUAL MALICE ................................................. 3

IV.  PLAINTIFF DID NOT ESTABLISH THAT SEVERAL OF THE ALLEGED
IMPLICATIONS ARE REASONABLY DRAWN FROM THE PODCAST ............. 10

V.  ALL OF THE STATEMENTS AND ALLEGED IMPLICATIONS ARE
PROTECTED BY THE FAIR COMMENT PRIVILEGE AND THE FIRST
AMENDMENT ........................................................................... 12

    A.  The Fair Comment Privilege Applies Even Where Underlying Facts Are
Not Included, But Here Foundational Information Was Included .................... 12

    B.  All Of The Alleged Statements Are Protected As Opinion, Rhetorical
Hyperbole And/Or Speculation Based On Disclosed Information ................... 14

VI.  THE TERMS "CONSPIRACY ENTREPRENEUR" AND "CONFEDERATE,"
IF VERIFIABLE, ARE SUBSTANTIALLY TRUE ...................................... 18

VII.  TWO OF THE STATEMENTS CARRY NO DEFAMATORY MEANING ............ 20

VIII.  PLAINTIFF'S ANCILLARY CLAIMS SHOULD ALSO BE DISMISSED ............. 20

    A.  Plaintiff's Causes Of Action For Intentional Infliction Of Emotional
Distress, False Light and Intentional Interference With Business Relations
Are Duplicative of His Defamation Claims And Necessarily Also Fail ........... 20

    B.  Plaintiff's Claims For Civil Conspiracy And Aiding And Abetting Also Fail .. 22

    C.  Plaintiff's Negligent Supervision And Retention Claim Also Fails .................. 24

IX.  VERIZON WAS NOT THE PROPER CORPORATE DEFENDANT; BUT
THERE IS NO VIABLE CLAIM AGAINST ANY PARTY FOR THE PODCAST .. 25

X.  DEFENDANTS RULE 12(b)(5) MOTION SHOULD ALSO BE GRANTED ........... 25

XI.  CONCLUSION ........................................................................... 25

# TABLE OF AUTHORITIES

Page(s)

CASES

*Arpaio v. Zucker,*
     414 F. Supp. 3d 84 (D.D.C. 2019) .........................................................4, 6, 8, 9, 10, 18

*Automated Transactions LLC v. American Bankers Ass'n,*
     216 A.3d 71 (N.H. 2019) ..............................................................................................15

*Bauman v. Butowsky,*
     377 F. Supp. 3d 1 (D.D.C. 2019) ........................................................10, 12, 14, 16, 21

*Beach TV Props, Inc. v. Solomon,*
     254 F. Supp. 3d 118 (D.D.C. 2017) ............................................................................24

*Biro v. Conde Nast,*
     807 F.3d 541 (2d Cir. 2015).............................................................................................4

*Bose Corp. v. Consumers Union of U.S., Inc.,*
     466 U.S. 485 (1984)..........................................................................................................7

*Brokers' Choice of Am., Inc. v. NBC Universal, Inc.,*
     861 F.3d 1081 (10th Cir. 2017) ...................................................................................18

*Carroll v. Fremont Inv. & Loan,*
     636 F. Supp. 2d 41 (D.D.C. 2009) ..............................................................................23

*Chen v. Bell-Smith,*
     768 F. Supp. 2d 121 (D.D.C. 2011) ............................................................................23

*Coghlan v. Beck,*
     984 N.E.2d 132 (Ill. Ct. App. 2013) ...........................................................................15

*Daisley v. Riggs Bank, N.A.,*
     372 F. Supp. 2d 61 (D.D.C. 2005) ..............................................................................24

*Dall v. Pearson,*
     246 F. Supp. 812 (D.D.C. 1963) ..................................................................................13

*Deripaska v. Associated Press,*
     282 F. Supp. 3d 133 (D.D.C. 2017) .......................................................................4, 8, 9

*Fairbanks v. Roller,*
     314 F. Supp. 3d 85 (D.D.C. 2018) ...............................................................4, 5, 7, 8, 9

*Farah v. Esquire Magazine,*
     736 F.3d 528 (D.C. Cir. 2013).........................................................................21, 22, 24

*Farah v. Esquire Magazine,*
     863 F.Supp.2d 29 (D.D.C. 2012) ................................................................................21

*Findlay v. CitiMortgage, Inc.,*
     813 F. Supp. 2d 108 (D.D.C. 2011)............................................................................22

*Geier v. Conway, Homer & Chin-Caplan, P.C.*,
   983 F. Supp. 2d 22 (D.D.C. 2013) ...............................................................................23

*Guilford Transp. Indus., Inc. v. Wilner*,
   760 A.2d 580 (D.C. 2000) ...........................................................................................16

*Hourani v. Psybersolutions LLC*,
   164 F. Supp. 3d 128 (D.D.C. 2016) ..........................................................................4, 5

*Hupp v. Sasser*,
   490 S.E.2d 880 (W.Va. 1997) .......................................................................................15

*Islar v. Whole Foods Market Grp., Inc.*,
   217 F. Supp. 3d 261 (D.D.C. 2016) ..............................................................................24

*Jankovic v. International Crisis Group*,
   822 F.3d 576 (D.C. Cir. 2016) (*Jankovich III*) .........................................................5, 6

*Kahl v. Bureau of Nat'l Affairs, Inc.*,
   856 F.3d 106 (D.C. Cir. 2017) ........................................................................................9

*Lane v. Random House*, *Inc.*,
   985 F. Supp. 141 (D.D.C. 1995) .......................................................................13, 14, 16

*Lohrenz v. Donnelly*,
   223 F.Supp.2d 25 (D.D.C. 2002) .....................................................................................6

*Mar-Jac Poultry, Inc. v. Katz*,
   773 F. Supp. 2d 103 (D.D.C. 2011) ........................................................................10, 16

*Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*,
   674 F.3d 369 (4th Cir. 2012) ...........................................................................................4

*McCafferty v. Newsweek Media Grp., Ltd.*,
   No. CV 18-1276, 2019 WL 1078355 (E.D. Pa. Mar. 7, 2019) ......................................15

*McCord v. Bailey*,
   636 F.2d 606 (D.C. Cir. 1980) ......................................................................................22

*Michel v. NYP Holdings, Inc.*,
   816 F.3d 686 (11th Cir. 2016) .........................................................................................4

*Moldea v. New York Times Co.*,
   22 F.3d 310 (D.C. Cir. 1994) (*Moldea II*) ...................................................7, 16, 21, 22

*Montgomery v. Risen*,
   197 F. Supp. 3d 219 (D.D.C. 2016) ..............................................................................16

*Nelson Auto Center, Inc. v. Multimedia Holdings Corp.*,
   951 F.3d 952 (8th Cir. 2020) ...........................................................................................4

*Newton v. Nat'l Broad. Co., Inc.*,
   930 F.2d 662 (9th Cir. 1990) ...........................................................................................7

*Nunes v. WP Company LLC*,
   --- F. Supp. 3d ---, 2020 WL 7668900 (D.D.C. Dec. 24, 2020) ............................5, 9, 24

*OAO Alfa Bank v. Center for Public Integrity*,
    387 F. Supp.2d 20 (D.D.C. 2005) ..............................................................6, 7

*\*Parisi v. Sinclair*,
    845 F. Supp. 2d 215 (D.D.C. 2012) ......................................................4, 5, 21

*Plummer v. Safeway, Inc.*,
    934 F. Supp. 2d 191 (D.D.C. 2013) ............................................................23

*Purcell v. Ewing*,
    560 F. Supp. 2d 337 (M.D. Pa. 2008) ........................................................15

*Schatz v. Republican State Leadership Comm.*,
    669 F.3d 50 (1st Cir. 2012) ..........................................................................4

*St. Amant v. Thompson*,
    390 U.S. 727 (1968) .....................................................................................6

*Stovell v. James*,
    965 F. Supp. 2d 97 (D.D.C. 2013) ..............................................................11

*\*Tah v. Global Witness Publ., Inc.*,
    No. 19-7132 (D.C. Cir. Mar. 19, 2021) ................................4, 5, 6, 7, 9, 22

*\*Tah v. Global Witness Publ., Inc.*
    413 F. Supp. 3d 1 (D.D.C. 2019) .............................................................7, 9

