# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MATTHEW COUCH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Case No. 20-2151 (RJL) |
| | ) |
| VERIZON COMMUNICATIONS, | ) |
| INC. *et al.* | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION
(September 30, 2021) [Dkt. # 46]

Matthew Couch ("Couch" or "plaintiff") brought this tort action for defamation, defamation per se, intentional infliction of emotional distress, false light, conspiracy, aiding and abetting, intentional interference with business relations, and negligent supervision and retention against defendants Verizon Communications Inc. ("Verizon"), Michael Isikoff ("Isikoff"), National Public Radio, Inc. ("NPR"), Aaron Rich, Deborah Sines ("Sines"), Joe Capone ("Capone"), and Mark Mueller ("Mueller").[1] Pending before the Court is a motion filed by defendants Verizon and Isikoff pursuant to Federal Rule of Civil Procedure 12(b)(6), which seeks dismissal of Couch's complaint for failure to state a claim.[2] Upon consideration of the pleadings and the relevant law, Verizon's and Isikoff's Rule 12(b)(6)

---

[1] Plaintiff's claims against defendants Aaron Rich, Deborah Sines, and Mark Mueller were previously voluntarily dismissed. *See* Pl.'s Not. of Voluntary Dismissal [Dkt. # 42]; Pl.'s Not. of Voluntary Dismissal [Dkt. # 50].

[2] By separate minute order issued today, the Court denied motions to dismiss filed by Verizon, Isikoff, and NPR pursuant to Rule 12(b)(5) for insufficient service of process.

1

motion to dismiss for failure to state a claim is **GRANTED**, and this case is **DISMISSED** as to those defendants.

## BACKGROUND

The present case represents the latest in a series of legal disputes arising from the unfortunately contentious aftermath of the tragic murder of Seth Rich, a Democratic National Committee ("DNC") staffer, in Washington, D.C. in the early morning of July 10, 2016. Compl. ¶ 1 [Dkt. # 1]. To this day, the murder remains unsolved, which has prompted a number of individuals—including plaintiff Couch through his widely read blog and Twitter account—to publicly speculate and theorize that Rich's murder was in some way connected to the 2016 presidential election, and more specifically to the hack and leak of DNC emails to Wikileaks during the run-up to the 2016 presidential election. *Id.* ¶¶ 1, 37.[3] As Couch himself states, he has "sought to research the links between Seth Rich, his brother Aaron and Wikileaks" and "has asserted that Seth and Aaron may have worked together to download DNC emails and transfer the emails and other data to Wikileaks, and received payment in exchange for such data from Wikileaks." *Id.* ¶ 3.

In August 2019, defendant Isikoff, a journalist for defendant Verizon's subsidiary, Yahoo!News, hosted a six-part podcast series entitled *Conspiracyland*. Over the course of the podcast series, Isikoff and guests discussed Seth Rich's murder and various conspiracy theories that have taken root in its aftermath. *Id.* ¶ 1. In the sixth episode and in a bonus episode of the podcast, Isikoff and his guests specifically discussed Couch, recounting and

---

[3] As this Court has noted in connection with another defamation case arising from the same events, in which Couch was a defendant, D.C. law enforcement officials have stated their belief that Rich was killed during a botched robbery. *See Bauman v. Butowsky*, 377 F. Supp. 3d 1, 4 (D.D.C. 2019).

challenging Couch's claims alleging a connection between Aaron Rich and his brother's murder. *See id.* ¶¶ 41–127; *see also* Ex. A to Defs.' Mot. to Take Judicial Notice at 11:11–16:19 (Certified Transcript of *Conspiracyland* Episode 6) [Dkt. # 47].[4]

