IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MATTHEW COUCH,<br><br>       Plaintiff,<br><br>   v.<br><br>VERIZON COMMUNICATIONS, INC., MICHAEL ISIKOFF, NATIONAL PUBLIC RADIO, INC., AARON RICH, DEBORAH SINES, JOE CAPONE, and MARK MUELLER,<br><br>       Defendants. | Case No. 1:20-cv-2151-RJL |

**DEFENDANT NATIONAL PUBLIC RADIO, INC.'S
MOTION FOR JUDGMENT ON THE PLEADINGS
<u>AND MEMORANDUM IN SUPPORT THEREOF</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................... ii

Introduction ..............................................................................................................................1

Factual and Procedural Background ........................................................................................2

Argument ..................................................................................................................................5

I. COUCH'S CLAIMS AGAINST NPR FAIL FOR THE SAME REASONS AS THOSE AGAINST ISIKOFF AND VERIZON ............................................5

II. THE COMPLAINT FAILS TO PLAUSIBLY PLEAD NPR ACTED WITH ACTUAL MALICE .............................................................................................6

III. THE CHALLENGED STATEMENTS FROM *FRESH AIR* ARE NOT ACTIONABLE AS A MATTER OF LAW ........................................................9

IV. COUCH'S TAG-ALONG CLAIMS FAIL AS A MATTER OF LAW ............................12

V. COUCH CANNOT STATE A CLAIM FOR NEGLIGENT SUPERVISION AND RETENTION ...............................................................................................13

Conclusion ..............................................................................................................................15

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                                                   **Page(s)**

*3M Co. v. Boulter*,
   842 F. Supp. 2d 85 (D.D.C. 2012) ..................................................................................13

*Arpaio v. Zucker*,
   414 F. Supp. 3d 84 (D.D.C. 2019) ....................................................................................8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ..................................................................................................5, 8

*Deripaska v. AP*,
   282 F. Supp. 3d 133 (D.D.C. 2017) ................................................................................10

*Econ. Rsch. Servs. v. Resolution Econs., LLC*,
   208 F. Supp. 3d 219 (D.D.C. 2016) ..................................................................................5

*Edwards v. Schwartz*,
   378 F. Supp. 3d 468 (W.D. Va. 2019) ............................................................................10

*Farah v. Esquire Magazine*,
   736 F.3d 528 (D.C. Cir. 2013) ..............................................................................1, 10, 12

*Flax v. Schertler*,
   935 A.2d 1091 (D.C. 2007) ............................................................................................12

*Fridman v. Orbis Bus. Intelligence Ltd.*,
   229 A.3d 494 (D.C. 2020), *cert. denied*, 2021 U.S. LEXIS 470 (Jan. 11, 2021) ...............7

*Gertz v. Robert Welch, Inc.*,
   418 U.S. 323 (1974) ..........................................................................................................7

*Griffin v. Acacia Life Ins. Co.*,
   925 A.2d 564 (D.C. 2007) ..............................................................................................14

*Guilford Transp. Indus. v. Wilner*,
   760 A.2d 580 (D.C. 2000) ..............................................................................................10

*Harte-Hanks Commc'ns v. Connaughton*,
   491 U.S. 657 (1989) ..........................................................................................................7

*Hourani v. PsyberSols. LLC*,
   690 F. App'x 1 (D.C. Cir. 2017) .....................................................................................13

*LaShawn A. v. Barry*,
   87 F.3d 1389 (D.C. Cir. 1996) (en banc) .........................................................................6

*Letter Carriers v. Austin*,
  418 U.S. 264 (1974) ............................................................................................................ 10

*Liberty Lobby, Inc. v. Dow Jones & Co.*,
  838 F.2d 1287 (D.C. Cir. 1988) ............................................................................................ 8

*\*Lohrenz v. Donnelly*,
  350 F.3d 1272 (D.C. Cir. 2003) ............................................................................................ 7

*Masson v. New Yorker Magazine*,
  501 U.S. 496 (1991) ............................................................................................................ 11

*Montgomery v. Risen*,
  197 F. Supp. 3d 219 (D.D.C. 2016), *aff'd*, 2017 U.S. Dist. LEXIS 23131
  (D.C. Cir. Nov. 17, 2017) ..................................................................................................... 8

