**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **MATTHEW COUCH,**<br><br>       **Plaintiff,**<br><br>       **v.**<br><br>**VERIZON COMMUNICATIONS, INC., MICHAEL ISIKOFF, NATIONAL PUBLIC RADIO, INC., AARON RICH, DEBORAH SINES, JOE CAPONE, and MARK MUELLER,**<br><br>       **Defendants.** | **Case No. 1:20-cv-2151-RJL** |

**DEFENDANT NATIONAL PUBLIC RADIO, INC.'S
REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS
AND OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR LEAVE TO FILE A
<u>FIRST AMENDED COMPLAINT AND CONDUCT CERTAIN DISCOVERY</u>**

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................ iii

INTRODUCTION ........................................................................................................... 1

ADDITIONAL FACTUAL AND PROCEDURAL BACKGROUND ................................. 2

ARGUMENT ................................................................................................................... 4

I.      THE ORIGINAL COMPLAINT AGAINST NPR SHOULD BE
DISMISSED WITH PREJUDICE BECAUSE IT FAILS TO STATE ANY
COGNIZABLE CLAIM ......................................................................................... 4

II.     LEAVE TO AMEND SHOULD BE DENIED AS FUTILE BECAUSE THE
PROPOSED FIRST AMENDED COMPLAINT FAILS TO STATE A
CLAIM AGAINST NPR ....................................................................................... 4

        A.     The Proposed FAC Does Not Allege Sufficient Facts to Plausibly
Show NPR Acted With Actual Malice ..................................................... 6

        B.     The Proposed FAC Fails to State Claims for Defamation or False
Light For Additional Reasons ................................................................. 12

                1.     The Fresh Air Broadcast Does Not Convey a Defamatory
Meaning About Couch ................................................................ 13

                2.     The Allegedly Defamatory Implications of the Fresh Air
Broadcast Are Not Reasonable ................................................... 14

                3.     Nothing in the Fresh Air Broadcast Suggests NPR Intended or
Endorsed Any Implication About Couch ...................................... 15

                4.     The Challenged Statements Are Not Actionable Because They
Are Substantially True or Are Not Verifiable Statements of
Fact ............................................................................................. 16

        C.     Couch's Tag-Along Claims Fail as a Matter of Law, Even as Revised
in the Proposed FAC .............................................................................. 17

                1.     The Proposed FAC Fails to Plead the Elements of an IIED
Claim .......................................................................................... 18

                2.     The Proposed FAC Does Not State a Tortious Interference
Claim Against NPR ..................................................................... 19

                3.     The Proposed FAC Does Not Plausibly Plead Aiding and
Abetting or Conspiracy Theories of Liability Against NPR ........ 20

D.      No Claim for Negligent Supervision and Retention Against NPR
        Exists Under District of Columbia Law.................................................................22

CONCLUSION.........................................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3M Co. v. Boulter*,
  842 F. Supp. 2d 85 (D.D.C. 2012) ........................................................................20

*Arpaio v. Cottle*,
  404 F. Supp. 3d 80 (D.D.C. 2019) ...........................................................................6

*Arpaio v. Zucker*,
  414 F. Supp. 3d 84 (D.D.C. 2019) .........................................................................12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...........................................................................................5, 6

*Bailey v. Dell Publishing Co.*,
  790 F. Supp. 101 (W.D. Pa. 1992) .........................................................................10

*Barkley v. United States Marshals Service*,
  766 F.3d 25 (D.C. Cir. 2014) ..................................................................................5

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ...............................................................................................5

*Brown v. Sessoms*,
  774 F.3d 1016 (D.C. Cir. 2014) .............................................................................22

*Bustos v. A&E TV Networks*,
  646 F.3d 762 (10th Cir. 2011) ...............................................................................16

*Dworkin v. L.F.P., Inc.*,
  839 P.2d 903 (Wyo. 1992) .....................................................................................11

*deLeon v. Wilkie*,
  No. 19-1250 (JEB), 2020 U.S. Dist. LEXIS 5908 (D.D.C. Jan. 14, 2020) ...........................21

*Deripaska v. Associated Press*,
  282 F. Supp. 3d 133 (D.D.C. 2017) .......................................................................13

*Economic Research Services v. Resolution Economics, LLC*,
  208 F. Supp. 3d 219 (D.D.C. 2016) .........................................................................9

*Edwards v. Schwartz*,
  378 F. Supp. 3d 468 (W.D. Va. 2019) .....................................................................17

*Freightquote.com, Inc. v. Hartford Casualty Insurance Co.*,
    397 F.3d 888 (10th Cir. 2005) ................................................20

*Hourani v. PsyberSolutions LLC*,
    690 F. App'x 1 (D.C. Cir. 2017) ..............................................20

*Howard R.L. Cook & Tommy Shaw Foundation for Black Employees of the
    Library of Congress, Inc. v. Billington*,
    737 F.3d 767 (D.C. Cir. 2013) ................................................5

*In re InterBank Funding Corporate Securities Litigation*,
    629 F.3d 213 (D.C. Cir. 2010) ................................................5

*Liberty Lobby, Inc. v. Dow Jones & Co.*,
    838 F.2d 1287 (D.C. Cir. 1988) ..............................................8

*Lohrenz v. Donnelly*,
    350 F.3d 1272 (D.C. Cir. 2003) ..............................................8

*\*Masson v. New Yorker Magazine*,
    501 U.S. 496 (1991) ..........................................................16

*National Association of Letter Carriers v. Austin*,
    418 U.S. 264 (1974) ..........................................................17

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964) ..........................................................7

*Nono v. George Washington University*,
    245 F. Supp. 3d 141 (D.D.C. 2017) ..........................................18

*Nyambal v. AlliedBarton Security Services, LLC*,
    153 F. Supp. 3d 309 (D.D.C. 2016) ..........................................19

*\*Ortberg v. Goldman Sachs Group*,
    64 A.3d 158 (D.C. 2013) ..................................................18, 19

*\*Parisi v. Sinclair*,
    774 F. Supp. 2d 310 (D.D.C. 2011) ..........................................7

*Phelan v. City of Mount Rainier*,
    805 A.2d 930 (D.C. 2002) ....................................................22

*Price v. Viking Penguin, Inc.*,
    676 F. Supp. 1501 (D. Minn. 1988) ..........................................10

*Raboya v. Shrybman & Assocs.*,
    777 F. Supp. 58 (D.D.C. 1991) ..............................................15

*Rosen v. American Israel Public Affairs Committee, Inc.*,
    41 A.3d 1250 (D.C. 2012) ..................................................................................16

*Sharpe v. American Academy of Actuaries*,
    285 F. Supp. 3d 285 (D.D.C. 2018) ....................................................................19