*Tannerite Sports, LLC v. NBCUniversal News Group*,
    864 F.3d 236 (2d Cir. 2017) .......................................................................18

*Tavoulareas v. Piro*,
    817 F.2d 762 (D.C. Cir. 1987) ..................................................................6, 7

*Weyrich v. New Republic, Inc.*,
    235 F.3d 617 (D.C. Cir. 2001) ...................................................................21

*Zelaya v. UNICCO Serv. Co.*,
    587 F.Supp.2d 277 (D.D.C. 2008) .............................................................21

## U. S. CONSTITUTION

First Amendment ..........................................................1, 4, 8, 9, 12, 21, 22

## FEDERAL RULES

Fed. R. Civ. P. 12(b)(5) .............................................................................2, 25

Fed. R. Civ. P. 12(b)(6) ...........................................................2, 4, 18, 24, 25

Fed. R. Civ. P. 12(f) .....................................................................................25

STATE STATUTES

D.C. Code § 12-301(4)............................................................................................11

MISCELLANEOUS

https://en.wikipedia.org/wiki/Rogers,_Arkansas ...................................................... 18

https://www.merriam-webster.com/dictionary/confederate ............................... 17, 19

## I.    INTRODUCTION

Plaintiff's Opposition abandons over one third of his case.  Halfway through the Opposition, Plaintiff notes that he is "not pressing" his claims against moving Defendants as to the statements and purported implications concerning Aaron Rich.  That admission accounts for seven out of the 20 allegedly defamatory remarks at issue.  Between the time Plaintiff filed his Complaint and Defendants filed their motions to dismiss, Plaintiff settled a related lawsuit brought by Aaron.  As part of that settlement, Plaintiff apologized for, retracted, and supposedly took "full responsibility for" the false statements he made about Aaron and the Rich family. Plaintiff claimed here that Defendants defamed him by calling him a "liar" for accusing Aaron of helping to "cover up" his own brother's murder.  But that is exactly what Plaintiff did before retracting his remarks about Aaron.  Plaintiff would prefer that the Court now simply ignore everything he did to Aaron and the Rich family.  But that is not taking "full responsibility." Plaintiff said terrible things about Aaron, and those statements were part of the Podcast and part of why the Podcast logically opined that Plaintiff was a bully, a troll and a crankster—all of which Plaintiff *still* claims are actionable.  While Plaintiff is no longer suing Defendants over the seven remarks about Aaron, they inform several other aspects of the case that remain, including comments that Plaintiff insists are still actionable.

The detritus of the case should be dismissed.  A recent decision from the D.C. Circuit makes clear that where, as here, an admitted public figure plaintiff inadequately pleads actual malice, defamation claims can and should be dismissed with prejudice to protect First Amendment principles.  That failure alone summarily disposes of Plaintiff's defamation claims entirely, as well as Plaintiff's ancillary claims, all of which are inextricably tied to the defamation claims (or simply do not exist as independent torts).

The Opposition failed to rebut several other reasons that Plaintiff's defamation claims fail. No matter how he tries to parse the language of the Podcast, some of the implications Plaintiff alleges are simply not reasonable as a matter of law. For example, the Podcast never states or comes anywhere close to implying that Plaintiff "attempted burglary." And ***all*** of the statements and alleged implications are fair comment or constitutionally protected as opinion, hyperbole or speculation based on disclosed information. A handful of remaining statements are protected because they are substantially true or carry no defamatory meaning. As reflected in Appendix A to the opening brief, there are many reasons each statement or alleged implication cannot serve as the basis of a defamation claim. And because the defamation claims fail, then under clear D.C. Circuit precedent, the ancillary claims must also fail. Defendants' Rule 12(b)(6) motion should be granted in its entirety with prejudice and without leave to amend.[1]

## II.  PLAINTIFF ABANDONS HIS CLAIMS AS TO ALL STATEMENTS RELATED TO AARON RICH, BUT THEY ARE NOT MOOT.

Plaintiff is "not pressing his claims for statements concerning Aaron Rich." Opp. at 22. Seven out of the 20 statements and alleged implications that comprised Plaintiff's defamation claims concerned Aaron. Compl. ¶¶ 136(a)-(f), 144 (" … falsely accused a person of murder …").[2] Plaintiff's abandonment of those statements and purported implications eliminates more than one-third of Plaintiff's case.

---

[1] Although this is a consolidated reply in support of both Defendants' Rule 12(b)(6) motion and its Rule 12(b)(5) motion, all references in this brief to the "Motion" or "Mtn." are to the Rule 12(b)(6) motion except as indicated in Section X, *infra*, which concerns the Rule 12(b)(5) motion.

[2] Plaintiff also does not dispute that Paragraphs 136(a) through (e) of the Complaint are barred by the fair report privilege. *See* Mtn. at 27-28.

Plaintiff asserts that the issues concerning Aaron are now "moot." Opp. at 8. They are not moot. Plaintiff's accusations and comments about Aaron are still central to this case because they exhibit the worst aspects of Plaintiff's behavior. Plaintiff said that Aaron was helping to "cover up" and "block" the investigation into his own brother's murder. Compl. ¶ 37; Defs. Ex. A at 11:11-16:19.[3] Plaintiff asserted that the brothers "may have worked together to download DNC emails and transfer the emails and other data to Wikileaks, and received payment in exchange for such data from Wikileaks." Compl. ¶ 3; *see also id.* ¶¶ 37-38. Plaintiff and his accomplice, Josh, mocked a letter Aaron sent to Plaintiff pleading with Plaintiff to stop harassing Aaron and the Rich family. Ex. A at 11-23; Ex. B at 7. Plaintiff joked that Aaron might have sent anthrax with the letter, and then used the letter as a vehicle to ask his followers for money. Ex. A at 14:16-17:10. Those things were all said before the Podcast aired, before Plaintiff admitted he relied on a "single source" to smear Aaron, and before he "retract[ed]," "disavow[ed]," "apologize[d]" and purportedly took "full responsibility" for his statements about Aaron. Ex. D. Against this backdrop, Plaintiff grouses about being labeled a bully, a troll, a crankster and other things in the Podcast. *See, e.g.,* Opp. at 16-17. Plaintiff may hope that his apology and admitted reliance on a single source to spread conspiracy theories about Aaron can be swept under the rug. But it all happened, and it all informed the Podcast and its contents.

## III.   PLAINTIFF IGNORES THE CORE OF DEFENDANTS' ACTUAL MALICE ARGUMENTS, AND OFFERS NO WAY TO AMEND HIS COMPLAINT TO PLAUSIBLY ALLEGE ACTUAL MALICE.

Plaintiff does not deny that he is a public figure who must plead and prove actual malice.

---

[3] Unless otherwise indicated, all references to exhibits are to Defendants' exhibits submitted with their first Request for Judicial Notice (Dkt. 47).

Mtn. 29-31.  In fact, he begins his actual malice analysis by acknowledging that he is a public figure.  Opp. at 26 ("A public figure plaintiff …").  Plaintiff fails to adequately allege actual malice.

The D.C. Circuit recently held that a failure to adequately allege actual malice warrants dismissal pursuant to Rule 12(b)(6).  *Tah v. Global Witness Publ., Inc.*, No. 19-7132 (D.C. Cir. Mar. 19, 2021), slip. op. at 11-18.[4]  The D.C. Circuit's binding decision in *Tah* is consistent with many other cases from this Court, and every Circuit to evaluate actual malice at the pleadings stage, all holding that specific facts—not just conclusions or rote recitations of elements—must be pleaded in order to adequately allege actual malice.  Mtn. 32-33.[5]  Plaintiff completely ignores this tsunami of authority.

_____

[4] A copy of the slip opinion in *Tah* is attached as Exhibit G to Defendants' Second Request for Judicial Notice.