In the episode, Isikoff discussed with defendant Capone—a friend of Seth Rich and a manager at a bar where Seth Rich had been the night of the murder—how Couch and others had discovered that Capone had visited the White House days before the murder, with Capone stating that this fact had been used as the basis for claims that Capone had met and conspired with then-candidate Hilary Clinton, or her aides, regarding the murder. Ex. A to Defs.' Mot. to Take Judicial Notice at 19:20–21:19. Isikoff also interviewed Seth Rich's former neighbor, Mark Mueller, who stated that his address and phone number had been published on the internet, that his face had been superimposed over pictures of serial killer Jeffrey Dahmer, and that he had come to believe that people were seeking to rent his basement apartment so as to privately investigate the murder. *Id.* at 21:20–23:7. During the podcast, Couch was also variously referred to as a "conspiracy entrepreneur," a "troll," and a "crankster," *id.* at 7:5, 11:16, 16:7, and Isikoff noted that Couch and a "confederate" had read aloud a letter from Aaron Rich while the two men were live-streaming to Couch's followers on Twitter's Periscope service, *id.* at 14:20–25. Shortly after publication of the podcast, Isikoff was interviewed during a show broadcast by defendant NPR, in which he discussed the podcast's contents and noted, as relevant here, that Couch and "the Internet

---

[4] By separate order today, the Court granted Defendants' motion for the Court to take judicial notice of a number of exhibits, including relevant portions of the transcript and recording of *Conspiracyland*. *See* Defs.' Mot. to Take Judicial Notice [Dkt. # 47]. Couch did not oppose this motion. *See* Pl.'s Opp. to Defs.' Mot. to Dismiss and Consent to Defs.' Mot. to Take Judicial Notice [Dkt. # 51].

horde" had discovered that Capone had been to the White House days before Seth Rich's death. Compl. ¶¶ 128–134.

Couch brought the present action on August 6, 2020, specifically identifying seventeen allegedly defamatory claims or implications made or otherwise published by defendants in the course of the podcast and NPR interview. *Id.* ¶ 136(a)–(q). Verizon and Isikoff moved to dismiss the complaint for failure to state a claim on January 29, 2021. *See* Defs.' Mot. to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) [Dkt. # 46] ("Defs.' Mot. to Dismiss"). In his opposition to the pending motion to dismiss, however, he noted that he was "not pressing" his claims arising from statements concerning Aaron Rich, *see* Pl.'s Opp. to Defs.' Mot. to Dismiss and Consent to Defs.' Mot. to Take Judicial Notice, 22 & n.12 [Dkt. # 51] ("Pl.'s Opp."), leaving eleven claims centered on *Conspiracyland*'s characterization of Couch's comments and actions as to Capone and Mueller, as well as the podcast's generally referring to Couch in unfavorable terms. *See* Compl. ¶ 136(g)–(q).

## LEGAL STANDARD

A Rule 12(b)(6) motion "tests the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is facially plausible when the allegations contained in the complaint allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although the standard does not amount to a "probability

4

requirement," it does require more than a "sheer possibility that a defendant has acted unlawfully." *Id*. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not sufficient to state a claim. *Id*. In resolving a Rule 12(b)(6) motion, the Court "assumes the truth of all well-pleaded factual allegations in the complaint and construes reasonable inferences from those allegations in the plaintiff's favor[.]" *Sissel v. U.S. Dep't of Health & Human Servs.*, 760 F.3d 1, 4 (D.C. Cir. 2014). In addition to the complaint's factual allegations, the Court may consider "documents attached to or incorporated in the complaint, matters of which courts may take judicial notice, and documents appended to a motion to dismiss whose authenticity is not disputed, if they are referred to in the complaint and integral to a claim." *Harris v. Amalgamated Transit Union Local 689*, 825 F. Supp. 2d 82, 85 (D.D.C. 2011).

## ANALYSIS

Isikoff and Verizon move to dismiss all of Couch's claims against them for failure to state a claim. Couch has brought claims against both defendants for defamation, defamation *per se*, intentional infliction of emotional distress, false light, intentional interference with business relations, civil conspiracy, and aiding and abetting. Couch's complaint also includes a cause of action against Verizon for negligent supervision and retention.[5] For the following reasons, however, I have concluded that Couch has failed to state a claim against either Isikoff or Verizon with respect to any of the foregoing causes of action.

---

[5] Couch brings a negligent supervision and retention claim against NPR, as well, but NPR has not moved to dismiss pursuant to Rule 12(b)(6) so only the claim against Verizon is addressed here.