*Nader v. de Toledano*,
  408 A.2d 31 (D.C. 1979) ....................................................................................................... 8

*Nader v. Democratic Nat'l Comm.*,
  567 F.3d 692 (D.C. Cir. 2009) ............................................................................................ 12

*Nunes v. WP Co.*,
  513 F. Supp. 3d 1 (D.D.C. 2020) ........................................................................................ 10

*Raboya v. Shrybman & Assocs.*,
  777 F. Supp. 58 (1991) ........................................................................................................ 11

*Rollins v. Wackenhut Servs.*,
  703 F.3d 122 (D.C. Cir. 2012) .............................................................................................. 5

*Sharpe v. Am. Acad. of Actuaries*,
  285 F. Supp. 3d 285 (D.D.C. 2018) .................................................................................... 12

*Sledge v. United States*,
  883 F. Supp. 2d 71 (D.D.C. 2012) ...................................................................................... 12

*Sloan v. Urban Title Servs.*,
  770 F. Supp. 2d 216 (D.D.C. 2011) ...................................................................................... 6

*Smith v. Clinton*,
  886 F.3d 122 (D.C. Cir. 2018) ........................................................................................ 9, 10

*\*Tah v. Glob. Witness Publ'g, Inc.*,
  991 F.3d 231 (D.C. Cir. 2021) ...................................................................................... 7, 8, 9

*Teltschik v. Williams & Jensen, PLLC*,
  748 F.3d 1285 (D.C. Cir. 2014) .......................................................................................... 14

*White v. Fraternal Order of Police*,
  909 F.2d 512 (D.C. Cir. 1990) .................................................................................... 9, 10

*Wultz v. Islamic Republic of Iran*,
  755 F. Supp. 2d 1 (D.D.C. 2010) ....................................................................................... 13

*Yeager v. NPR*,
  No. 20-cv-00755 (RC), 2021 U.S. Dist. LEXIS 149496 (D.D.C. Aug. 10,
  2021) ................................................................................................................................. 14

**Other Authorities**

U.S. Const. amend. I ............................................................................................................. 1, 7, 8

Fed. R. Civ. P. 4(m) ....................................................................................................................... 4

Fed. R. Civ. P. 12(b)(5) ................................................................................................................. 4

Fed. R. Civ. P. 12(b)(6) ................................................................................................... 1, 4, 5, 13

Fed. R. Civ. P. 12(c) ............................................................................................................. 1, 4, 5

Defendant National Public Radio, Inc. ("NPR"), by its undersigned counsel, respectfully moves this Court pursuant to Federal Rule of Civil Procedure 12(c) for an order dismissing this action as against it with prejudice for the reasons stated in the following memorandum of points and authorities:

## Introduction

Matthew Couch filed this baseless lawsuit against seven defendants, including Michael Isikoff and Verizon arising from their podcast *Conspiracyland*, claiming he was defamed by various accusations in their podcast that he had spread false information about Aaron Rich while hawking conspiracy theories about the murder of Aaron's brother, Seth Rich. Couch has admitted in this case that what he said about Aaron Rich was false and based largely on a single, unreliable source. But instead of dismissing this Complaint premised on these falsehoods, he has persisted in pressing his claims. And after this Court dismissed his claims against Isikoff and Verizon for failure to plausibly plead they made the statements in *Conspiracyland* with actual malice, he has once again persisted in pressing his claims against NPR over an interview with the program *Fresh Air* that reported on *Conspiracyland* in which Isikoff made non-actionable statements about some of his reporting. Such persistence in pursuing baseless claims is a tactic to try to chill reporting on matters of public concern and is exactly why "summary proceedings are essential in the First Amendment area because if a suit entails long and expensive litigation, then the protective purpose of the First Amendment is thwarted even if the defendant ultimately prevails." *Farah v. Esquire Magazine*, 736 F.3d 528, 534 (D.C. Cir. 2013) (affirming Rule 12(b)(6) dismissal of defamation claims (internal quotation marks omitted)). The pleadings in this case demonstrate that Couch cannot prevail on *any* of his claims, premised as they are on an allegation of defamation that he has not supported with well-pleaded facts.