*\*Tah v. Glob. Witness Publishing, Inc.*,
    991 F.3d 231 (D.C. Cir. 2021) ....................................................................6, 8, 15

*Tavoulareas v. Piro*,
    817 F.2d 762 (D.C. Cir. 1987) ............................................................................13

*Washington Post Co. v. Keogh*,
    365 F.2d 965 (D.C. Cir. 1966) ..............................................................................8

*White v. Fraternal Order of Police*,
    909 F.2d 512 (D.C. Cir. 1990) ............................................................................14

*Wultz v. Islamic Republic of Iran*,
    755 F. Supp. 2d 1 (D.D.C. 2010) ........................................................................21

*\*Yeager v. NPR*,
    No. 20-cv-00755 (RC), 2021 U.S. Dist. LEXIS 149496 (D.D.C. Aug. 10,
    2021) ....................................................................................................................23

## Other Authorities

Fed. R. Civ. P. 15(a)(2) .............................................................................................5

**INTRODUCTION**

Matthew Couch's latest attempt to salvage this lawsuit shows why his claims should be dismissed for good.  He has now abandoned his original Complaint, seeking instead to file an amended complaint that still fails to remedy its fatal flaws, as identified in this Court's Memorandum Opinion ("Mem. Op.," Dkt. 60) dismissing claims against Verizon and Michael Isikoff and in NPR's Motion for Judgment on the Pleadings ("MJOP," Dkt. 64).  Couch's proposed First Amended Complaint ("Proposed FAC") contains no additional well-pleaded facts that would support any of his claims.  Instead, Couch adds some new conclusory allegations and unfounded inferences to the Proposed FAC and relies on heated rhetoric and misstatements of law in his opposition to NPR's MJOP and Cross Motion for Leave to File a First Amended Complaint ("Cross Motion," Dkt. 70).

This Court should accept Couch's invitation to dismiss the original complaint but deny leave to amend as futile because the Proposed FAC fails again to state any claim.  One deficiency that dooms all of Couch's claims is his failure to plead *any* facts that would plausibly show NPR acted with the requisite degree of fault:  actual malice, meaning knowledge of falsity or a subjective awareness of probable falsity of Isikoff's reference to Couch.  Without that support, the house of cards that is the Proposed FAC collapses, because actual malice is an essential element of his defamation and false light claims, and the rest of his causes of action and theories of liability are premised on the alleged defamation.  The defamation and false light claims in the Proposed FAC also fail for the independent reason that the portions of the *Fresh Air* broadcast Couch challenges are not actionable because the reference to Couch is not defamatory, the alleged defamatory implications are neither reasonable nor endorsed by NPR, and the challenged statements and implications do not convey any materially false facts about Couch.  The repleaded tag-along

claims, too, fail independently of the defamation claims because Couch fails to plead facts supporting the elements of intentional infliction of emotional distress and tortious interference or that would give rise to conspiracy or aiding and abetting liability.  Finally, the claim against NPR for negligent supervision and retention fails again for lack of any underlying tort or violation of a legal duty, and because it pleads no facts showing NPR knew of any dangerous propensities of *Fresh Air*'s hosts.

In short, the Proposed FAC is just as defective as the original Complaint, and it is therefore time to bring this litigation to an end.  This Court should dismiss the original complaint with prejudice and deny Couch leave to file an amended complaint.

## ADDITIONAL FACTUAL AND PROCEDURAL BACKGROUND

Couch filed his Cross Motion, accompanied by the Proposed FAC (Dkt. 70-6), on December 9, 2021.[1]  Like the original Complaint, the Proposed FAC asserts claims against NPR based solely on an August 8, 2019 episode of the interview program *Fresh Air* in which Isikoff discussed his podcast series *Conspiracyland* about the conspiracy theories surrounding the 2016 killing of Seth Rich. Proposed FAC ¶¶ 97-112.  Expanding on the allegations of the original complaint, the Proposed FAC focuses on this exchange in the *Fresh Air* interview:

> DAVIES:  One of the things that the podcast focuses on, apart from the way theories like this pollute the political discourse, is the number of innocent people who get dragged into this stuff, obviously Seth Rich's family primary among them.  But the bartender at the bar where Seth Rich had had drinks and was well-known gets tagged.  A neighbor who heard the shots and came out that night, both of them end up getting slimed on the Internet, right?
>
> ISIKOFF:  I mean, this is a classic case of how Internet bullies work and also gives you real insight into the sort of conspiratorial mindset.  That bartender - he actually was the manager of Lou's City bar, which was Seth Rich's favorite hangout and

---

[1]  Because the page numbers in the bottom margin of Couch's Cross Motion are an inconsistent mix of Arabic and Romanette numerals, NPR's citations are to the page numbers of the Cross Motion appended by the Court's ECF system.

where he was the night of his death, a guy by the name of Joe Capone.  He was a friend of Seth, viewed him as, you know, one of his favorite customers.

A few days before Seth Rich's death, Joe Capone takes his daughter and a visiting friend from Canada on a tour of the White House.  It's a public tour of the White House.  Matt Couch and the Internet horde discover this apparently from White House visitor logs.  And they say, a-ha, you see, why is Joe Capone going to the White House just a few days before Seth Rich's death?  He must have been consulting with somebody, aides to Hillary Clinton, and this somehow had something to do with Seth Rich's death.  And suddenly Joe Capone sees pictures of his family being put on the Internet, claims about his public tour of the White House being made into a dark conspiratorial event.  And he's being hounded by the Seth Rich horde.

The other guy you mentioned, Mark Mueller, was a neighbor who just happened to have heard the gunshots and gone out to see Seth Rich's - what had happened.  And he sees Seth Rich's body lying there and being - while he's being treated by the emergency workers.  He becomes a target, and they start going after him.  He's compared to Jeffrey Dahmer at one point because - apparently because he's from Milwaukee.  And the suggestion is that Mark Mueller might have had something to do with Seth Rich's death.

*Id.*; *see also* Dkt. 64-2 at 13-14 (transcript of interview).

As they relate to NPR, the allegedly defamatory statements and implications pleaded in the

Proposed FAC are:

- That Couch had "[a]sserted that Joe Capone met with Hillary Clinton or aides to Hillary Clinton in the days before Seth Rich's murder."  Proposed FAC ¶ 116(a).

- That "Couch advanced the conspiracy theory that Hillary Clinton murdered Seth Rich."  *Id.* ¶ 116(c).

- That Couch had "[h]arassed [Mark] Mueller by relentless phone calls and emails."  *Id.* ¶ 116(g).

- That Couch was "an Internet bully."  *Id.* ¶ 116(l).