[5] *See, e.g., Nelson Auto Center, Inc. v. Multimedia Holdings Corp.*, 951 F.3d 952, 958 (8th Cir. 2020) ("Every circuit that has considered the matter has applied the *Iqbal/Twombly* standard and held that a defamation suit may be dismissed for failure to state a claim where the plaintiff has not pled facts sufficient to give rise to a reasonable inference of actual malice.") (internal quotation marks and brackets omitted); *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 701-702 (11th Cir. 2016) (holding that plaintiff must allege *plausible* facts supporting a finding of actual malice); *Biro v. Conde Nast*, 807 F.3d 541, 544-45 (2d Cir. 2015) (the "plausibility standard [for federal pleading] applies to pleading intent" for purposes of actual malice supporting a defamation claim); *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 377-78 (4th Cir. 2012) ("[a]pplying the *Iqbal* standard" and dismissing claim for failure to plead actual malice); *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 58 (1st Cir. 2012) (same); *Arpaio v. Zucker,* 414 F. Supp. 3d 84, 91-94 (D.D.C. 2019) (acknowledging that "the burden of putting forward articulable facts of actual malice is a difficult one to meet, especially when discovery is not yet available to the parties," and then dismissing complaint with prejudice in order to "vigorously protect the First Amendment rights of journalists and the press"); *Fairbanks v. Roller*, 314 F. Supp. 3d 85, 93 (D.D.C. 2018) (finding that complaint did not state a defamation claim where it "do[es] not provide clear and convincing evidence of actual malice"); *Deripaska v. Associated Press*, 282 F. Supp. 3d 133, 140 (D.D.C. 2017) (rejecting argument that "alleging actual malice is unnecessary at this [pleading] stage" and dismissing complaint with prejudice based in part on plaintiff's failure to plead facts to show that defendant "acted with actual malice"); *Hourani v. Psybersolutions LLC*, 164 F. Supp. 3d 128, 144 (D.D.C. 2016) (dismissing complaint where "[t]he bald allegations of the Complaint are insufficient to allege malice"), *aff'd*, 690 Fed. Appx. 1 (Mem) (D.C. Cir. 2017); *Parisi v. Sinclair*, 845 F. Supp. 2d

Moreover, Plaintiff does not dispute that he must adequately allege actual malice with respect to ***each*** purportedly defamatory statement and implication.  Mtn. 33-34.  Rather than grapple with any of these authorities, Plaintiff claims that he adequately alleged actual malice by pointing to a few paragraphs in his Complaint that merely reiterate the purported falsity of a handful of statements, and the rote allegation, without any supporting facts, that Defendants knew or should have known the statements were false.  Opp. at 26-27 (citing Compl. ¶¶ 103, 107, 117, 133).  Case after case makes clear that such generalized pleading is entirely insufficient to allege actual malice.  *See, e.g., Tah*, slip. op. at 13 ("a generic statement accusing someone of acting with reckless disregard … simply cannot be read to shoehorn in every conceivable actual malice theory"); *Hourani*, 164 F. Supp. 3d at 144 (dismissing complaint where "[t]he bald allegations of the Complaint are insufficient to allege malice"), *aff'd*, 690 Fed. Appx. 1 (Mem) (D.C. Cir. 2017); *Parisi*, 845 F. Supp. 2d at 218 (same).

Plaintiff then tries to cobble together a random and rambling smattering of other allegations to claim a purported "inference" of actual malice.  Opp. at 27-34.  As the D.C. Circuit reaffirmed in *Tah*, however, actual malice requires "'clear and convincing evidence.'"  *Tah*, slip op. at 12 (citing *Jankovic v. International Crisis Group*, 822 F.3d 576, 589-90 (D.C. Cir. 2016) (*Jankovich III*)); *Fairbanks*, 314 F. Supp. 3d at 93 (finding that complaint did not allege a defamation claim where it did "not provide clear and convincing evidence of actual malice").  First, Plaintiff accuses Isikoff of being an "agenda-driven partisan," who "determines what he wants facts to be" with a pre-conceived "false narrative about Vladimir Putin and Donald Trump" and the Seth Rich murder.  Opp. at 28-31.  The D.C. Circuit rejected the same generic

---

215, 218 (D.D.C. 2012) (same); *see also Nunes v. WP Company LLC*, --- F. Supp. 3d ---, 2020 WL 7668900, at \*\*5-6 (D.D.C. Dec. 24, 2020) (rejecting conclusory allegations of actual malice and denying leave to amend).

theory of actual malice in *Tah*, holding that an allegedly "pre-conceived story line" is insufficient to show actual malice.  Slip. op. at 14 (citing *Jankovich III*, 822 F.3d at 597)); *Lohrenz ,* 223 F. Supp. 2d 25, 48 (D.D.C. 2002) (any "'pre-existing agenda,' even one which may be noxious to some minds, is not indicative of actual malice, and this argument may therefore be summarily rejected"); *aff'd*, 350 F.3d 1272 (D.C. Cir. 2003).  The same holds true for allegations that Defendants had some political agenda.  *Arpaio*, 414 F. Supp. 3d at 91-92 (plaintiff alleged defendants were "motivated by 'malice and leftist enmity,'" but the Court held that that did "not come close to adequately pleading facts of actual malice").  Likewise, allegations that Defendants were biased against Plaintiff do not establish actual malice.  *Tavoulareas v. Piro*, 817 F.2d 762, 795 (D.C. Cir. 1987) (statements indicating an adversarial attitude towards plaintiff were "well within the everyday parlance of an investigative reporter;" "[i]t would be sadly ironic for judges in our adversarial system to conclude ... that the mere taking of an adversarial stance is antithetical to the truthful presentation of facts").

Second, Plaintiff suggests that Defendants inadequately investigated him.  Opp. at 30-31. There is, however, no duty to investigate.  *St. Amant v. Thompson*, 390 U.S. 727, 733 (1968); *see also Tavoulareas,* 817 F.2d at 798 ("we cannot agree that an allegation of insufficient investigation may itself constitute the very proof of the 'serious doubts' that is separately required" to show actual malice); *OAO Alfa Bank v. Center for Public Integrity*, 387 F. Supp. 2d 20, 53 (D.D.C. 2005) (failure to investigate is not evidence of actual malice, since "a plaintiff will always be able to point to ways in which the defendant could have pursued another lead or sought another piece of corroborating evidence").  Even so, the Podcast shows that Defendants interviewed several people who all discussed Plaintiff, including Aaron Rich, Joe Capone, Mark Mueller and Meryl Governski.  Ex. A at 11-23.  The Podcast also referenced Aaron's lawsuit

against Plaintiff, which Plaintiff does not dispute was fairly and accurately reported.  Mtn. 27-28;
Ex. A 13:6-16; Ex. E.  Moreover, Plaintiff does not dispute that Defendants **tried** to interview
him for the Podcast (which was not required), that Plaintiff did not respond to those requests and
that repeated attempts to interview Plaintiff dispel the accusation of actual malice and purposeful
avoidance of the truth.  Mtn. at 35 (citing *Newton v. Nat'l Broad. Co., Inc.*, 930 F.2d 662, 686
(9th Cir. 1990) and *OAO Alfa Bank*, 387 F. Supp. 2d at 55).

Third, Plaintiff suggests that the language used in the Podcast creates an inference of
actual malice.  Opp. at 32-34.  But actual malice cannot be established from the language of the
publication itself.  *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 512-13 (1984);
*Moldea v. New York Times Co.*, 22 F.3d 310, 315-16 (D.C. Cir. 1994) (*Moldea II*).

None of Plaintiff's theories, even if strung together and viewed in the light most
favorable to Plaintiff, are sufficient to support an inference, let alone ***clear and convincing
evidence***, of actual malice.  *Tah v. Global Witness Publ., Inc.* 413 F. Supp. 3d 1, 15 (D.D.C.
2019) (dismissing complaint for failure to adequately allege actual malice, concluding that,
"[w]ithout clear and convincing evidence of actual malice, and only strands of evidence,
Plaintiffs' pleadings fail to meet their burden"), *aff'd*, *Tah*, No. 19-7132, slip. op. at 18; *see also
Tavoulareas*, 817 F.2d at 789 ("actual malice does not automatically become a question for the
jury whenever the plaintiff introduces pieces of circumstantial evidence tending to show that the
defendant published in bad faith.  Such an approach would be inadequate to ensure correct
application of both the actual malice standard and the requirement of clear and convincing
evidence.").  Courts frequently reject even more substantial allegations of actual malice than
Plaintiff presents here.  *Tah*, slip op. at 14-18 (listing four theories of actual malice presented by
plaintiffs, but still affirming dismissal for inadequate pleading of actual malice); *Fairbanks*, 314

F.Supp.3d at 92-93 (dismissing complaint even though plaintiff's complaint went beyond mere recitations, and articulated four different bases for defendant's purported actual malice, concluding that the plaintiff's allegations did not "come[] close to satisfying the First Amendment's demanding standard for public figures bringing defamation actions"); *Deripaska*, 282 F.Supp.3d at 143-44 (plaintiff "failed to adequately allege actual malice" even though his complaint articulated specific "crucial background" information that was allegedly intentionally omitted from a publication, but even that, the Court ruled, did "not come close to plausibly alleging that the [defendant] acted with actual malice or reckless disregard for the facts when it published the article in question").