5

### a. Couch's Defamation Claims

As noted above, Couch originally identified seventeen allegedly defamatory statements expressly, and/or implicitly, made or published by defendants concerning Couch's conduct and claims about the circumstances of Seth Rich's murder. However, Couch has since narrowed the scope of his claim to drop any statements concerning Couch's claims regarding Aaron Rich and to focus solely on eleven specific statements. According to Couch's complaints, these eleven statements conveyed that Couch: (1) "asserted that Joe Capone met with Hilary Clinton or aides to Hilary Clinton in the days before Seth Rich's murder;" (2) "asserted that Joe Capone plotted Seth Rich's murder/assassination with Hilary Clinton or aides to Hilary Clinton;" (3) "'doxed' Mark Mueller by publishing the addresses and phone numbers of his siblings and neighbors;" (4) "superimposed Mr. Mueller's head on pictures of serial killer Jeffrey Dahmer and Dexter;" (5) "sought to rent out Mr. Mueller's basement room to gain access to documents relating to Seth Rich; (6) "was an Internet 'conspiracy entrepreneur;'" (7) "was an 'Internet troll;'" (8) "was an 'Internet crankster;'" (9) "was an 'Internet bully;'" (10) "was a member of the 'alt-right;'" and (11) "was an associate of a Southern 'confederate.'" *See* Compl. ¶ 136(g)–(q).[6]  Couch also uses these statements as the basis for his three claims of defamation *per se*, according to which defendants are liable for asserting that Couch:

---

[6] The six additional statements concerning Aaron Rich identified in Couch's complaint allegedly stated that Couch: (1) "lied about Aaron being involved in downloading DNC data;" (2) "lied about Aaron receiving payment in exchange for said data;" (3) "lied about Aaron covering up his role in downloading DNC data;" (4) "lied about Aaron failing to cooperate with private investigators;" (5) "lied about Aaron obstructing the official investigation; and (6) "asserted that Aaron murdered his brother or participated in the murder of his brother or covered up his involvement in the murder of his brother." Compl. ¶ 136(a)–(f).

6

(1) "falsely accused a person of murder;" (2) "illegally [stole] and publish[ed] information;" and (3) "attempted burglary." Compl. ¶ 144.

Under D.C. law, a defamation plaintiff must allege "(1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm." *Rosen v. American Israel Public Affairs Comm., Inc.*, 41 A.3d 1250, 1255–56 (D.C. 2012). Moreover, where the plaintiff is a public figure—a status that Couch does not contest[7]—the plaintiff must, under the third prong above, demonstrate that the statement was made or published with "actual malice," *i.e.* "with 'knowledge that it was false or with reckless disregard of whether it was false or not." *Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 584 (D.C. Cir. 2016) (quoting *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964)). To plead actual malice so as to survive a motion to dismiss, the plaintiff must show, by clear and convincing evidence, that when the defendants published the allegedly defamatory statements, they were subjectively aware that it was highly

---

[7] Couch does not challenge defendants' characterization of him as a public figure in his Opposition to Defendants' Motion, instead arguing that the Complaint sufficiently alleges actual malice. *See* Pl.'s Opp. at 26. Even if he had raised an objection to this status, however, the Court is satisfied that Couch is at least a limited-purpose public figure. The D.C. Circuit has established a test for identifying limited-purpose public figures that requires "(1) that there was a public controversy; (2) that the plaintiff played a sufficiently central role in the controversy; and (3) that the alleged defamatory statement was germane to the plaintiff's participation in the controversy." *See Clyburn v. News World Commc'ns, Inc.*, 903 F.2d 29, 31 (D.C. Cir. 1990) (citing *Waldbaum v. Fairchild Publ., Inc.*, 627 F.2d 1287, 1296–98 (D.C. Cir. 1980)). Here, the murder of Seth Rich and the theories that sprung forth from its circumstances indisputably comprise a public controversy; Couch's own complaint establishes that he has a substantial following on his blog and social media, *see* Compl. ¶¶ 1, 6, 36, as well as that Couch "has been one of the foremost, and perhaps most widely known, independent investigators seeking to uncover the truth of what happened to Seth Rich," *id.* ¶ 3; and, finally, the entirety of *Conspiracyland*'s discussion of Couch, including all of the alleged defamatory statements, focused on Couch's participation in the controversy surrounding Seth Rich's murder.

probable that the story was "(1) fabricated; (2) so inherently improbable that only a reckless person would have put [it] in circulation; or (3) based wholly on an unverified anonymous telephone call or some other source that [Defendant] has obvious reasons to doubt." *Parisi v. Sinclair*, 845 F. Supp. 2d 215, 218 (D.D.C. 2012) (quoting *Lohrenz v. Donnelly*, 350 F.3d 1272, 1283 (D.C. Cir. 2003)).