Couch's claims against NPR should be dismissed for multiple, independent reasons.  First, they should be dismissed for the same reasons this Court dismissed the claims against Isikoff and Verizon that were premised on the same statements and theories of liability.  Because this Court found that Couch failed to state a claim for defamation regarding any of the challenged statements made by Isikoff, logic compels that the subset of those statements Isikoff made in the *Fresh Air* interview also are non-actionable.  Second, even setting aside this Court's previous ruling, Couch's defamation and false light claims fail because he has not pleaded facts that would plausibly allege that NPR acted with actual malice.  In fact, *Fresh Air*'s reliance on previously published reporting in a reputable publication and reliance on a reputable journalist precludes a finding of actual malice, rendering Couch's claims against NPR even weaker.  Third, the statements Couch challenges are not actionable because they are not defamatory as a matter of law, are not statements of fact, are not reasonable interpretations of the broadcast, and are absolutely privileged as true or substantially true.  Fourth, Couch's tag-along claims for intentional infliction of emotional distress, intentional interference with business relations, aiding and abetting, and conspiracy should be dismissed because they all are premised on his failed defamation claims.  Finally, Couch's claim for negligent supervision and retention should be dismissed not only because he does not plead a viable cause of action for defamation but also because he cannot identify any duty that NPR breached.

## Factual and Procedural Background

Because the Court is familiar with the facts of this case and related litigation, NPR provides only a brief recitation here.  Couch's claims in this action primarily arise from *Conspiracyland*, a podcast from *Yahoo! News* journalist Michael Isikoff chronicling the controversy over the 2016 killing of Democratic National Committee staffer Seth Rich.  *See* Compl. ¶ 1.  Couch contends

that Isikoff, Seth's brother Aaron Rich, and other witnesses interviewed for *Conspiracyland* made false statements about Couch. *See id.* ¶¶ 41-127.[1]

Couch's claims against NPR involve an interview with Isikoff for the program *Fresh Air* that was broadcast on August 8, 2019. *Id.* ¶¶ 129-34. Couch alleges (without specifying the actual content of the interview) that Isikoff called him part of an "Internet horde" that was "hounding" Aaron Rich, and that Isikoff said Couch had claimed that Defendant Joe Capone, the former manager of the bar Seth Rich visited the night he was killed, had met at the White House with aides to Hillary Clinton shortly before the killing. *Id.* ¶¶ 130-31.

What Isikoff actually said in the *Fresh Air* interview was this:

> I mean, this is a classic case of how Internet bullies work and also gives you real insight into the sort of conspiratorial mindset. That bartender - he actually was the manager of Lou's City bar, which was Seth Rich's favorite hangout and where he was the night of his death, a guy by the name of Joe Capone. He was a friend of Seth, viewed him as, you know, one of his favorite customers. A few days before Seth Rich's death, Joe Capone takes his daughter and a visiting friend from Canada on a tour of the White House. It's a public tour of the White House. Matt Couch and the Internet horde discover this apparently from White House visitor logs. And they say, a-ha, you see, why is Joe Capone going to the White House just a few days before Seth Rich's death? He must have been consulting with somebody, aides to Hillary Clinton, and this somehow had something to do with Seth Rich's death. And suddenly Joe Capone sees pictures of his family being put on the Internet, claims about his public tour of the White House being made into a dark conspiratorial event. And he's being hounded by the Seth Rich horde.

Declaration of Matthew E. Kelley ("Kelley Decl.") Ex. A at 14 (transcript of interview); *see also 'Conspiracyland' Debunks Theories About Murder of DNC Staffer Seth Rich*, FRESH AIR (Aug. 8, 2019), https://www.npr.org/2019/08/08/749392506/conspiracyland-debunks-theories-about-murder-ofdnc-staffer-seth-rich (webpage including transcript and audio of interview). Couch

---

[1] Couch has since admitted he made false statements about Aaron Rich and abandoned his claims that he was defamed by statements that he told lies about Aaron Rich. *See* Opp. to Mots. to Dismiss at 5, 22 & n.12 (Dkt. 51). Couch also moved to dismiss Aaron Rich, Mark Mueller and Deborah Sines as defendants. *See* Dkts. 42, 50.

3

alleges that those comments by Isikoff were "intended to link Couch to the most extreme and vicious theories circulating on the backwater of the Internet—that Hillary Clinton had assassinated or ordered the assassination of Seth Rich." Compl. ¶ 131.