The Proposed FAC alleges a claim for defamation *per se*, premised on the purported

implications that Couch had committed crimes including "falsely accusing Hillary Clinton of

murder;" "cyberstalking, under D.C. Code § 22-3133(a)(1)-(3) and 18 U.S.C. § 2261A(2);" and

"criminal harassment."  *Id.* ¶ 127.  The Proposed FAC also asserts a claim for false light invasion

of privacy based on the same statements and alleged implications. *Id.* ¶¶ 145-46.

As he did in the original Complaint, Couch also alleges in the Proposed FAC claims for intentional infliction of emotional distress, *id.* ¶¶ 136-43; intentional interference with business relations, *id.* ¶¶ 148-52; and negligent supervision and retention, *id.* ¶¶ 182-200.  Although they are theories of liability rather than standalone torts under District of Columbia law, the Proposed FAC also purports to assert claims for civil conspiracy, *id.* ¶¶ 154-62; and aiding and abetting, *id.* ¶¶ 172-73.

In response to motions from the parties, this Court set a briefing schedule requiring NPR to reply in support of its MJOP and respond to the Cross Motion on or before January 18, 2022. *See* Minute Order of November 30, 2021.

## <u>ARGUMENT</u>

## I.     THE ORIGINAL COMPLAINT AGAINST NPR SHOULD BE DISMISSED WITH PREJUDICE BECAUSE IT FAILS TO STATE ANY COGNIZABLE CLAIM.

Tacitly acknowledging the insufficiency of the original Complaint, Couch requests that this Court grant NPR's MJOP should it deny his cross-motion for leave to amend.  Cross Mot. at 8.  NPR agrees that the original Complaint should be dismissed, with prejudice, for all of the reasons set forth in the MJOP and in this Court's Memorandum Opinion and Order dismissing the Complaint as against Verizon and Isikoff.  Couch has waived any argument that the original Complaint should stand.

## II.    LEAVE TO AMEND SHOULD BE DENIED AS FUTILE BECAUSE THE PROPOSED FIRST AMENDED COMPLAINT FAILS TO STATE A CLAIM AGAINST NPR.

Rule 15(a) requires a plaintiff to seek leave from the Court to amend their complaint after the defendant has answered, but states that courts should "freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  The Supreme Court and D.C. Circuit have explained that leave

4

to amend may be denied in cases of "undue delay, bad faith or dilatory motive on the part of the movant, . . .  undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment."  *Barkley v. United States Marshals Serv.*, 766 F.3d 25, 38 (D.C. Cir. 2014) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

As is relevant here, "a district court may properly deny a motion to amend if the amended pleading would not survive a motion to dismiss."  *In re InterBank Funding Corp. Sec. Litig.*, 629 F.3d 213, 218 (D.C. Cir. 2010) (citation omitted).  Thus, in considering whether to grant leave to amend, the Court applies the same standards to the proposed amendment as it does in ruling on a Rule 12(b)(6) motion to dismiss, *id.*, including the requirement to plead facts that plausibly support each element of each cause of action, as the Supreme Court required in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  Leave to amend should be denied in the situations in which, "when seeking a second chance from the District Court in the form of a Rule 15(a) motion for leave to amend the complaint, plaintiff[] still failed to allege the required facts in [his] proposed amended complaint."  *Howard R.L. Cook & Tommy Shaw Found. for Black Emps. of the Library of Cong., Inc. v. Billington*, 737 F.3d 767, 773 (D.C. Cir. 2013).

Here, this Court should deny leave to amend as futile because, as demonstrated in the sections that follow, the Proposed FAC does not remedy the fatal flaws of the original Complaint and therefore would not survive another motion to dismiss.[2]

---

[2] The Cross Motion appears to seek leave to conduct discovery from Verizon and various corporate affiliates rather than NPR.  Cross Mot. at 14-16, 37, 48.  To the extent the motion seeks discovery from NPR, it should be denied.  This Court granted NPR's motion – to which Couch consented – and stayed all discovery pending resolution of NPR's MJOP.  *See* Minute Order of November 12, 2021.  Moreover, Couch has not pleaded any facts or made any arguments that would warrant discovery against NPR at this stage.

## A.    The Proposed FAC Does Not Allege Sufficient Facts to Plausibly Show NPR Acted With Actual Malice.

Couch does not contest the fact that he is a public figure for purposes of this lawsuit and therefore must plead and prove by clear and convincing evidence that NPR published false and defamatory statements about him with actual malice, *i.e.*, knowledge of falsity or a "high degree of awareness of probable falsity." *Tah v. Glob. Witness Publ'g, Inc.*, 991 F.3d 231, 240 (D.C. Cir. 2021); *see also* Mem. Op. at 7 & n.7 (holding that Couch is a limited-purpose public figure, a status Couch does not contest). Couch also must plausibly plead actual malice to advance his claim for false light because, "like a defamation claim, a false light claim requires proof of actual malice when the plaintiff is a public figure." *Arpaio v. Cottle*, 404 F. Supp. 3d 80, 86 (D.D.C. 2019).

This Court dismissed Couch's defamation and false light claims against Isikoff and Verizon for failure to plead facts that would plausibly establish actual malice, Mem. Op. at 8-11, and NPR sought judgment on the pleadings dismissing the same claims against it for the same reasons, MJOP at 5-8. Couch asserts that he has cured the deficiencies identified by the Court and NPR, but he is mistaken. Rather than pleading *facts* that would support a finding of actual malice by clear and convincing evidence, he rehashes his insufficient arguments and adds conclusory and speculative allegations to the Proposed FAC. In short, the Proposed FAC shows that Couch cannot muster facts that would nudge his actual malice claims across the plausibility threshold, *Iqbal*, 556 U.S. at 680, and therefore leave to amend should be denied as futile.

Couch begins with the remarkable contention that "to the extent the First Amended Complaint establishes actual malice on the part of Isikoff, NPR is liable, at a minimum for publishing Isikoff's defamatory statements." Cross Mot. at 13. That is not the law. The state of mind of Isikoff, a talk show guest, cannot be imputed to NPR. It is well settled that "the state of

mind required for actual malice would have to be brought home to the persons in the [company's] organization having responsibility for the publication of the" allegedly defamatory statements. *New York Times Co. v. Sullivan*, 376 U.S. 254, 287 (1964).  As this Court put it:  "Because actual malice is a subjective inquiry, knowledge of falsity (or reckless disregard thereof) must necessarily exist in the mind of someone in charge" of the publication.  *Parisi v. Sinclair*, 774 F. Supp. 2d 310, 320-21 (D.D.C. 2011) (Leon, J.).  Here, Couch pleads *no facts* that would show Davies, Terry Gross or anyone else responsible for the content of the *Fresh Air* broadcast knew that anything Isikoff said was false or had a subjective awareness that Isikoff's statements were probably false. That dooms his claims.