Although Plaintiff completely ignores all of the cases addressing actual malice at the pleading stage from this Court and nationwide, he takes issue with Defendants' citations to cases holding that allegations of actual malice with a fully developed record were ***still*** held to be ***insufficient***. Opp. at 34-37. Plaintiff misses the point. Here, he cannot even properly ***allege*** actual malice, and what is more, the authorities discussed in the Motion at pages 36 to 37 show that his scattered theories of actual malice would fail ***even with a fully developed record***. This Court should not permit Plaintiff to burden Defendants with discovery where even Plaintiff's random theories of actual malice would not ultimately suffice. Judge Lamberth held in *Arpaio* that dismissal of defamation and related claims with prejudice on actual malice grounds was warranted to "vigorously protect the First Amendment rights of journalists and the press" from the burdens of proceeding with a meritless case. *Arpaio*, 414 F. Supp. 3d at 93.

Finally, Plaintiff suggests that he should be able to submit an amended pleading, but he articulates ***no facts*** he would add in an amended complaint that would be sufficient to allege actual malice. Opp. at 34-37. Where, as here, plaintiff does not articulate any facts that would support his

rote allegations of actual malice, the Complaint can and should be dismissed with prejudice.  In *Tah*, for example, Judge Collyer of this Court dismissed plaintiffs' complaint for failure to adequately plead actual malice at the pleading stage, noting that plaintiffs had presented only "strands of evidence" and not "clear and convincing evidence" of actual malice, and immediately issued an order closing the case, making the dismissal an appealable order, which the D.C. Circuit affirmed.  *Tah*, 413 F. Supp. 3d at 15; Ex. H; *Tah*, slip op. at 18.  Other Judges in this Court have done the same.  *See, e.g., Arpaio*, 414 F. Supp. 3d at 91-94 (Lamberth, J.) (dismissing complaint against Rolling Stone and Huffington Post with prejudice based on plaintiff's failure to adequately allege actual malice); *Deripaska*, 282 F. Supp. 3d at 141-44 (Huvelle, J.) (dismissing complaint with prejudice based in part on plaintiff's failure to plead facts to show that defendant "acted with actual malice"); *Nunes*, 2020 WL 7668900, at *6 (Mehta, J.) (dismissing complaint with prejudice for failure to adequately allege actual malice and holding that proposed amended complaint "does nothing to address Plaintiff's inability to plead actual malice.  Instead, it repeats the same litany of conclusory or otherwise insufficient allegations").

Dismissal with prejudice for failure to adequately plead actual malice is consistent with a commitment to protecting journalists under the First Amendment.  Because "costly and time-consuming defamation litigation" can threaten First Amendment freedoms, "the Supreme Court has directed courts to expeditiously weed out unmeritorious defamation suits" in order "[t]o preserve First Amendment freedoms and give reporters … the breathing room they need to pursue the truth[.]"  *Kahl v. Bureau of Nat'l Affairs, Inc.*, 856 F.3d 106, 109 (D.C. Cir. 2017).  Early resolution of defamation cases on a motion to dismiss "not only protects against the costs of meritless litigation, but provides assurance to those exercising their First Amendment rights that doing so will not needlessly become prohibitively expensive."  *Fairbanks*, 314 F. Supp. 3d at 89 (internal

quotation marks omitted); *see also Arpaio*, 414 F. Supp. 3d at 93 (dismissal with prejudice on actual malice grounds warranted to "vigorously protect the First Amendment rights of journalists and the press" from the burdens of proceeding with a meritless case).

Ample precedent supports dismissing Plaintiff's entire case on actual malice grounds with prejudice. In addition to dismissing this entire case with prejudice on actual malice grounds, there are several other bases to dispose of Plaintiff's case without leave to amend.

## IV.   PLAINTIFF DID NOT ESTABLISH THAT SEVERAL OF THE ALLEGED IMPLICATIONS ARE REASONABLY DRAWN FROM THE PODCAST.

Plaintiff does not—because he cannot—dispute that a claim for "defamation by implication requires 'an especially rigorous showing,' as the publication 'must not only be reasonably read to impart the false innuendo, but it must also affirmatively suggest that the author intends or endorses the inference.'" *Bauman v. Butowsky*, 377 F. Supp. 3d 1, 15 (D.D.C. 2019) (citations omitted). Nor does Plaintiff dispute that courts must first examine as a "threshold issue" whether a defamatory implication exists "as a matter of law." *Mar-Jac Poultry, Inc. v. Katz*, 773 F. Supp. 2d 103, 114 n.6. (D.D.C. 2011).

Plaintiff accuses Defendants of making a "false statement" to the Court about the terms "bully" and "alt-right," and whether they were implied about Plaintiff. Opp. at 7. Plaintiff's accusation is neither fair nor accurate. Defendants' Motion expressly admitted that "the Podcast implies Plaintiff is a bully," but asserted that such an implication is protected opinion and/or hyperbole. Mtn. at 9, 22.[6] For the term "alt-right," Defendants do dispute that the "Plaintiff is

---

[6] Plaintiff points back to the use of the word "bullies" (plural) in the *first* episode of the Podcast, which does not mention Plaintiff. Pltf. Ex. A at 7:13. The Complaint, however, centers solely on the *sixth* episode of the Podcast and the sixth bonus episode because those are the episodes where Plaintiff is mentioned. *See, e.g.,* Compl. ¶¶ 55-107, 124-127. Plaintiff's reference to a passing comment *five hours* previously in an episode of the Podcast that does not mention him is

labeled 'alt-right' in the Podcast," but, Defendants' Motion allows for that possibility, stating

that "even if he were, that, too, is a non-verifiable term and is therefore protected." *Id*.[7]

      Paragraph 136(h) of the Complaint, supposedly asserting that the Podcast said that

Plaintiff said "Joe Capone plotted Seth Rich's murder/assassination with Hilary [*sic*] Clinton or

aides to Hilary Clinton," is not reasonably implied from the Podcast.  Compl. ¶ 136(h).  Plaintiff

points to sources other than the Podcast, such as Aaron Rich's lawsuit against Couch and

Isikoff's interview with National Public Radio ("NPR"), but neither of those are in the Podcast

and nether involve Isikoff discussing Plaintiff.  Opp. at 9.[8]  Plaintiff points to Isikoff's exchange

with Capone, but *Capone* is the one who first mentions Plaintiff by name.  *Id.*; Compl. ¶ 106.

And then, when Isikoff asks Capone, "What was Matt Couch saying …?," Capone answers that

Plaintiff was saying that "secret meetings" were "going on."  *Id.*  And when Isikoff asks "with

who?," Capone says "Hillary."  Opp. at 10; Compl. ¶ 106.  None of these are leading questions

from Isikoff.  They are open-ended, and Capone answers each.  Paragraph 136(g) of the

Complaint alleges that the Podcast said that Plaintiff asserted "Joe Capone met Hilary [*sic*]

Clinton or aides to Hilary Clinton in the days before Seth Rich's murder."  Compl. ¶ 136(g).

Defendants do not deny that implication is in the Podcast, as ludicrous as it is for Plaintiff to

_____

not only irrelevant factually, but is time-barred legally.  Plaintiff filed his Complaint as to the sixth episode and sixth bonus episode of the Podcast exactly one year after those episodes aired, Opp. at 33, and any allegations about prior episodes are barred by the District of Columbia's one-year statute of limitations.  D.C. Code § 12-301(4); *Stovell v. James*, 965 F. Supp. 2d 97, 101 (D.D.C. 2013) ("District of Columbia law provides a one-year statute of limitations for claims of defamation").