Couch fails in his complaint to establish actual malice on the part of the defendants. Indeed, in opposing defendants' motion to dismiss, Couch has identified only four places in his Complaint as supporting his allegation of actual malice, *see* Pl.'s Opp. at 26–27 (citing Compl. ¶¶ 103, 107, 117, 133), and none of these four are sufficient either alone or taken together to comprise the "clear and convincing" evidence of actual malice required.[8]

First, Couch alleges that Isikoff evinced the requisite malice because he "departs completely from reality and credits the wildest claims about Couch without any independent verification" in the course of the podcast. Compl. ¶103. But Couch provides no *factual* basis from which to infer that the statements were improbable, relying entirely on his own conclusory opinions that the statements were "wild" and a "departure from reality" without any further elucidation. Moreover, the law imposes no general duty on defendants to independently verify their claims absent a basis to doubt those claims in the first place. *Tavoulareas v. Piro*, 817 F.2d 762, 798 (D.C. Cir. 1987) ("[W]e cannot agree that an allegation of insufficient investigation may itself constitute the very proof of the

---

[8] Couch also fails to allege—or even attempt to allege—that the defendants acted with actual malice as to the making of each individual statement, instead couching his allegations only in general terms. *See Tavoulareas v. Piro*, 817 F.2d 762, 794 (D.C. Cir. 1987) ("[D]efamation plaintiffs cannot show actual malice in the abstract; they must demonstrate actual malice *in conjunction* with a false defamatory statement.").

8

'serious doubts' that is separately required" to show actual malice). In his complaint, Couch does not provide any allegations that such a basis existed.

Next, Couch alleges that, in hosting the podcast, Isikoff "uses leading questions to elicit the answer he wants, knowing these answers to be false, knowing they will harm Couch, and knowing they are defamatory." Compl. ¶ 107. But this allegation fails because it is quintessentially conclusory: Couch asserts a legal conclusion that Isikoff acted with actual malice but is unable to allege any factual premise that would support a finding that Isikoff knew *in fact* that the statements were false. *See, e.g., Arpaio v. Zucker*, 414 F. Supp. 3d 84, 91 (D.D.C. 2019) (Lamberth, J.) (reiterating that "a '[t]hreadbare recital[ ]' of the definition of actual malice" could not support defamation claim under pleading requirements of *Iqbal*).

Third, Couch alleges that Isikoff knew the falsity of Mark Mueller's statement that it was "people like Matt Couch" who superimposed his face onto pictures of Jeffrey Dahmer and "doxed" him and his family. Compl. ¶¶ 116–117. Putting aside an independent problem with this claim—namely that it is clear that the statement cannot reasonably be read to directly accuse Couch of the conduct in question, but rather people *like* him—the claim also fails because Couch once again fails to plead sufficient facts from which this Court could infer that Isikoff or any defendant knew the falsity of the statement.

And fourth, Couch claims that defendants Verizon and NPR are liable for publishing Isikoff's "lies" because they displayed a "reckless disregard for the truth in not subjecting his statements to any scrutiny" and because they "blindly repeated his claims without any fact checking." Compl. ¶ 133; *see also id.* ¶ 137. Again, a claim that a defendant did not

independently verify published statements, without any independent reason to doubt such statements, is not sufficient to show actual malice. *Tavoulareas*, 817 F.2d at 798.