The Complaint purports to assert claims against NPR for defamation (*id.* ¶¶ 135-42); defamation *per se* (*id.* ¶¶ 143-49); intentional infliction of emotional distress (*id.* ¶¶ 150-56); false light (*id.* ¶¶ 157-59); civil conspiracy (*id.* ¶¶ 160-67); aiding and abetting (*id.* ¶¶ 168-72); intentional interference with business relations (*id.* ¶¶ 173-77); and alleged negligent supervision and retention of *Fresh Air* host Terry Gross (*id.* ¶¶ 178-90). Couch seeks damages totaling $75 million, plus an unspecified amount of punitive damages, attorneys' fees and costs, and "injunctive relief, including but not limited to removal of the false and defamatory materials from any websites, podcasts or publications over which Defendants have control." *Id.* at 49-50 (prayer for relief).

Couch filed this action on August 6, 2020. *See generally* Compl. Couch served process on NPR's registered agent, the Corporation Service Company ("CSC"), on November 6, 2020, after the expiration of the 90-day service period under Federal Rule of Civil Procedure 4(m). Citing the missed deadline, NPR moved to dismiss for insufficient service pursuant to Rule 12(b)(5) on November 25, 2020. *See* Dkt. 28. This Court denied NPR's motion in a minute order on September 30, 2021 and granted Couch's motion to extend the service deadline *nunc pro tunc* to November 6, 2020. On the same day, this Court granted Isikoff's and Verizon's Rule 12(b)(6) motion to dismiss, holding that Couch had failed to plead sufficient facts to plausibly allege that they had made the challenged statements with actual malice. *See* Mem. Op. (Dkt. 60).

NPR answered the Complaint on October 14, 2021 (Dkt. 62), and now moves for judgment on the pleadings in its favor pursuant to Rule 12(c).

4

**Argument**

A Rule 12(c) motion "is functionally equivalent to a Rule 12(b)(6) motion," and therefore courts apply the same pleading standards as on a motion to dismiss for failure to state a claim. *Rollins v. Wackenhut Servs.*, 703 F.3d 122, 130 (D.C. Cir. 2012). Thus, to survive a Rule 12(c) motion such as this one, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 129 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). While the Court assumes the truth of all well-pleaded factual allegations and draws all reasonable inferences in the Plaintiff's favor, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to plausibly state a claim. *Iqbal*, 556 U.S. at 678. Besides the complaint's well-pleaded factual allegations, the Court also may consider "documents attached to or incorporated in the complaint, matters of which courts may take judicial notice, and documents appended to a motion to dismiss whose authenticity is not disputed, if they are referred to in the complaint and integral to a claim." *Econ. Rsch. Servs. v. Resolution Econs., LLC*, 208 F. Supp. 3d 219, 227 (D.D.C. 2016). Thus, the Court may rely on the transcript and audio of the *Fresh Air* interview without converting this into a motion for summary judgment. For the reasons explained below, this Court should dismiss all of Couch's claims with prejudice.

### I. COUCH'S CLAIMS AGAINST NPR FAIL FOR THE SAME REASONS AS THOSE AGAINST ISIKOFF AND VERIZON.

Couch's claims against NPR (excluding the negligence claim) should be dismissed for the same reasons this Court granted Isikoff's and Verizon's Rule 12(b)(6) motion to dismiss.

Except for his negligent supervision and retention claim, Couch's claims against NPR are precisely the same as his claims against Isikoff and Verizon, and they arise from a subset of the statements they made: namely, Isikoff's interview about *Conspiracyland* for *Fresh Air*. *See* Dkt.

60 at 3-4, 6. Couch's allegations regarding actual malice about NPR also are the same as those he asserted against Isikoff and Verizon. *See id.* at 9-10. Because these claims are identical but for the defendant, they are at least as deficient as applied to NPR as they are regarding Isikoff and Verizon, and therefore should be dismissed for the same reasons. *See id.* at 9-13. As explained below, Couch's allegations of actual malice are even weaker than those against Isikoff and Verizon, given that *Fresh Air* simply broadcast statements by a reputable journalist about the subjects of his reporting that had been previously published by a reputable publisher. *See infra* at 8.