Couch's primary contention regarding actual malice continues to be that NPR's purported failure to investigate Isikoff's statements is proof of reckless disregard for the truth.  *See* Cross Mot. at 29.  He continues to be wrong.

Couch launches his argument with a falsehood, claiming that NPR asserted "that the failure to investigate or examine evidence cannot create an inference of actual malice."  *Id.*  Not so.  In its Motion, NPR correctly stated that

> it is black-letter law that this alleged "[f]ailure to investigate before publishing, even when a reasonably prudent person would have done so, *is not sufficient to establish*" actual malice.  *Harte-Hanks Commc'ns v. Connaughton*, 491 U.S. 657, 688 (1989)).  *Standing alone, as this allegation does*, publishing a source's statements without further investigation does not constitute actual malice.  *Fridman v. Orbis Bus. Intelligence Ltd.*, 229 A.3d 494, 510 (D.C. 2020), *cert. denied*, 2021 U.S. LEXIS 470 (Jan. 11, 2021).

MJOP at 7-8 (emphasis added).

Couch asserts that NPR allowed Isikoff to speak "without verifying any evidence in easy reach, such as Plaintiff's tweets, or asking Isikoff to provide some physical evidence to support his allegations."  Cross Mot. at 29.  But as this Court previously held, "a claim that a defendant

did not independently verify published statements, without any independent reason to doubt such statements, is not sufficient to show actual malice." Mem. Op. at 9-10. The D.C. Circuit has explained that "[e]ven where doubt-inducing evidence could be discovered, a publisher may still opt not to seek out such evidence and may rely on an informed source, so long as there is no 'obvious reason to doubt' that source." *Lohrenz v. Donnelly*, 350 F.3d 1272, 1285 (D.C. Cir. 2003) (citation omitted). Where, as here, a publication is "based on a knowledgeable, non-anonymous source," the law regarding actual malice "does not require more of a publisher." *Id.* at 1284.

Couch does not plead any facts in his Proposed FAC that would show NPR had any reason to doubt Isikoff's statements. The D.C. Circuit has repeatedly held that a publisher's "good faith reliance on previously published reports in reputable sources … precludes a finding of actual malice as a matter of law." *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1297 (D.C. Cir. 1988). Further, even "[p]roof of isolated instances of inaccuracy" or "proof of a controversial reputation" by the journalist on which the publisher relies are "irrelevant" to the actual malice inquiry. *Washington Post Co. v. Keogh*, 365 F.2d 965, 971-72 (D.C. Cir. 1966). Couch does not plead any facts that would show NPR had such obvious reasons to doubt Isikoff that it must have entertained serious doubts about the truth of his statements in the *Fresh Air* interview.

Couch's argument in this regard is based on his bare assertion that NPR "was or should have been on notice that [Isikoff's] central theory had been debunked by the Washington Post." Cross Mot. at 29; *see also* Proposed FAC ¶ 111. Couch does not plead any facts to support this conclusory allegation, which is insufficient to show actual malice in any event. The well-pleaded facts must plausibly show that NPR "must have actually 'harbored subjective doubt.'" *Tah*, 991 F.3d at 240. Obviously, "was or should have been on notice" is a far cry from actually harboring subjective doubt. Couch does not plead, nor can he, what "notice" NPR purportedly had; no

correction or retraction was issued for *Conspiracyland*, and Couch cannot point to any objections he made to the podcast before the *Fresh Air* broadcast.

Couch does not allege NPR even read the *Washington Post* article he cites,[3] much less plausibly allege that it made NPR, in fact, entertain serious reasons to doubt Isikoff's veracity in describing his own reporting. He could not. The article states that "[i]n the hours after Rich's slaying, his death was linked to Clinton by a number of people on social media," and notes six examples. Ex. 1 at 1. The *Post* article notes that those tweets were still active, "suggesting they haven't been identified as being linked to Russian intelligence by Twitter." *Id.* at 2. At most, therefore, the *Post* article indicates that Russian intelligence operatives may not have been the very first to allege online that Clinton was involved in Rich's murder – and it confirms that Russian intelligence *did* assert and seek to amplify that particular conspiracy theory in the weeks and months that followed. *Id.* at 2-3.

Further, as this Court noted, the law requires proof of actual malice regarding each specific allegedly defamatory statement or implication. Mem. Op. at 8 n.8 ("[D]efamation plaintiffs cannot show actual malice in the abstract; they must demonstrate actual malice *in conjunction* with a false defamatory statement." (quoting *Tavoulareas v. Piro*, 817 F.2d 762, 794 (D.C. Cir. 1987))). Couch has failed to meet his burden to plead facts to show that NPR knew what Isikoff said *about Couch* was false or had a high degree of awareness it was probably false. The contention that Russian

---

[3] Couch did not attach a copy of the *Washington Post* article to his Cross Motion or Proposed FAC. Therefore, a true and correct copy of a printout of the article is attached hereto as Exhibit 1. *See Econ. Rsch. Servs. v. Resolution Econs., LLC*, 208 F. Supp. 3d 219, 227 (D.D.C. 2016) (on motion to dismiss, court may consider "documents attached to or incorporated in the complaint, matters of which courts may take judicial notice, and documents appended to a motion to dismiss whose authenticity is not disputed, if they are referred to in the complaint and integral to a claim.") (citation omitted).

agents initiated the conspiracy theory that Hillary Clinton had ordered Seth Rich's killing is not itself about Couch, so even if Couch had pleaded facts showing NPR knew that assertion was false (he did not and cannot), knowledge of its falsity could not show actual malice here.  *See, e.g.*, *Bailey v. Dell Publ'g Co.*, 790 F. Supp. 101, 106 (W.D. Pa. 1992) ("[A] known falsehood or reckless indifference as to aspects of a publication which do not concern plaintiff is not sufficient to demonstrate actual malice with regard to plaintiff."), *aff'd*, 983 F.2d 1049 (3d Cir. 1992); *Price v. Viking Penguin, Inc.*, 676 F. Supp. 1501, 1513 (D. Minn. 1988) (author's doubts about unrelated facts in book "would not establish an inference of actual malice with respect to his statements concerning plaintiff.  The doubt must be in conjunction with the alleged defamatory statement."), *aff'd,* 881 F.2d 1426 (8th Cir. 1989).