[7] Defendants recognize that there is one spot in the sixth episode where it is difficult to discern from the audio whether the term "outright" or "alt-right" is used.  Ex. A at 23:3.  But the dispute is not pertinent to the outcome of the Motion because Defendants maintain that it would be protected speech even if Plaintiff were clearly called "alt-right."  Mtn. at 9, 22.

[8] Indeed, Plaintiff has no answer for the fact that the NPR interview does not mention or allude to Plaintiff.  Mtn. at 10 n.6.

push it as the basis for a conspiracy theory simply because Capone took his family for a tour of the White House. But Plaintiff cannot meet the "rigorous showing"—*i.e.,* the next leap—to support the alleged implication in Paragraph 136(h), that Clinton or her aides were plotting murder with Capone. *Bauman*, 377 F. Supp. 3d at 15.

With respect to Paragraphs 136(i), (j) and (k) and 144, nothing in the Podcast accuses Plaintiff of *personally* publishing "stolen personal information" ("doxing") or "superimposing" Jeffrey Dahmer's head on Mueller's body or attempting to "gain access illegally" to Mueller's "effects," which is what Plaintiff alleges the Podcast implies. Opp. at 12, 18. The Podcast does not mention Plaintiff at all in connection with the discussion about "doxing" or "superimposing." Ex. A at 22:7-22. Mark Mueller mentions his concern that *unspecified* "people" "*might be*" trying to *rent* his basement apartment—"*because of*" "trolls" "*like* Matt Couch." *Id.* at 22:23-23:7 (emphasis added). The Podcast does not convey—through Mueller or otherwise—that *anyone* was "attempting burglary" or seeking "to gain access to documents relating to Seth Rich," which is what the Complaint alleges without any plausible foundation. Compl. ¶¶ 136(k), 144.

## V.   ALL OF THE STATEMENTS AND ALLEGED IMPLICATIONS ARE PROTECTED BY THE FAIR COMMENT PRIVILEGE AND THE FIRST AMENDMENT.

### A.  The Fair Comment Privilege Applies Even Where Underlying Facts Are Not Included, But Here Foundational Information Was Included.

Plaintiff acknowledges that "Defendants correctly state the black letter law on fair comment." Opp. at 14. Plaintiff ignores, however, that, in the District of Columbia, "the fair comment privilege can be invoked even if the underlying facts *are not* included with the

comment." *Lane v. Random House, Inc.*, 985 F. Supp. 141, 150 (D.D.C. 1995) (emphasis added; citations omitted).

Nevertheless, Defendants *do* include facts to support the comments at issue.  The statements concerning Capone and Mueller are supported by interviews with those individuals. Ex. A at 19-23.  Plaintiff claims "[t]here are no disclosed facts that are consistent with Couch being a 'bully,'" and likewise claims that there is no "factual basis" or "underpinning" for the similar labels "crankster" and "troll."  Opp. at 16-17.  Plaintiff hopes the Court will forget or ignore his campaign against Aaron Rich who Plaintiff accused of helping to "cover up" and "block" the investigation of his own brother's murder, while profiting from the sale of stolen DNC emails and possibly sending anthrax-laden letters, all of which was discussed in the Podcast.  Compl. ¶¶ 3, 37-38; Ex. A at 11-23; Ex. B at 7.  Tellingly, Plaintiff's Opposition has no response to Defendants' assertion of the fair report privilege, which established that the Podcast fairly and accurately summarized Aaron's key allegations against Couch and others, including all of the allegations at Paragraphs 136(a) through (e) of Plaintiff's Complaint.  Mtn. at 27-28. Plaintiff admits that he "made incorrect statements about Aaron Rich."  Opp. at 17; *see also* Ex. D.  He also claims that it is unfair to call him a "conspiracy entrepreneur," but he admits he is an "entrepreneur" and that he "raises funds," Opp. at 16, and he does not dispute that he did so on at least one occasion immediately after reading a letter from Aaron while reminding his audience of the (now admittedly false) allegation that Aaron "covered things up" in the investigation of Seth's murder, Ex. A at 15:20-17:10.  Plaintiff may pretend all of this does not make him a bully, troll, crankster, or conspiracy entrepreneur, but, as a matter of law, it is fair to think otherwise. *Dall v. Pearson*, 246 F. Supp. 812, 813 (D.D.C. 1963) (application of the fair comment privilege is determined as a matter of law).

13

**B.  All Of The Alleged Statements Are Protected As Opinion, Rhetorical**

**Hyperbole And/Or Speculation Based On Disclosed Information.**

Plaintiff fails to address the facts and holdings in two key cases highlighted by

Defendants.  In *Lane*, Judge Lamberth of this Court rejected a defamation claim from a

conspiracy theorist who was accused of "misleading the American public" about the

assassination of President Kennedy.  985 F. Supp. at 144-145.  Even though the plaintiff alleged

it was verifiable whether Lee Harvey Oswald shot President Kennedy, Judge Lamberth said that

the defendant's statement was the "ideal prototype" of protected speech and "subjective belief"

and "has no provably false connotation, nor does it imply provable facts."  *Id.* at 150-151.  And

in *Bauman*—which Plaintiff completely ignores—this Court analogized to *Lane*, noting that

competing conspiracy theories surrounding the "heated public controversy over the Seth Rich

murder" are fertile ground for protected speech where the plaintiff and defendant "were sparring

in the mainstream and fringe press from opposite sides of the fray."  377 F. Supp. 3d at 13-14.

Plaintiff and Defendants agree that context is important in evaluating the language of an

allegedly defamatory statement or implication.  Mtn. at 12-13; Opp. at 21.  Here, as in *Bauman*,

the context is a discussion of the highly publicized and unsolved Seth Rich murder, conspiracy

theories surrounding that murder, and various characters embroiled in the same.  The Podcast is

openly critical of Seth Rich conspiracists, using interviews, citations to court and police records,

and first-person audio from, for example, Plaintiff as he attacks and belittles Seth Rich's grieving

brother, Aaron.  *See generally* Ex. A.  Although Plaintiff accuses Isikoff of being a "master

conspiracy theorist who weaves tales about his enemies that have no basis in fact," it is Plaintiff

who was compelled to admit that "his statements relating to Aaron Rich were based on false

information."  Opp. at 11, 28; *see also* Ex. D.

14

Set in this context, there are statements and purported implications in the Podcast that Plaintiff is a bully, troll, crankster and alt-right.  Compl. ¶¶ 136(m), (n), (o), (p).  Plaintiff ignores all of the cases cited by Defendants where such language was considered protected because it is subjective and not verifiable.  Mtn. at 22 n. 9 (citing, *e.g., Automated Transactions LLC v. American Bankers Ass'n*, 216 A.3d 71, 78-83 (N.H. 2019) (calling someone a "patent troll" is an opinion that cannot support a defamation claim); *Purcell v. Ewing*, 560 F. Supp. 2d 337, 342-344 (M.D. Pa. 2008) (calling someone a "bully" is an insult insufficiently verifiable to support a defamation claim); *Hupp v. Sasser*, 490 S.E.2d 880, 887 (W.Va. 1997) (labeling someone a "bully" is protected "opinion devoid of a provably false assertion of fact" and "totally subjective" as "[t]he threshold of what constitutes bullyism to one would necessarily not be the same for another individual"); *Coghlan v. Beck*, 984 N.E.2d 132, 148-149 (Ill. Ct. App. 2013) ("What constitutes … the actions of a bully will vary widely from one person to another," and "cannot be shown to be true or false").  One person's bully, troll or crankster is another person's hero, followed by 400,000 on Twitter.  Compl. ¶ 1.  Similarly, one person's "alt-right" is another's center-conservative.  "[A]lt-right" is "merely [a] characterization[]" of a "political view."  *McCafferty v. Newsweek Media Grp., Ltd.*, No. CV 18-1276, 2019 WL 1078355, at *4 (E.D. Pa. Mar. 7, 2019), *aff'd*, 955 F.3d 352 (3d Cir. 2020).[9]

The purported implications relating to Capone and Mueller are not reasonably drawn from the Podcast.  *See* Mtn. at 10-11; Section IV, *supra*.  Even if the implications were reasonable, however, they would not be actionable because the interviews of Capone and

---

[9] Plaintiff cites cases where terms like "deep state," "Nazi," "anti-Semite," and "racist" were used, but those cases did not hold that those terms conveyed verifiable facts.  Opp. at 18-19.  In any event, there is no allegation that Defendants used any of those words, and Plaintiff ignores the cases involving the actual words at issue in this case.  *See* Mtn. at 22 n.9.