In addition to the above four allegations from his complaint, Couch also lodges a broader complaint that defendants, and particularly Isikoff, approached *Conspiracyland* with a particular pre-conceived narrative about the Seth Rich murder, were "invested in [the narrative's] truthfulness," and were therefore motivated to lie about Couch. Pl.'s Opp. at 28–29. From this allegation, as well as repeated allegations of the defendants' partisan bias, *see, e.g.*, Compl. ¶ 2 (calling Isikoff a "shameless partisan hack"), Couch asks the Court to draw an inference of actual malice. *See* Pl.'s Opp. at 28–29. But such an inference is wholly inappropriate in this circumstance: courts have repeatedly held that evidence of bias or even a preconceived agenda, alone, cannot support a claim of actual malice. *See Arpaio*, 414 F. Supp. 3d at 92 ("Even assuming the alleged 'leftist enmity' is real, the motivations behind defendants' communications—inspired by political differences or otherwise—do not impact whether defendants acted with actual malice as a matter of law."); *see also Tavoulareas*, 817 F.2d at 795 ("It is settled that ill will toward the plaintiff or bad motives are not elements of actual malice and that such evidence is insufficient by itself to support a finding of actual malice.").

In sum, Couch's complaint contains none of the requisite evidence of actual malice needed to support a defamation claim: Couch relies only on his own conclusory statements as to the defendants' knowledge of or recklessness toward the truthfulness of their statements, without providing the Court with any *factual basis* from which to draw the reasonable inference that defendants acted with actual malice. Because Couch has neither

10

included this factual basis in his Complaint nor indicated in any way that he would be able to do so if given the opportunity to amend his complaint, dismissal of each of the defamation claims against Isikoff and Verizon is warranted.[9]

### b. Remaining Causes of Action

In addition to the defamation claims addressed above, Couch also brings claims for defamation per se, intentional infliction of emotional distress, false light, and intentional interference with business relations, as well as purported standalone claims for "conspiracy" and "aiding and abetting," against both Isikoff and Verizon. Couch's complaint further includes a claim of negligent supervision and retention against Verizon. However, each of these ancillary claims are either inherently tied to, or duplicative of, Couch's primary defamation claim, and for that reason they fail alongside the defamation claim.

To begin, just as he has failed to make out a claim for defamation, Couch has not stated a claim for defamation per se. The elements of that tort mirror those of defamation, with defamation per se occurring only where a defendant has falsely accused the plaintiff of committing a crime or other unlawful act. *See, e.g., Guilford Transp. Indus., Inc. v. Wilner*, 760 A.2d 580, 600 & n.19 (D.C. 2000). Both torts invoke the same First Amendment protections discussed above, and thus the same reasons that Couch has failed

---

[9] Though Couch's failure to allege actual malice alone is sufficient basis on which to dismiss his complaint, it bears noting that his defamation claims suffer from a number of other defects that would provide additional independent bases for dismissal. Though I will not review each of Couch's claims in detail, the statements underpinning those claims variously: (1) cannot be reasonably implied from the podcast; (2) qualify as "fair comment"; (3) do not contain a verifiable fact; (4) are substantially true; or (5) cannot be said to actually carry a defamatory meaning. And some of the statements cannot support a defamation claim for more than one of these reasons.

to adequately allege defamation also lead to dismissal of his claim of defamation per se. *See Bauman v. Butowsky*, 377 F. Supp. 3d 1, 16 (D.D.C. 2019).

Next, Couch's intentional infliction of emotional distress, false light, and intentional interference with business relations claims are wholly duplicative of his defamation claims, with Couch using the defendants' alleged making and publishing of "false statements" about him as the predicate for each of these torts. Couch's failure to make out a claim for defamation, therefore, similarly dooms these claims. *See, e.g., Farah v. Esquire Magazine*, 736 F.3d 528, 540 (D.C. Cir. 2013) (dismissing false light and tortious interference claims stemming from underlying defamation claim because "a plaintiff may not use related causes of action to avoid the constitutional requisites of a defamation claim"); *Bauman*, 377 F. Supp. 3d at 16 ("[W]hen a false light claim is based upon the same factual allegations as a defamation claim, the two are analyzed identically." (quoting *Parisi v. Sinclair*, 845 F. Supp. 2d 215, 218 n.1 (D.D.C. 2012))); *see also Khodorskovkaya v. Gay*, 5 F.4th 80, 84–85 (D.C. Cir. 2021) (noting that "a plaintiff may not avoid the strictures of the burdens of proof associated with defamation" by instead bringing claims including, in that case, false light or intentional infliction of emotional distress).