This Court should exercise its discretion to dismiss the claims against NPR for the same reasons it dismissed those against Isikoff and Verizon because doing so would serve the interests protected by prudential doctrines such as law of the case: judicial economy, logical consistency, and fairness to the parties. *See, e.g.*, *Sloan v. Urban Title Servs.*, 770 F. Supp. 2d 216, 224 (D.D.C. 2011) ("[A] district court, when presented with a parallel issue later in the same litigation, if not bound thereby, should nevertheless be guided by the general principles underlying the doctrine of the law of the case."). Put simply, "the same issue presented a second time in the same case in the same court should lead to the same result." *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (en banc). Such is the case here. As it did with the same claims based on the same pleaded facts against Isikoff and Verizon, this Court should dismiss Couch's claims against NPR for defamation, defamation *per se*, false light, intentional infliction of emotional distress, intentional interference with business relations, conspiracy, and aiding and abetting.

## II.     THE COMPLAINT FAILS TO PLAUSIBLY PLEAD NPR ACTED WITH ACTUAL MALICE.

Even if this Court does not rely on its previous ruling, it should dismiss Couch's claims against NPR for defamation, defamation *per se* and false light invasion of privacy because he has

not pleaded *any* fact that would plausibly show NPR published any challenged statement with the requisite degree of fault: actual malice.

The First Amendment requires that to recover for defamation or false light, public officials and public figures must plead and prove by clear and convincing evidence that the defendant published false and defamatory statements about them with "actual malice," that is, knowledge of falsity or a "high degree of awareness of probable falsity." *Tah v. Glob. Witness Publ'g, Inc.*, 991 F.3d 231, 240 (D.C. Cir. 2021). Couch is, at a minimum, a limited-purpose public figure for purposes of his defamation claims because he "thrust [himself] to the forefront of particular public controversies to influence the resolution of the issues involved," namely, the controversies regarding conspiracy theories about Seth Rich's killing and Russia's attempts to interfere with the 2016 presidential election. *Lohrenz v. Donnelly*, 350 F.3d 1272, 1280 (D.C. Cir. 2003) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 345 (1974)). Indeed, Couch has not contested that he is a public figure in this case. Dkt. 60 at 7. As such, he must plead facts that, if credited, would prove by clear and convincing evidence that NPR published the challenged statements with actual malice. *Tah*, 991 F.3d at 240 (affirming order granting motion to dismiss where plaintiffs failed to plausibly allege actual malice). He has failed to do so, and he cannot do so.

Couch's only allegation of fault specific to NPR is that NPR "displayed a reckless disregard for the truth in not subjecting Isikoff's statements to any scrutiny, but blindly repeated his claims without any fact-checking." Compl. ¶ 133. But it is black-letter law that this alleged "[f]ailure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish" actual malice. *Harte-Hanks Commc'ns v. Connaughton*, 491 U.S. 657, 688 (1989)). Standing alone, as this allegation does, publishing a source's statements without further investigation does not constitute actual malice. *Fridman v. Orbis Bus. Intelligence Ltd.*, 229 A.3d

7

494, 510 (D.C. 2020), *cert. denied*, 2021 U.S. LEXIS 470 (Jan. 11, 2021); *see also Nader v. de Toledano*, 408 A.2d 31, 55 (D.C. 1979) (news agency's lack of first-hand knowledge of columnist's reliability and limited ability to assess his accuracy did not amount to actual malice). Moreover, reliance on previously published reporting in a reputable publication and reliance on a reputable journalist, such as Isikoff, precludes a finding of actual malice as a matter of law. *See, e.g.*, *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1297 (D.C. Cir. 1988) ("reliance on previously published reports in reputable sources . . . precludes a finding of actual malice as a matter of law"); *Montgomery v. Risen*, 197 F. Supp. 3d 219, 266 (D.D.C. 2016) (no actual malice by book publisher in relying on reputable journalist), *aff'd*, 2017 U.S. Dist. LEXIS 23131 (D.C. Cir. Nov. 17, 2017).