 Couch also asserts that the Court should infer actual malice because the allegation that Couch said Hillary Clinton was involved in the Seth Rich killing was so improbable that only a reckless person would publish it.  Cross Mot. at 28, 29.  Couch claims that "[o]nly the most reckless of organizations would allow totally unsubstantiated claims that an innocent third party was guilty of promoting the wildest conspiracy theories and 'sliming' third parties without asking for some evidence to support these claims."  Cross Mot. at 29.

The assertion that Couch espoused the conspiracy theory that Hillary Clinton or her aides were responsible for Seth Rich's murder is not at all improbable, however.  Rather, it is the reasonable conclusion to the line of reasoning that Couch puts forth regarding the Seth Rich killing. Couch continues to allege as fact his belief that Seth Rich may have been paid to provide DNC documents to WikiLeaks; that Hillary Clinton and her "allies" in U.S. intelligence agencies, motivated by fear and loathing of Donald Trump, tried to discredit the leak by inventing the contention that Russian agents hacked the DNC and provided the emails to WikiLeaks; and that

the FBI is hiding evidence that Seth Rich communicated with WikiLeaks.  *See* Proposed FAC ¶¶ 6, 25, 27, 35-38, 41-42.

The idea that Hillary Clinton or her aides had arranged for Seth Rich's murder is the logical end point of the path that Couch trods.  Couch insinuates that Seth Rich was killed *because* he leaked documents that damaged Clinton's presidential prospects.  The idea that Clinton or her aides were involved in the killing naturally follows from Couch's logic.  Under Couch's version of events, Clinton and her campaign would have had motive to kill Rich to silence him or extract revenge for the leak – and the "allies" in the intelligence community to help cover it up.  Even if Couch himself never said that Hillary Clinton was involved in Seth Rich's murder, he clearly pointed his audience in that direction.  Therefore, any suggestion that Couch was among those spreading the conspiracy theory that Hillary Clinton was involved in Seth Rich's murder is not improbable on its face and cannot, in turn, provide evidence that NPR must have had a subjective awareness of its probable falsity.  *C.f. Dworkin v. L.F.P., Inc.*, 839 P.2d 903, 917-18 (Wyo. 1992) (no actual malice where article accused plaintiff of advocating bestiality, incest and sex with children where plaintiff asserted her writings merely discussed such things).

Also negating any inference of actual malice is the fact that Couch persists in making factual allegations that government investigators have said are simply not true.  Couch himself admits that the report of Special Counsel Robert Mueller states "that it was 'false' to suggest Seth Rich had been involved in leaking emails to Wikileaks."  Proposed FAC ¶ 43.  It is not unreasonable to believe that Couch espoused the related falsehood that Hillary Clinton was involved in Seth Rich's murder.

Similarly, the other challenged statements and alleged implications in the *Fresh Air* interview are not so inherently improbable as to provide *prima facie* evidence of actual malice.

Couch has admitted he spent month after month making false claims about Aaron Rich in connection with his brother's murder, which would constitute hounding under any reasonable interpretation of the term.  The contention that Couch was involved in harassing others involved in the Seth Rich murder saga may be allegedly false, but it is not obviously or outlandishly so.

Couch also alleges, again in conclusory fashion, that NPR was motivated by "its hyper-partisan, anti-Trump editorial vantage point" from which "the Kremlin-inspired Hillary Clinton assassination theory serves as an effective vehicle to target Trump and his supporters as agents responsible for 'polluting political discourse.'"  Cross Mot. at 29.  Even if this conclusory claim were supported by well-pleaded facts (it is not), "courts have repeatedly held that evidence of bias or even a preconceived agenda, alone, cannot support a claim of actual malice."  Mem. Op. at 10; *see also, e.g.*, *Arpaio v. Zucker*, 414 F. Supp. 3d 84, 92 (D.D.C. 2019) ("[T]he motivations behind defendants' communications—inspired by political differences or otherwise—do not impact whether defendants acted with actual malice as a matter of law.").

Although Couch claims to have addressed his failure to plead facts sufficient to show actual malice, the additions to the Proposed FAC are just as defective as those in the original Complaint. Therefore, leave to amend should be denied because the Proposed FAC would not survive a motion to dismiss.

> **B.**     **The Proposed FAC Fails to State Claims for Defamation or False Light For Additional Reasons.**

Couch's failure to plead facts to establish actual malice is not the only fatal flaw of the Proposed FAC.  The proposed amendment would be futile because its defamation and false light claims suffer from the same independently fatal defects NPR identified regarding the original Complaint – namely, that the challenged statements and alleged implications are not actionable as a matter of law.  *See* MJOP at 9-12.

> 1.   **The *Fresh Air* Broadcast Does Not Convey a Defamatory Meaning About Couch.**

Isikoff mentions Couch only once in the entire *Fresh Air* interview, and that reference is to "Matt Couch and the internet horde," not Couch exclusively. *See* MJOP Ex. A at 14 (Dkt. 64-2). That passage refers to bar manager Joe Capone's White House visit shortly before Rich's killing, and Isikoff says "they" question why Capone was visiting the White House and say Capone "must have been consulting with somebody, aides to Hillary Clinton, and this somehow had something to do with Seth Rich's death." *Id.* None of that is defamatory, as NPR demonstrated. *See* MJOP at 9-10.

Whether the statement is capable of conveying the meaning Couch proposes, and whether that meaning is defamatory, is a question of law for the Court, considering the statement in full and in the context of the entire broadcast. *Tavoulareas*, 817 F.2d at 779. The statement – not the alleged implications that Couch invents – simply accuses Couch of making a false and unfounded assumption, which is not sufficiently disgraceful to constitute defamation. *E.g.*, *Deripaska v. Associated Press*, 282 F. Supp. 3d 133, 146 (D.D.C. 2017) ("Defamation is not made up of hints and suggestions and it cannot be merely unpleasant or offensive.").

The rest of the section of the *Fresh Air* interview Couch challenges contains nonspecific allegations in the passive voice along with references to "the Seth Rich horde," "they," and "them." Couch claims that the reference to "they" in statements about people on the Internet "going after" Mark Mueller refers to "Matt Couch and the internet horde." Cross Mot. at 34, Proposed FAC ¶ 110. That is not a reasonable interpretation of the statement; the only reasonable antecedent to that reference to "they" is "the Seth Rich horde," not the reference including Couch. MJOP Ex. A at 14.

In his brief, Couch also repeatedly asserts that Isikoff accuses Couch of "hounding"

Mueller.  Cross Mot. at 6, 28, 31, 33.  But the Proposed FAC does not identify that statement as being false and defamatory, *see* Proposed FAC ¶ 116, and it is not conceivably in reference to Mueller in any event.   The *actual* statement was this:  that *Capone* was "being hounded by the Seth Rich horde."  MJOP Ex. A at 14.