Mueller lay the foundations for the Podcast's listeners to evaluate and consider.  Ex. A at 19-23.
*See Bauman*, 377 F. Supp. at 11 & n. 9 (assertions based on disclosed information lend
themselves to opinion); *see also Moldea II*, 22 F.3d at 317.  Also, the purported implications,
even if drawn from the Podcast, are speculative—and therefore protected—in their supposition
that various "people" "like" Couch targeted Capone and Mueller.  *See Mar-Jac Poultry*, 773 F.
Supp. 2d at 122; *Guilford Transp. Indus., Inc. v. Wilner*, 760 A.2d 580, 597 (D.C. 2000).

The term "conspiracy entrepreneur" is used colorfully to describe Plaintiff.  It is based,
*inter alia*, on Plaintiff's fundraising efforts following Plaintiff's accusation that Aaron "covered
things up" in the investigation of Seth's murder.  Ex. A at 16:1-23.  Plaintiff describes himself as
an "entrepreneur," but apparently takes umbrage at the association of that term coupled with the
word "conspiracy" even though he now admits that he was disseminating false information about
Aaron.  Opp. at 16, 28; Ex. D.  Defendants' rhetorical use of the phrase "conspiracy
entrepreneur" is a matter of opinion or hyperbole, both of which are constitutionally protected.
*See, e.g., Montgomery v. Risen*, 197 F. Supp. 3d 219, 248-249 (D.D.C. 2016) (statement that a
plaintiff was a "con artist" behind "one of the most elaborate and dangerous hoaxes in American
history," was held to be "a quintessential example of subjective opinion"); *Bauman*, 377 F. Supp.
3d at 13-14 (statement that plaintiff "should apologize to the country for crafting a lie" is not
actionable in a dispute over controversies surrounding the murder of Seth Rich); *Lane*, 985 F.
Supp. at 150 (statement that plaintiff was "guilty of misleading the American public" is the
"ideal prototype" of protected speech (emphasis removed)).

Paragraph 136(q) of the Complaint alleges that Plaintiff was falsely labeled "an associate
of a Southern 'confederate.'"  Comp. ¶ 136(q).  Plaintiff insists that the use of the word
"confederate" is verifiable and defamatory, without any regard for the actual context in which

the word was used in the Podcast.  Opp. at 20.  Although the Complaint alleges that Plaintiff was labeled an "associate" of a "confederate" (lower case "c" and used as a noun), Compl. ¶ 136(q), Plaintiff's Opposition suggests that the Podcast labeled him a "Confederate" (with a capital "C" and used as an adjective) sympathizer who adheres to a racist and political dogma as if he "marched at Charlottesville with a Confederate flag," Opp. at 20.[10]  In fact, the Podcast does not call Plaintiff a "confederate" or "Confederate" sympathizer at all.  The Podcast calls Plaintiff's companion *Josh* a confederate of Plaintiff, but does not call Plaintiff a confederate or Confederate sympathizer. Ex. A 14:23-25.  And the Podcast does not identify Josh as "Southern."  Even if the passage about Plaintiff and Josh could be translated to labeling Plaintiff as *Josh's* "Southern 'confederate,'" it simply means, in context, that Plaintiff and Josh were working together as they read and commented on Aaron's letter, not that they were "white nationalist Southerner[s]" engaged in "illegal activity."  *Compare* Ex. A at 14:16-17:10 *with* Opp. at 24.[11]  Even if the Podcast's passing comment used in a grammatically correct way could be translated to calling Plaintiff a "Confederate" sympathizer—which requires several leaps of inference and logic—that would be a hyperbolic description of Plaintiff, which is protected speech.[12]

---

[10] Plaintiff also suggests that the Podcast implied he was "assimilated to" the "January 6 extremists," Opp. at 25, which makes no sense since the last episode of the Podcast aired on August 6, 2019, Compl. ¶ 1; Opp. at 32-33 & n.14—17 months before the events of January 6, 2021.

[11] Plaintiff employs dictionary definitions where he believes it suits him, *see* Opp. at 19, 21, but rejects the dictionary definition of confederate (with a lower case "c") that simply means "ally or accomplice," *see* Mtn. at 23 (citing *confederate*, https://www.merriam-webster.com/dictionary/confederate (last visited Jan. 20, 2021)).

[12] Plaintiff also complains that he is painted as a "Southern villain," and repeatedly insists in his Opposition that he should not be described as hailing from the Ozarks.  Opp. at 20, 33, 38. Plaintiff asserts that it is "highly offensive" to be identified with the Ozarks "with its connotations of backwards, uneducated hillbillies and shady characters engaged in criminal activity."  Opp. at 33 (citing Wikipedia for the entry concerning the TV series "Ozark"), 38.

\*       \*       \*

All of the statements and purported implications at issue are protected as fair comment, opinion, hyperbole, or speculation based on disclosed information.  As such, none can support a defamation claim.

## VI.     THE TERMS "CONSPIRACY ENTREPRENEUR" AND "CONFEDERATE," IF VERIFIABLE, ARE SUBSTANTIALLY TRUE.

Plaintiff acknowledges that he has the burden to prove falsity.  Opp. at 21.  Courts routinely decide substantial truth on a motion to dismiss where the truth is apparent from the pleadings or judicially noticeable material.  *Arpaio,* 414 F. Supp. 3d at 90 (dismissing plaintiff's defamation claim against CNN in part on substantial truth grounds); *accord Tannerite Sports, LLC v. NBCUniversal News Group*, 864 F.3d 236, 248-252 (2d Cir. 2017) (affirming dismissal of defamation claim pursuant to Rule 12(b)(6) on substantial truth grounds); *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1103 (10th Cir. 2017) (same and holding that "material falsity may be analyzed under a Rule 12(b)(6) motion to dismiss").[13]

The term "conspiracy entrepreneur," to the extent it is verifiable, is substantially true.  Plaintiff describes himself as an "entrepreneur."  Opp. at 16.  Plaintiff openly accused Aaron of accepting money from Wikileaks and "covering up" his own brother's murder, and then Plaintiff

---

Defendants disagree with that stereotype, and do not believe that people from the Ozarks should be described or thought of that way.  In any event, Plaintiff's Complaint does not list hailing from the Ozarks as one of the 20 allegedly defamatory statements or implications at issue.  *See* Compl. ¶¶ 136, 144.  Moreover, Plaintiff actually *is* from the Ozarks.  He is from Rogers, Arkansas, Compl. ¶ 43, which Wikipedia describes as "[l]ocated in the Ozarks." https://en.wikipedia.org/wiki/Rogers,_Arkansas (visited March 17, 2021).

[13] Plaintiff criticizes Defendants for not "attempt[ing] to argue" that more statements and alleged implications are true.  Opp. at 32.  But Defendants maintain that some of the alleged implications are not reasonable at all, and Defendants understand the limitations of a motion to dismiss and confine their substantial truth arguments accordingly.  Defendants do not, however, concede that *any* of the statements or alleged implications are false.

asked his followers for money.  Ex. A at 12:8-15, 15:20-16:23.[14]  His Complaint alleges that he

uses funds raised to finance his "investigation" into the Seth Rich murder.  Compl. ¶¶ 83, 85.

Plaintiff later admitted that the conspiratorial stories he had been spreading about Aaron were

false.  Opp. at 28; Ex. D.  To the extent the term "conspiracy entrepreneur" is verifiable, it is a

substantially accurate description of Plaintiff based on Plaintiff's admissions and judicially

noticeable facts.

         To the extent the term "confederate" is used in a verifiable way, it is substantially true.

The quote from the Podcast is: "Couch's response [to Aaron's letter] was contemptuous.  Here

he is driving around with one of his confederates named Josh and Periscoping while they did so."

Ex. A at 14:23-25.  Paragraph 136(q) of the Complaint alleges that Plaintiff was falsely labeled

"an associate of a Southern 'confederate.'"  Compl. ¶ 136(q).  The word "associate," in context,

is redundant of the word "confederate," which is used as a noun—not the adjective

"Confederate"—and means "ally or accomplice," which is precisely what Josh was to Plaintiff.