Couch's claims based on theories of secondary liability—*i.e.* his counts alleging civil conspiracy and aiding and abetting[10]— fail for a related reason, namely that Couch has failed to adequately plead a claim giving rise to primary liability under any of his stated

---

[10] Though Couch styles his aiding and abetting and conspiracy claims as independent torts, no such torts are recognized under D.C. law. *See, e.g., Findlay v. CitiMortgage, Inc.*, 813 F. Supp. 2d 108, 122 (D.D.C. 2011) ("In the District of Columbia, civil conspiracy is recognized not as an independent tort but as a means for establishing vicarious liability for [an] underlying tort." (internal quotation omitted)); *Carroll v. Fremont Inv. & Loan*, 636 F. Supp. 2d 41, 53 (D.D.C. 2009) ("A claim of aiding and abetting is also not an independent tort, but a means of establishing vicarious liability.").

12

theories, including defamation. *See* Compl. ¶ 161 (basing civil conspiracy count on liability for defamation, defamation per se, intentional infliction of emotional distress, and false light); Compl. ¶ 169 (basing aiding and abetting count on same). Both of these theories of liability "depend[] on performance of some underlying tortious act," and thus where, as here, a plaintiff has not adequately pled any such underlying tort, his claims for secondary liability must necessarily also be dismissed. *Exec. Sandwich Shoppe, Inc. v. Carr Realty Grp.*, 749 A.2d 724, 738 (D.C. 2000); *see also Carroll v. Fremont Inv. & Loan*, 636 F. Supp. 2d 41, 53 (D.D.C. 2009).

Finally, Couch's claim of negligent supervision and retention must also be dismissed. Couch's complaint frames this count in two forms: First, Couch suggests that Verizon is liable vicariously for the underlying tort of its employee, Isikoff. *See* Compl. ¶ 182. But for the same reasons that Verizon (nor any other defendant) is not liable under theories of civil conspiracy or aiding and abetting—namely the lack of allegations supporting an underlying predicate tort—Verizon cannot be held liable for the conduct of its employee here. Second, Couch makes an alternative claim that Verizon "is *directly* liable for its negligent supervision and/or retention of Isikoff." *Id.* (emphasis added). The law of the District of Columbia recognizes a tort of negligent supervision or retention where "liability is predicated upon the employer's direct negligence, rather than under a theory of vicarious liability based on the employee's negligence." *Phelan v. City of Mount Rainier*, 805 A.2d 930, 937 (D.C. 2002); *see also Islar v. Whole Foods Market Grp., Inc.*, 217 F. Supp. 3d 261, 265 (D.D.C. 2016). However, "a claim of negligent supervision may be predicated only on common law causes of action or on duties otherwise imposed by the

common law." *Islar*, 217 F. Supp. 3d at 265 (quoting *Griffin v. Acacia Life Ins. Co.*, 925 A.2d 564, 576 (D.C. 2007). Here, Couch relies only on Isikoff's purported defamation, *see* Compl. ¶¶ 180–181, and thus he can point to no viable common law cause of action as underpinning his negligent supervision claim; moreover, he likewise fails to identify and plead any separate common law duty applicable to Verizon that would form the basis for this cause of action.[11] Couch therefore has failed to plead a claim of negligent supervision and retention.

## CONCLUSION

For the foregoing reasons, Verizon's and Isikoff's Rule 12(b)(6) motion to dismiss for failure to state a claim is hereby **GRANTED**, and this case is **DISMISSED** as to those defendants. A separate order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

---

[11] As previously noted, only Isikoff and Verizon have moved to dismiss the Complaint against them under Rule 12(b)(6). I therefore do not at this stage address whether Couch's allegations would be similarly insufficient as to any of the other remaining defendants. Similarly, I do not address Verizon's argument that it is an improper defendant, *see* Defs.' Mot. to Dismiss at 42, or defendants' alternative motion to strike certain allegations from the Complaint, *id.* at 43, due to my dismissal of Couch's claims.