Couch's broader allegations regarding all Defendants fare no better. Couch's assertion that all Defendants "acted with knowledge of the falsity of their statements, or with reckless disregard of the truth of their statements," Compl. ¶ 137, "is nothing more than a '[t]hreadbare recital[]' of the definition of actual malice" that "the Court can easily dismiss." *Arpaio v. Zucker*, 414 F. Supp. 3d 84, 91 (D.D.C. 2019) (quoting *Iqbal*, 556 U.S. at 678). Couch's allegation in the false light count that Defendants knew their statements were false "or, at a minimum, Defendant's [sic] published them with a reckless disregard for the truth of those facts," Compl. ¶ 158, is similarly unavailing.

Couch cannot overcome the "famously 'daunting'" burden of properly pleading facts to establish actual malice for good reason. *Tah*, 991 F.3d at 240. The bar is set so high because otherwise, "the threat of lawsuits would chill our precious First Amendment rights to freely engage in political discourse." *Arpaio*, 414 F. Supp. 3d at 93. Couch's failure to plead facts that would plausibly allege that NPR published the challenged statements with actual malice means his

defamation, defamation *per se*, and false light[2] claims against NPR should be dismissed with prejudice.

### III. THE CHALLENGED STATEMENTS FROM *FRESH AIR* ARE NOT ACTIONABLE AS A MATTER OF LAW.

Couch's defamation and false light claims against NPR also should be dismissed because the statements he challenges are not actionable as a matter of law for several additional reasons.

The Complaint alleges that Isikoff said in the *Fresh Air* interview that "Matt Couch had stated Joe Capone met with aides to Hillary Clinton at the White House in the days before Seth Rich's murder" and that Couch was "a representative of the 'Internet horde' that is 'hounding' Aaron" Rich. Compl. ¶¶ 130-31. Couch alleges that the former statement "is intended to link Couch to the most extreme and vicious theories circulating in the backwater of the Internet—that Hillary Clinton had assassinated or ordered the assassination of Seth Rich. *Id.* ¶ 131. None of these alleged statements and implications[3] is actionable, even if they actually had been made.

First, it is not defamatory of Couch to say that he claimed Capone met with Hillary Clinton or her aides before Seth Rich's killing. Whether a challenged statement is reasonably capable of conveying a defamatory meaning is a question of law for the court. *White v. Fraternal Order of Police*, 909 F.2d 512, 518 (D.C. Cir. 1990). A statement damaging enough to be actionable as defamation must "tends to injure plaintiff in his trade, profession or community standing, or lower him in the estimation of the community." *Smith v. Clinton*, 886 F.3d 122, 128 (D.C. Cir. 2018).

---

[2] Failure to plausibly allege actual malice "proves fatal not only to [plaintiffs'] defamation claims but to their false light claims as well." *Tah*, 991 F.3d at 243.

[3] Couch's characterizations of the statements above, however, do not match those in the defamation count, in which Couch pleads that the actionable statements are that Couch "[a]sserted that Joe Capone met with Hillary Clinton or aides to Hillary Clinton in the days before Seth Rich's murder," *id.* ¶ 136(g), and that Couch "[a]sserted that Joe Capone plotted Seth Rich's murder/assassination with Hillary Clinton or aides to Hillary Clinton," *id.* ¶136(h).

9

Actionably defamatory statements "must be more than unpleasant or offensive; the language must make the plaintiff appear odious, infamous, or ridiculous." *Id.*; *see also, e.g.*, *Deripaska v. AP*, 282 F. Supp. 3d 133, 146 (D.D.C. 2017) ("Defamation is not made up of hints and suggestions and it cannot be merely unpleasant or offensive."); *Guilford Transp. Indus. v. Wilner*, 760 A.2d 580, 594 (D.C. 2000) (defamation "necessarily . . . involves the idea of disgrace"). Couch may find it unpleasant to be accused of claiming that Capone met with Clinton or her aides before the Seth Rich killing. But it is not *disgraceful* for him to have made such an erroneous assertion.

Second, characterizing Couch as a member of a "horde" that "hounded" Aaron Rich is not a statement of verifiable fact but rather "rhetorical hyperbole, a lusty and imaginative expression of the contempt felt" by Isikoff and others who take issue with Couch's and his supporters' tactics. *Letter Carriers v. Austin*, 418 U.S. 264, 285-86 (1974). As such, it is not actionable as defamation, which requires a false statement of fact. *Farah*, 736 F.3d at 535; *c.f. Edwards v. Schwartz*, 378 F. Supp. 3d 468, 517 (W.D. Va. 2019) (accusation of "bullying" not defamatory because "a charge of bullying is an intrinsically relative statement, for as the defendants state, 'what one person may perceive as bullying, another may describe as assertiveness.'").