> ### 2.   The Allegedly Defamatory Implications of the *Fresh Air* Broadcast Are Not Reasonable.

Although Couch has adjusted his theory about the alleged defamatory implications of the *Fresh Air* interview, the content of the program itself has not changed.  Neither has the law:  Couch must demonstrate that a defamatory inference reasonably can be drawn from the content of the broadcast.  *White v. Fraternal Order of Police*, 909 F.2d 512, 519 (D.C. Cir. 1990).  Just like the original Complaint, the Proposed FAC does not and cannot identify any defamatory implication about Couch that a reasonable listener would understand from the broadcast.

Couch claims that because early in the interview Isikoff discussed the conspiracy theory that Hillary Clinton was involved in Seth Rich's death, his mention of Couch's name in connection with allegations that Joe Capone met with Clinton or her aides implied that he had espoused the more specific Clinton-related Seth Rich conspiracy theory.  Cross Mot. at 32.  That simply is not a *reasonable* implication to be drawn from the broadcast, not least because the two statements are separated by many minutes' worth of discussions of other topics.  Considering the challenged passage in the context of the entire broadcast as required leads to the conclusion that Couch's claimed implication is not there.

The purported implications that Couch committed crimes including cyberstalking, criminal harassment, and "falsely accusing Hillary Clinton of murder,"[4] Proposed FAC ¶ 127, are similarly

---

[4] Couch still does not and cannot explain how falsely accusing Hillary Clinton of murder could be a crime.

unreasonable.  Isikoff attributes all of the actions that could constitute cyberstalking or harassment – posting family members' pictures online, hounding, being compared to Jeffrey Dahmer, suggesting that Mueller had something to do with Seth Rich's death – to an amorphous "they" or "them" or "the Seth Rich horde," *not* Couch specifically.  *See* MJOP Ex. A at 14.  Such conduct also is not clearly criminal; while the alleged actions could, if committed by a person with the requisite *mens rea*, constitute crimes in some circumstances, Isikoff's statements are far too vague to be considered specific allegations that *Couch* committed a crime of moral turpitude.  *See Raboya v. Shrybman & Assocs.*, 777 F. Supp. 58, 59-61 (D.D.C. 1991).

### 3.    Nothing in the *Fresh Air* Broadcast Suggests NPR Intended or Endorsed Any Implication About Couch.

For Couch to proceed with his claims of defamation by implication, he must show that "the particular manner or language in which the true facts are conveyed, supplies additional, affirmative evidence suggesting that the defendant intends or endorses the defamatory inference." *Tah,* 991 F.3d at 240 (citation omitted); *see also* Cross Mot. at 23 (same).  Couch did not even try to identify any such language in the original Complaint or the Proposed FAC, because there is none.  Nothing on the face of the broadcast indicates that NPR intended or endorsed anything defamatory about Couch.

There is only one reference to Couch in the entire *Fresh Air* segment, and it is made in passing by Isikoff.  *See* Dkt. MJOP Ex. A at 14.  Davies never mentions Couch's name, never follows up to clarify for listeners who Couch is and why he might be relevant, and never provides any indication whatsoever that any defamatory inference regarding Couch is intended or endorsed by NPR.  Even a cursory review of the *Fresh Air* segment undercuts Couch's attempt to revive his defective action on this score.  In brief, the Proposed FAC does not make even a plausible claim for defamation by implication against NPR.

4.     **The Challenged Statements Are Not Actionable Because They Are Substantially True or Are Not Verifiable Statements of Fact.**

The defamation and false light claims in the Proposed FAC also fail because the challenged statements and implications are not materially false statements of verifiable fact and therefore are not actionable.

Falsity, of course, is an essential element of any defamation claim, and a "statement is not considered false unless it 'would have a different effect on the mind of the reader [or listener] from that which the pleaded truth would have produced.'" *Masson v. New Yorker Magazine*, 501 U.S. 496, 517 (1991).  Here, there is no material difference in the mind of a reasonable listener between stating that Couch contends Seth Rich may have been killed because he was WikiLeaks' source of the DNC documents that embarrassed the Clinton campaign, which accurately conveys Couch's views, and stating that he espoused the corollary to that theory – that Clinton or her aides were responsible for the murder.  Thus, even if the *Fresh Air* broadcast could be reasonably interpreted as implying Couch espoused the Clinton conspiracy theory, and even if the broadcast indicated NPR intended or endorsed that implication, Couch still would have no viable defamation claim because that implication is not materially false.  *See, e.g.*, *Bustos v. A&E TV Networks*, 646 F.3d 762, 767-68 (10th Cir. 2011) (Gorsuch, J.) (report that plaintiff was a member of Aryan Brotherhood gang was substantially true where plaintiff had helped the gang smuggle drugs into prison).

Likewise, content that cannot be understood as stating or implying objectively verifiable facts is not actionable as defamation.  *Rosen v. Am. Isr. Pub. Affairs Comm., Inc.*, 41 A.3d 1250, 1256 (D.C. 2012) ("[I]if it is plain that a speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable.") (citation omitted).  Here, any

statements or implications that Couch was a "bully" or had "hounded" anyone are Isikoff's subjective views, not verifiable statements of fact. *See, e.g.*, *Edwards v. Schwartz*, 378 F. Supp. 3d 468, 517 (W.D. Va. 2019) (accusation of "bullying" not defamatory because "a charge of bullying is an intrinsically relative statement, for as the defendants state, 'what one person may perceive as bullying, another may describe as assertiveness.'"). Together, these words are further protected under the First Amendment as "rhetorical hyperbole, a lusty and imaginative expression" of Isikoff's opinion of what he called "the Seth Rich horde." MJOP at 10 (quoting *Nat'l Assoc. of Letter Carriers v. Austin*, 418 U.S. 264, 285-86 (1974)).[5]

The Proposed FAC's defamation and false light claims cannot survive a motion to dismiss because the only statement conceivably referring to Couch is not defamatory as a matter of law, while the rest of the statements and alleged implications are not about Couch, not reasonable interpretations of the broadcast, not intended or endorsed by NPR, and do not make materially false statements of verifiable fact. Leave to amend, therefore, should be denied as futile for these reasons as well.

## C.    Couch's Tag-Along Claims Fail as a Matter of Law, Even as Revised in the Proposed FAC.

Couch asserts that his Proposed FAC also cures the defects in his Complaint that required dismissal of his claims for intentional infliction of emotional distress ("IIED"), intentional interference with business relations (*i.e.*, tortious interference), conspiracy and aiding and abetting.