*confederate*, https://www.merriam-webster.com/dictionary/confederate (last visited Jan. 20,

2021).[15]  It is true—and not disputable—that Josh is Plaintiff's "ally or accomplice" as they

discuss Aaron's letter together on the social media platform Periscope.  Ex. A at 14:23-16:23.

Plaintiff invents a new definition, without any support, for "confederate" in his Opposition,

---

[14] Plaintiff also repeatedly tweeted about Capone being a "person of interest" in Seth's murder, and the "conspiracy" (Plaintiff's word) concerning Capone's visit to the White House.  Ex. J to Second Request for Judicial Notice.

[15] The Podcast simply does not call Plaintiff a "Confederate" sympathizer, but even if Plaintiff's far-fetched interpretation were given credence, Plaintiff dissembles when he asserts that there is "zero evidence that [he] … has ever paraded with a confederate flag" and he "has never been seen with a confederate flag, or in the presence of anyone who uses the confederate flag as a rallying symbols [*sic*]."  Opp. at 20, 28.  In fact, Couch has lamented Congress's removal of "Confederate statutes," and NASCAR's ban on the "Confederate flag at its events and properties," noting "Do these folks [at NASCAR] even know who their audience is?  Stop being offended and cowering to the mob!"  Ex. I to Defendants' Second Request for Judicial Notice.

claiming that "it is *always* used to signify that the 'confederate' is engaged in illegal or subversive or wrongful activity." Opp. at 24 (emphasis added). Even if that were correct—which it clearly is not[16]—it would be a matter of protected *opinion* whether Plaintiff's and Josh's mocking and contemptuous review of Aaron's letter was "wrongful."

## VII.    TWO OF THE STATEMENTS CARRY NO DEFAMATORY MEANING.

Defendants assert that Paragraph 136(g) of the Complaint is not defamatory because it is not defamatory to state that Plaintiff "asserted that Joe Capone met Hilary [*sic*] Clinton or aides to Hilary Clinton in the days before Seth Rich's murder." Mtn. at 29. Plaintiff responds by discussing Paragraph 136(h) of the Complaint, which concerns the unreasonable implication that the Podcast said Plaintiff asserted that Capone and Clinton conspired to murder Seth. Opp. at 24-25. Plaintiff is the one who chose to separate Paragraphs 136(g) and (h), and they cannot be conflated for the purposes of this defamatory meaning analysis. There is nothing defamatory about simply saying Plaintiff asserted Capone "met" with Clinton or her aides.

Likewise, there is nothing defamatory about saying Plaintiff had a confederate—*i.e.*, an "ally or accomplice"—as they read Aaron's letter on Periscope. Mtn. at 29.

## VIII.   PLAINTIFF'S ANCILLARY CLAIMS SHOULD ALSO BE DISMISSED.

### A.    Plaintiff's Causes Of Action For Intentional Infliction Of Emotional Distress, False Light and Intentional Interference With Business Relations Are Duplicative of His Defamation Claims And Necessarily Also Fail.

Plaintiff does not dispute that his allegations explicitly tie the intentional infliction of emotional distress ("IIED"), false light and intentional interference with business relations claims to the alleged defamatory statements at issue. *Compare* Compl. ¶¶ 135-149 (allegations in

---

[16] Before the United States had its current Constitution it had the Articles of Confederation.

defamation claims) *with id.* ¶¶ 150-159; 173-177 (allegations in IIED, false light and intentional interference claims which are expressly based on Defendants' alleged "false statements," "representations" and "lies about Plaintiff," *id.* ¶¶ 151, 158, 174).

Plaintiff has no answer for Defendants' cases holding that IIED, false light and intentional interference claims that are based on the same allegations as defamation claims must be dismissed where, as here, the defamation claims fail.  Mtn. 38-39.  Plaintiff does not address the D.C. Circuit's clear directive that, where a "defamation claim fails, so do . . . other tort claims based upon the same allegedly defamatory speech," because the "First Amendment considerations that apply to defamation" also apply to "counts for false light and tortious interference." *Farah v. Esquire Magazine*, 736 F.3d 528, 540 (D.C. Cir. 2013).[17]  Nor does he grapple with the well-established rule that "a plaintiff may not use related causes of action to avoid the constitutional requisites of a defamation claim." *Moldea II*, 22 F.3d at 319-320.

Plaintiff's only citation is to *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 628 (D.C. Cir. 2001), which he uses out of context.  Plaintiff cites *Weyrich* for the proposition that defamation and false light are not identical, Opp. at 38, but *Weyrich* does ***not*** hold that a false light claim can survive if a defamation claim cannot pass muster under the First Amendment.  Indeed, *Weyrich* expressly states that "the same First Amendment protections apply" to false light claims as to defamation claims.  235 F.3d at 627.  Here, Plaintiff's defamation claims fail for several

---

[17] *See also Farah v. Esquire Magazine*, 863 F. Supp. 2d 29, 39 (D.D.C. 2012) ("Plaintiffs' claim for tortious interference fails because it is grounded in the same nonactionable claim for defamation"), *aff'd*, 736 F.3d 528, 540 (D.C. Cir. 2013); *Bauman*, 377 F. Supp. 3d at 16 (dismissing false light claim based on failure to state claim for defamation *per se*, observing that "the two are analyzed identically" (quoting *Parisi*, 845 F. Supp. 2d at 218 n.1)); *Zelaya v. UNICCO Serv. Co.*, 587 F. Supp. 2d 277, 287 (D.D.C. 2008) ("[t]he intentional interference required for the plaintiff's claim is premised entirely on a defamation allegation that is fatally deficient under the *Twombly* pleading standard").

independent reasons, including that they cannot survive, *inter alia*, under the First Amendment's actual malice, opinion/hyperbole and substantial truth doctrines. Plaintiff further claims, without any support whatsoever, that "Constitutional 'actual malice' is irrelevant to the [IIED, false light and intentional interference] causes of action, [so] these claims clearly survive if the Court bases its ruling on actual malice." Opp. at 38. The D.C. Circuit makes clear that Plaintiff's unsupported assertion is simply wrong. *See Tah,* slip op. at 18 (plaintiffs' failure to "plausibly allege that [defendant] acted with actual malice … proves fatal not only to their defamation claims but to their false light claims as well"); *Farah*, 736 F.3d at 540 (the same "First Amendment considerations that apply to defamation" apply equally to "false light and tortious interference"); *Moldea II*, 22 F.3d at 319-320 (the "constitutional requisites of a defamation claim" apply equally to related claims, such as false light). Plaintiff's false light, IIED and tortious interference claims fail, and the Court should dismiss them with prejudice.

### B.     Plaintiff's Claims For Civil Conspiracy And Aiding And Abetting Also Fail.

Plaintiff claims it is "unclear" and "curious" why Defendants are speaking of conspiracy and aiding and abetting as independent torts. Opp. at 38, 40. Defendants' Motion addresses civil conspiracy and aiding and abetting as "independent torts" because that is precisely how Plaintiff frames them in his Complaint: Count Five is for "Civil Conspiracy," Compl. ¶¶ 160-167, and Count Six is for "Aiding and Abetting, *id.* at ¶¶ 168-172. Those standalone claims—as Plaintiff himself constructed them—are not permissible under the law.

There is no independent liability for civil conspiracy or aiding and abetting on their own, as Plaintiff tries to allege in his Complaint. *See* Compl., ¶¶ 160-172; *McCord v. Bailey*, 636 F.2d 606, 611 n.6 (D.C. Cir. 1980) ("civil conspiracy is not in and of itself a civil wrong, giving an independent cause of action"); *Findlay v. CitiMortgage, Inc.*, 813 F. Supp. 2d 108, 122 (D.D.C.