Third, no one stated in the *Fresh Air* broadcast that Couch espoused the conspiracy theory that Hillary Clinton had ordered Seth Rich's killing, and no reasonable person could believe that the broadcast conveyed that implication. For Couch to establish defamation by implication, he "must demonstrate (1) that 'a defamatory inference can reasonably be drawn' and (2) that 'the particular manner or language in which the true facts are conveyed' supplies 'additional, affirmative evidence suggesting that the defendant intends or endorses the defamatory inference.'" *Nunes v. WP Co.*, 513 F. Supp. 3d 1, 6 (D.D.C. 2020) (quoting *White*, 909 F.2d at 520). Couch simply pulls the "Couch said Hillary Clinton murdered Seth Rich" implication out of thin air with

10

no explanation of how any reasonable listener could have come away with that idea. Nor does he even attempt to demonstrate that anything about the broadcast suggests that *NPR* intended or endorsed such an implication, because it did not.

Fourth, and similarly, nothing in the *Fresh Air* broadcast could be remotely characterized as asserting or implying that Couch committed crimes "including falsely accusing a person of murder." Compl. ¶ 144. Such implications could not be reasonably inferred by any reasonable listener to the interview or reader of its transcript. Even if they could, Couch has not identified how posts on the internet falsely accusing someone of murder is a crime; under District of Columbia law, defamation *per se* requires an accusation of a specific criminal offense involving moral turpitude. *Raboya v. Shrybman & Assocs.*, 777 F. Supp. 58, 59-61 (1991) (granting motion to dismiss defamation *per se* claim where plaintiff was accused of the civil offense of child neglect). Like the others, Couch's defamation *per se* claim fails.

Fifth, to the extent that Isikoff's statements in *Fresh Air* can be understood to make the factual assertions that Couch had made false statements or was "hounding" Aaron Rich, those assertions are substantially true, by Couch's own admission. Statements do not have to be true in every detail to be free from defamation liability; a statement is not actionable so long as "the substance, the gist, the sting, of the libelous charge be justified." *Masson v. New Yorker Magazine*, 501 U.S. 496, 517 (1991). The gist and sting that Couch repeatedly made false statements in the course of his commentary on the Seth Rich case is absolutely true, because Couch has admitted to this Court and to the world that his statements about Aaron Rich were false, and retracted them. *See* Dkt. 51 at 1-2, 5, 17, 23. If there is an empirical definition of what constitutes "hounding," spreading falsehoods about someone in the context of encouraging improbable conspiracy theories about his brother's murder no doubt qualifies.

11

Couch's defamation and false light claims against NPR should be dismissed for these additional and equally dispositive reasons.

## IV. COUCH'S TAG-ALONG CLAIMS FAIL AS A MATTER OF LAW.

Couch includes tag-along claims in his Complaint for intentional infliction of emotional distress ("IIED"), intentional interference with business relations, "civil conspiracy," and "aiding and abetting." Each of them fails as a matter of law.

Couch's IIED and tortious interference claims are premised on assertions that NPR and the other Defendants made false and defamatory statements. *See* Compl. ¶¶ 151, 155, 175. The failure of Couch's defamation claim dooms these claims as well. *See, e.g.*, *Farah*, 736 F.3d at 540 ("a plaintiff may not use related causes of action to avoid the constitutional requisites of a defamation claim").

Further, Couch has failed to plausibly plead necessary elements of these claims. Regarding the IIED claim, Couch fails to plead facts supporting that NPR's conduct was extreme and outrageous or that NPR intended to cause him severe emotional distress. *See Sledge v. United States*, 883 F. Supp. 2d 71, 92 (D.D.C. 2012) (dismissing IIED claim where plaintiff failed to plead facts showing defendants' conduct "was either extreme, outrageous or intentional"). Couch fails to properly plead a tortious interference claim because he does not plead facts showing that NPR knew of any specific business relationship, let alone intended to interfere with it. *Sharpe v. Am. Acad. of Actuaries*, 285 F. Supp. 3d 285, 292 (D.D.C. 2018).