---

[5] Couch dismisses as "frivolous" NPR's citation to *Austin*, claiming that the statements in the *Fresh Air* broadcast "bear no relation whatsoever to the use of the word 'scab' to describe someone who is, objectively, a strike breaker." Cross Mot. at 31. Not only is Couch wrong on the reasonable interpretation of the broadcast, but he also misstates the facts of *Austin*, in which the challenged union newsletter not only called the strikebreakers "scabs" but defined a "scab" as "a traitor to his God, his country, his family, and his class." 418 U.S. at 268. The plaintiffs claimed that the use of the term "traitor" actually accused them of committing the crime of treason, an interpretation the Supreme Court found to be unreasonable. *Id.* at 284.

All apart from the fact that these derivative claims are premised on allegedly actionable speech and thus fail along with his defamation claims, the proposed amendment does not cure the independent deficiencies in those counts that require their dismissal.

### 1.     The Proposed FAC Fails to Plead the Elements of an IIED Claim.

Couch's proposed amendment does not cure the fatal flaws in his IIED claim; to the contrary, it suffers from the same failure to plausibly plead the elements of the tort as the original Complaint.  The elements of an IIED claim under District of Columbia law are "(1) extreme and outrageous conduct that (2) intentionally or recklessly (3) causes severe emotional distress." *Nono v. George Wash. Univ.*, 245 F. Supp. 3d 141, 148 (D.D.C. 2017).  The Proposed FAC does not allege sufficient facts to plausibly show that any of those elements are met regarding NPR.

First, even if they were actually conveyed by the broadcast and were defamatory (and they are neither), the alleged statements and implications about Couch fall well short of the high standard required for speech to be actionable as extreme and outrageous.  For example, the District of Columba Court of Appeals held that five protests outside a plaintiff's home over a span of three months, in which the demonstrators used loudspeakers to threaten the plaintiff and accuse him of complicity in animal cruelty, did not constitute extreme and outrageous conduct.  *Ortberg v. Goldman Sachs Grp.*, 64 A.3d 158, 163-64 (D.C. 2013).  Stating that someone who makes his fame and fortune promoting politically partisan conspiracy theories espoused a particularly "crazy" related conspiracy theory – even if that accusation were explicit and knowingly false, which is not the case here – is not the kind of activity that is "utterly intolerable in a civilized community," especially one such as ours in which sharp-elbowed political discourse is constitutionally protected.  *Id.* (citation omitted).

Second, the Proposed FAC offers nothing more than unadorned conclusions to support the

assertion that NPR intentionally or recklessly caused emotional distress.  *See* Proposed FAC ¶ 139. Even if being sued for defamation over statements Couch admits were false and harmful were sufficient to render Couch in an "extraordinarily vulnerable condition," *id.* ¶ 138, Couch pleads no facts that would show *NPR* knew about his supposedly fragile emotional state.

Third, the Proposed FAC lacks well-pleaded facts to indicate that NPR caused, and Couch suffered, the extreme emotional distress required for a successful IIED claim.  Couch pleads that he has experienced an "aggravation of his heart condition" and "severe and continuous emotional and mental anguish," but does not tie these assertions to the *Fresh Air* broadcast.  Proposed FAC ¶ 140.  Such vague and conclusory allegations are insufficient to plausibly allege that NPR's conduct caused Couch to suffer "emotional distress of so acute a nature that harmful physical consequences might be not unlikely to result."  *Ortberg*, 64 A.3d at 164 (citation omitted). Pleading only an indeterminate "aggravation" of an unspecified, preexisting "heart condition," untethered to any specific allegation against NPR, is not sufficient.

### 2.    The Proposed FAC Does Not State a Tortious Interference Claim Against NPR.

Couch's claim for intentional interference with business relations fails independently from his defamation claims because the Proposed FAC, like the original Complaint, does not plead any facts showing that NPR intended to interfere with any of Couch's business relations.  *Sharpe v. Am. Acad. of Actuaries*, 285 F. Supp. 3d 285, 292 (D.D.C. 2018).  Nor does the Proposed FAC identify a single specific contract or expectancy with which NPR purportedly interfered.  *Nyambal v. AlliedBarton Sec. Servs., LLC*, 153 F. Supp. 3d 309, 316 (D.D.C. 2016) ("[T]ortious interference claims are routinely dismissed where the plaintiff fails to name specific contractual relationships that the defendant allegedly interfered with, or to identify any facts related to future contracts compromised by the alleged interferer.").  Moreover, even if criticizing Couch's fundraising

techniques could constitute tortious interference independent of defamation, *see* Cross Mot. at 38-39,[6] the Proposed FAC does not identify any actions *by NPR* to denigrate Couch's moneymaking efforts.  Granting Couch leave to amend his complaint to include the revised tortious interference claim against NPR would be futile.

### 3.    The Proposed FAC Does Not Plausibly Plead Aiding and Abetting or Conspiracy Theories of Liability Against NPR.

The Proposed FAC's claims for civil conspiracy and aiding and abetting – which Couch continues to plead as if they were independent torts, when they are simply theories of liability – fail because there was no underlying tort for which NPR could be liable.  *See, e.g.*, *Hourani v. PsyberSolutions LLC*, 690 F. App'x 1, 4 (D.C. Cir. 2017) ("There can be no claim for conspiracy to defame without the underlying defamation claim.").  Couch also cannot pursue these theories of liability against NPR because he does not plead facts that would support them.

To pursue a conspiracy theory of liability against NPR, Couch must plead facts that would plausibly establish "1) an agreement between two or more persons; 2) to participate in an unlawful act, or to participate in a lawful act in an unlawful manner; 3) an injury caused by an unlawful overt act performed by one of the parties to the agreement; 4) pursuant to, and in furtherance of, the common scheme."  *3M Co. v. Boulter*, 842 F. Supp. 2d 85, 112 (D.D.C. 2012).  The Proposed FAC is devoid of any well-pleaded facts that would establish any agreement to harm Couch that involved Davies, Gross or anyone at NPR.

---

[6] Couch's tortious interference claim cannot be divorced from his defamation claim; defamation is the only underlying tort that could conceivably apply to statements that purportedly "stigmatize Couch's fundraising."  Cross Mot. at 38.  The sole case Couch cites for this argument, *Freightquote.com, Inc. v. Hartford Casualty Insurance Co.*, 397 F.3d 888, 896 (10th Cir. 2005), does not support it.  As the caption suggests, *Freightquote.com* is an insurance coverage dispute in which the issue was whether the defendant insurer had a duty to defend a defamation-based tortious interference claim despite the policy's intentional acts exclusion (which the Tenth Circuit found that it did not).  397 F.3d at 896-97.