2011) ("civil conspiracy is not recognized as an independent tort"); *Chen v. Bell-Smith*, 768 F. Supp. 2d 121, 140 (D.D.C. 2011) ("D.C. courts have not [] recognized aiding and abetting as a separate, independent tort"). Aiding and abetting and civil conspiracy provide a civil *mechanism* whereby peripheral parties not directly responsible for a tort can be found liable because of their secondary role. *See*, *e.g.*, *Geier v. Conway, Homer & Chin-Caplan, P.C.*, 983 F. Supp. 2d 22, 42 (D.D.C. 2013) (civil conspiracy is not an "independent action" but rather "is a means for establishing vicarious liability"); *Carroll v. Fremont Inv. & Loan*, 636 F. Supp. 2d 41, 53 (D.D.C. 2009) ("A claim of aiding and abetting is [only] a means of establishing vicarious liability").

Plaintiff's attempts to address two of Defendants' cases ignore plain language in each. Opp. at 38-40. As the Court held in *Plummer v. Safeway, Inc.*, 934 F. Supp. 2d 191, 198 (D.D.C. 2013), civil conspiracy and aiding and abetting "are not independently actionable in the absence of an underlying tort." And the Court in *Carroll* held that "[a] claim of aiding and abetting is also not an independent tort." *Carroll*, 636 F. Supp. 2d at 53-54. Plaintiff cannot, and does not even try, to refute this. Plaintiff's Complaint bases his conspiracy and aiding and abetting claims on the allegations that Defendants "commit[ted] the torts of: Defamation; Defamation Per Se; [IIED]; and False Light[.]" Compl. ¶¶ 161; 169. For the reasons stated above, those claims all fail as a matter of law. Defendants cannot be subject to claims for conspiracy or aiding and abetting based on torts for which they are not liable.[18] There is no underlying tort here. In

---

[18] Plaintiff claims that Defendants "do not contest the existence of a conspiracy" and "do not contest that the legal elements of an aiding and abetting [*sic*] have been properly stated." Opp. at 40. Defendants have made no such concessions. In cases where the *mechanisms* of conspiracy and aiding and abetting are asserted, the key required element is "*a wrongful act that causes an injury*." *See Carroll*, 636 F. Supp. 2d at 53 (emphasis added). As Defendants argue in their Motion and above, there is no underlying wrongful act in this case, and therefore the tag-along claims for conspiracy and aiding and abetting would fail even if they were actionable as

*Nunes*, Judge Mehta of this Court rejected a conspiracy claim that the defendant newspaper engaged in a conspiracy with others to defame plaintiff.  2020 WL 7668900, at *6.  Citing *Farah*, 736 F.3d at 540, the Court held that the conspiracy claim failed because the underlying defamation claim failed.  2020 WL 7668900, at *6.  The Court should likewise dismiss the conspiracy and aiding and abetting claims.

### C.      Plaintiff's Negligent Supervision And Retention Claim Also Fails.

Plaintiff does not dispute that a claim for negligent supervision and retention must be based on a "predicate claim."  *See Islar v. Whole Foods Market Grp., Inc.*, 217 F. Supp. 3d 261, 268 (D.D.C. 2016) (dismissing negligent supervision and retention claim for lack of viable predicate); *Daisley v. Riggs Bank, N.A.*, 372 F. Supp. 2d 61, 81 (D.D.C. 2005) (dismissing negligent supervision and retention claim pursuant to Rule 12(b)(6) because plaintiff "has not identified a legally cognizable tort").  Plaintiff does not offer a single citation for his contention that his negligent supervision and retention claim is viable in response to Defendants' arguments for dismissal.  *See* Opp. at 40-41.  Because Plaintiff's Complaint expressly links his negligent supervision and retention claim to Defendants' other allegedly "tortious conduct" relating to the Podcast, and because those underlying torts fail as a matter of law, Plaintiff's negligent supervision and retention claim must also be dismissed.  *See* Compl. ¶¶ 180, 181.[19]

---

independent claims, which they are not.  *See* Mot. at 39-41.  Defendants have therefore in no way conceded any aspect of Plaintiff's purported conspiracy and aiding and abetting claims.

[19] Plaintiff's argument that Defendants have "conced[ed]" or "forfeited" arguments against this claim is wrong.  *See* Opp. at 41.  Defendants' arguments for dismissal necessarily work within the parameters of the pleadings stage, but there is no concession if the case advances past the pleadings stage.  *Beach TV Props, Inc. v. Solomon*, 254 F. Supp. 3d 118, 125 (D.D.C. 2017).

**IX.    VERIZON WAS NOT THE PROPER CORPORATE DEFENDANT; BUT THERE
IS NO VIABLE CLAIM AGAINST ANY PARTY FOR THE PODCAST.**

Verizon Communications, Inc. is simply the wrong corporate defendant in this case, and
the Complaint contains no allegations to pierce the corporate veil.  In any event, there is no
viable claim against any corporate defendant for the Podcast so there is no basis or reason to
permit amendment to pursue yet another party over the Podcast.

**X.    DEFENDANTS RULE 12(b)(5) MOTION SHOULD ALSO BE GRANTED.**

Plaintiff's consolidated Opposition incorporates his opposition to NPR's Rule 12(b)(5)
motion.  Dkt. 38.  Defendants join in NPR's reply to Plaintiff's Opposition to NPR's Rule
12(b)(5) motion.  Dkt. 39.  If NPR's motion is granted so, too, should the Court grant
Defendants' motion.

**XI.    CONCLUSION**

Defendants respectfully request that the Court grant their Rule 12(b)(5) motion or their
Rule 12(b)(6) motion, or both of them, with prejudice.  In the alternative, Defendants request that
the Court strike all statements and alleged implications that it determines to be nonactionable
pursuant to Rule 12(f) without leave to amend.

DATED:  March 24, 2021

> Respectfully submitted,
>
> /s/ Jean-Paul Jassy
> Jean-Paul Jassy (*Pro Hac Vice* motion pending)
> William T. Um (*Pro Hac Vice* motion pending)
> Elizabeth H. Baldridge (*Pro Hac Vice* motion pending)
> **JASSY VICK CAROLAN LLP**
> 800 Wilshire Boulevard, Suite 800
> Los Angeles, CA 90017
> Telephone: (310) 870-7048
> Facsimile: (310) 870-7010
> jpjassy@jassyvick.com

wum@jassyvick.com
ebaldridge@jassyvick.com

Laura C. Fraher (DC Bar No. 979720)
**SHAPIRO, LIFSCHITZ & SCHRAM P.C.**
1742 N Street NW
Washington, DC 20036
Telephone: (202) 689-1900
Facsimile: (202) 689-1901
fraher@slslaw.com

*Attorneys for Defendants Verizon Communications Inc. and
Michael Isikoff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 24, 2021, a copy of the foregoing Reply in support of

Defendants' Motion to Dismiss was electronically filed through the CM/ECF system, which

caused the following parties or counsel to be served by electronic means, as more fully

reflected on the Notice of Electronic Filing:

| | |
|---|---|
| Eden P. Quainton<br>DUNNINGTON BARTHOLOW & MILLER LLP<br>230 Park Avenue, 21st Floor<br>New York, NY 10169<br>Telephone: (212) 682-8811<br>Email: equainton@dunnington.com | *Attorneys for Plaintiff*<br>*Matthew Couch* |
| David J. Bodney<br>BALLARD SPAHR LLP<br>1 East Washington Street, Suite 2300<br>Phoenix, AZ 85004<br>Telephone: (602) 798-5454<br>Email: bodneyd@ballardspahr.com | *Attorneys for Defendant*<br>*National Public Radio, Inc.* |
| Matthew E. Kelley<br>BALLARD SPAHR LLP<br>1909 K Street, NW, 12th Floor<br>Washington, DC 20006<br>Telephone: (202) 508-1112<br>Email: kelleym@ballardspahr.com | |
| Richard W. Evans<br>James G. Fegan, III<br>MCCARTHY WILSON LLP<br>2200 Research Boulevard, Suite 500<br>Rockville, MD 20850<br>Telephone: (301) 762-7770<br>Email: evansr@mcwilson.com<br>       feganj@mcwilson.com | *Attorneys for Defendants*<br>*Mark Mueller and Joe Capone* |

**SHAPIRO, LIFSCHITZ & SCHRAM, P.C.**

/s/ Laura C. Fraher
Laura C. Fraher
1742 N Street NW
Washington, DC 20036

Phone: (202) 689-1900
Fax: (202) 689-1901
fraher@slslaw.com

*Attorneys for Defendants Verizon Communications Inc. and Michael Isikoff*