Under District of Columbia law, conspiracy and aiding and abetting are theories of vicarious liability, not standalone torts. *Nader v. Democratic Nat'l Comm.*, 567 F.3d 692, 697 (D.C. Cir. 2009) (civil conspiracy is not an independent tort under D.C. law); *Flax v. Schertler*, 935 A.2d 1091, 1107-08 (D.C. 2007) (separate tort of aiding and abetting has not been recognized

in the District of Columbia). Whether as independent torts or theories of liability, both claims rely on defamation as the underlying tort, and because Couch has no defamation claim, there is no tort for which NPR could liable under Couch's aiding and abetting or conspiracy theories. *See, e.g.*, *Hourani v. PsyberSols. LLC*, 690 F. App'x 1, 4 (D.C. Cir. 2017) ("[T]here can be no claim for conspiracy to defame without the underlying defamation claim."). Couch also "failed to allege with particularity an agreement between" NPR and any other defendant, as required to impose conspiracy liability. *3M Co. v. Boulter*, 842 F. Supp. 2d 85, 119 (D.D.C. 2012). Nor does he plead facts showing that NPR knowingly and substantially assisted anyone else in committing a tort against him to support his aiding and abetting theory. *Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 57 (D.D.C. 2010).

Because Couch has failed to plead facts supporting his defamation claims against NPR, his tag-along claims for IIED, tortious interference, aiding and abetting and conspiracy all fail as well. He also has not—and could not—plead essential elements of those claims. These claims also should be dismissed with prejudice.

## V. COUCH CANNOT STATE A CLAIM FOR NEGLIGENT SUPERVISION AND RETENTION.

Finally, Couch's claim for "negligent supervision and retention" against NPR must be dismissed because he has not pleaded facts to show NPR or Terry Gross committed any tort or owed Couch any duty enforceable via a negligence claim.[4]

Under District of Columbia law, "a common law claim of negligent supervision may be predicated only on common law causes of action or duties otherwise imposed by the common

---

[4] In dismissing the negligent supervision claim against Verizon, this Court noted that it was not addressing the same claim against NPR because NPR had not moved to dismiss pursuant to Rule 12(b)(6). Dkt. 60 at 5 n.5.

13

law." *Griffin v. Acacia Life Ins. Co.*, 925 A.2d 564, 576 (D.C. 2007).  Couch has failed to plead either, nor could he.

Like his other ancillary claims, Couch's negligent supervision claim is premised on the assertion that the *Fresh Air* broadcast defamed him.  Compl. ¶¶ 185-89.  As with his ancillary claims, his inability to make out a defamation claim means he has no claim for negligent supervision.

Nor has Couch identified any legally cognizable duty that NPR or any of its employees or agents could have breached.  He cannot, because "District of Columbia law does not recognize a cause of action for journalistic professional negligence." *Yeager v. NPR*, No. 20-cv-00755 (RC), 2021 U.S. Dist. LEXIS 149496, at *32 (D.D.C. Aug. 10, 2021).  Moreover, it is well settled that "plaintiffs complaining about a defamatory statement cannot end-run the requirements for a defamation claim by pleading it as a negligence claim." *Teltschik v. Williams & Jensen, PLLC*, 748 F.3d 1285, 1287-88 (D.C. Cir. 2014).

Couch's negligent supervision claim against NPR should be dismissed with prejudice because he does not properly plead any underlying tort and cannot show NPR had any enforceable legal duty to him.

**Conclusion**

For the foregoing reasons, Defendant National Public Radio, Inc. respectfully requests that this Court grant this Motion and enter an order dismissing this action as against it with prejudice pursuant to Federal Rule of Civil Procedure 12(c).  A proposed order is attached.

Dated:  October 27, 2021

Respectfully submitted,

BALLARD SPAHR LLP

 /s/ Matthew E. Kelley
Matthew E. Kelley (Bar No. 1018126)
1909 K Street, NW, 12th Floor
Washington, DC 20006
Tel: (202) 508-1112
Fax: (202) 661-2299
kelleym@ballardspahr.com

David J. Bodney (D.D.C. Bar No. AZ0022)
1 East Washington Street, Suite 2300
Phoenix, AZ 85004
Tel: (602) 798-5400
Fax: (602) 798-5595
bodneyd@ballardspahr.com

*Counsel for Defendant National Public Radio, Inc.*