Couch claims that an "inference" of an agreement is reasonable because Davies asked Isikoff questions that showed Davies had listened to the *Conspiracyland* podcast and sought to have Isikoff explain and summarize its contents. *See* Cross Mot. at 39-40. That's journalism, not conspiracy. Of course the host of a show consisting of interviews about newsworthy topics would prepare for that interview beforehand and ask the interviewee questions about the topic of the interview. And even if Davies had agreed with Isikoff beforehand about what questions would be asked – a dubious proposition for which Couch offers nothing but pure speculation – that would not show a conspiracy to defame Couch, either. *Davies does not ask a single question about Couch, and Isikoff mentions Couch only once in the lengthy interview*. Couch is certainly entitled to believe he is the prime target of some grand conspiracy, but to move forward in this Court he needs to plead *facts* that, if proven, would plausibly establish a conspiracy actually existed. The Proposed FAC's conclusory assertions are insufficient as a matter of law to do so. *See, e.g.*, *deLeon v. Wilkie*, No. 19-1250 (JEB), 2020 U.S. Dist. LEXIS 5908, at *27 (D.D.C. Jan. 14, 2020) ("A plaintiff must set forth more than just conclusory allegations of an agreement to sustain a claim of conspiracy against a motion to dismiss.") (citation omitted).

The allegations in the Proposed FAC purportedly supporting aiding and abetting liability are just as deficient. The essential elements that must be plausibly supported by well-pleaded facts to support aiding and abetting liability are: "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; (3) the defendant must knowingly and substantially assist the principal violation." *Wultz v. Islamic Republic of Iran*, 755 F. Supp. 2d 1, 57 (D.D.C. 2010) (quoting *Halberstam v. Welch*, 705 F.2d 472, 477 (D.C. Cir. 1983)). As discussed *supra* regarding actual malice, the Proposed FAC does not plead any facts

that would plausibly show Davies or anyone at NPR knew that anything Isikoff had said or would

say about Couch was defamatory.  Without that knowledge, there can be no aiding and abetting

liability, and Couch does not even attempt to explain how he could make such a showing.  *See*

Cross Mot. at 42.

The Proposed FAC does not plausibly plead claims for IIED or tortious interference, nor

can it support the imposition of conspiracy or aiding and abetting liability against NPR.  Leave to

amend these claims should be denied as futile.

### D.   No Claim for Negligent Supervision and Retention Against NPR Exists Under District of Columbia Law.

As with his other meritless claims, Couch simply ignores the law that forecloses his claim

against NPR for negligent supervision and retention.  *See* Proposed FAC ¶¶ 181-200.  Under

District of Columbia law, "a claim of negligent supervision may be predicated only on common

law causes of action or duties otherwise imposed by the common law."  MJOP at 13-14 (quoting

*Griffin v. Acacia Life Ins. Co.*, 925 A.2d 564, 576 (D.C. 2007)).  Because Couch's defamation

claims fail, there is no underlying cause of action to support a negligent supervision claim.

Even if his defamation claim somehow survived, Couch has not pleaded any facts in the

Proposed FAC that would establish that Davies or Gross had a propensity to defame people or that

NPR knew or should have known about this danger but negligently ignored it.  *See Phelan v. City

of Mount Rainier*, 805 A.2d 930, 937-38 (D.C. 2002) (negligent supervision claim under D.C. law

requires proof that employer "knew or should have known its employee behaved in a dangerous

or otherwise incompetent manner, and that the employer, armed with that actual or constructive

knowledge, failed to adequately supervise the employee.") (citation omitted).  All of Couch's

allegations in this regard are purely conclusory, Proposed FAC ¶¶ 192, 195-97, and thus fail the

*Iqbal/Twombly* standard.  *See Brown v. Sessoms*, 774 F.3d 1016, 1025 (D.C. Cir. 2014) (affirming

dismissal of negligent supervision claim where complaint contained no facts from which actual or constructive knowledge of employees' dangerousness or incompetence could be inferred).

Further, Couch cannot rely on negligence as a predicate cause of action because "District of Columbia law does not recognize a cause of action for journalistic professional negligence." *Yeager v. NPR*, No. 20-cv-00755 (RC), 2021 U.S. Dist. LEXIS 149496, at *32 (D.D.C. Aug. 10, 2021). Couch simply ignores *Yeager*, even though it is precisely on point. There, as here, neither NPR's internal code of ethics nor its receipt of federal funding provided any basis for any legally enforceable duty that would support any kind of negligence claim. *Id.* at *32-35. Like the plaintiff in *Yeager*, Couch does not and cannot identify any authority that would impose *any* duty on NPR that could conceivably support his negligent supervision claim.[7]

Couch has not shown any reason why his negligence claim should be allowed to advance, and the Proposed FAC does not plead facts that would plausibly support a negligent supervision claim. Accordingly, the motion for leave to file an amended complaint should be denied as futile regarding the negligent supervision claim against NPR.

Viewed as a whole, Couch's Cross-Motion is no more than a failed attempt to revive a meritless lawsuit by restating claims in a manner forbidden by black-letter law. The Cross-Motion disregards the facts, invents new ones and ignores – as it tries to circumvent – the Court's Memorandum Opinion. In the end, Plaintiff's filing merely functions to increase the parties' litigation expenses, and tax judicial resources, needlessly. The utter futility of Plaintiff's Cross-

---

[7] Even if NPR's status as a public radio network engendered a "duty to ensure that its programming steers clear of partisan politics," Cross Mot. at 42, Couch cannot show how he was harmed in any legally cognizable way by any purported violation of such a duty. Speech is not actionable simply because it is partisan; otherwise the First Amendment would be a dead letter.

Motion, coupled with the implausibility of Couch's latest assertions, require its dismissal with prejudice.

## CONCLUSION

For the foregoing reasons, Defendant National Public Radio, Inc. respectfully requests that this Court grant its Motion for Judgment on the Pleadings, deny Couch's Cross-Motion for Leave to File an Amended Complaint and Conduct Certain Discovery, and enter an order dismissing this action as against NPR with prejudice pursuant to Federal Rule of Civil Procedure 12(c).

Dated:  January 18, 2022          Respectfully submitted,

BALLARD SPAHR LLP

 */s/ Matthew E. Kelley*
Matthew E. Kelley (Bar No. 1018126)
1909 K Street, NW, 12th Floor
Washington, DC 20006
Tel: (202) 508-1112
Fax: (202) 661-2299
kelleym@ballardspahr.com

David J. Bodney (D.D.C. Bar No. AZ0022)
1 East Washington Street, Suite 2300
Phoenix, AZ 85004
Tel: (602) 798-5400
Fax: (602) 798-5595
bodneyd@ballardspahr.com

*Counsel for Defendant National Public Radio, Inc.*