## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MATTHEW COUCH,                                    *

        Plaintiff,                               *

v.                                                *     Civil Action No. 1:20-cv-02151-RJL

VERIZON COMMUNICATIONS INC., et al.               *

        Defendants.                              *

                                                 *

*    *    *    *    *    *    *    *    *    *    *    *    *    *

## DEFENDANTS VERIZON COMMUNICATIONS INC. AND MICHAEL ISIKOFF'S OPPOSITION TO PLAINTIFF MATTHEW COUCH'S CROSS MOTION FOR LEAVE TO FILE A <u>FIRST AMENDED COMPLAINT AND CONDUCT DISCOVERY</u>

## <u>TABLE OF CONTENTS</u>

Page

I.    INTRODUCTION ................................................................................................ 1

II.   PROCEDURAL BACKGROUND.................................................................... 2

III.  THE COURT SHOULD EXERCISE ITS DISCRETION AND DENY
      PLAINTIFF'S CROSS MOTION FOR LEAVE TO AMEND
      HIS COMPLAINT................................................................................................ 4

      A.    Plaintiff's Cross Motion For Leave To Amend Should Be Denied Because It
            Is Untimely, Would Prejudice Defendants, And Was Brought In Bad Faith....... 5

      B.    It Would Be Futile To Allow Plaintiff To Amend His Complaint...................... 6

            1.    Plaintiff's Proposed Amendments Do Not Cure His Failure To
                  Adequately Allege Actual Malice............................................................ 7

                  a.    Courts Routinely Grant Dismissal Based On A Failure To
                        Adequately Plead Actual Malice, Often Without Leave
                        To Amend ........................................................................ 7

                  b.    Plaintiff's Proposed Amendments Do Not Cure The
                        Deficiencies In His Actual Malice Allegations ............................ 9

                        i.     Plaintiff's Allegations Regarding The Steele Dossier
                               Do Not Show Actual Malice By Defendants........................ 9

                        ii.    Plaintiff's Allegations Regarding Russian Involvement In
                               The Seth Rich Conspiracy Do Not Show Actual Malice
                               By Defendants.................................................................. 11

                        iii.   Regurgitated Allegations That Defendant Isikoff
                               "Fabricated" Quotations Still Do Not Show Actual
                               Malice .............................................................................. 12

                        iv.    General Allegations About Defendant Isikoff's Reporting
                               And Defendants' Alleged Bias Do Not Show Actual
                               Malice .............................................................................. 14

                  c.    Amendment Is Also Futile Because Plaintiff's Defamation
                        Claims Are Barred For Several Reasons Besides The Failure
                        To Adequately Allege Actual Malice .......................................... 15

                  d.    Plaintiff's Proposed Amended Complaint Also Cannot Salvage
                        Plaintiff's Ancillary Claims ....................................................... 16

IV.    PLAINTIFF'S PROPOSED AMENDMENT TO ADD NEW DEFENDANTS
DOES NOT JUSTIFY GRANTING LEAVE TO AMEND ....................................... 18

V.    CONCLUSION .......................................................................................................... 19

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page(s)

CASES

*Arpaio v. Zucker,*
414 F. Supp. 3d 84 (D.D.C. 2019) ..................................................................8, 14, 15

*Atchinson v. District of Columbia*,
73 F.3d 418 (D.C. Cir. 1996) .......................................................................................4

*Deripaska v. Associated Press*,
282 F. Supp. 3d 133 (D.D.C. 2017) ...........................................................................9

*Fairbanks v. Roller*,
314 F. Supp. 3d 85 (D.D.C. 2018) ......................................................................11, 12

*Farah v. Esquire Magazine,*
736 F.3d 528 (D.C. Cir. 2013) ....................................................................................5

*James Madison Ltd. by Hecht v. Ludwig,*
82 F.3d 1086 (D.C. Cir. 1996) ....................................................................................6

*Kahl v. Bureau of Nat'l Affairs, Inc.*,
856 F.3d 106 (D.C. Cir. 2017) ..................................................................................10

*Nunes v. WP Company LLC*,
513 F. Supp. 3d 1 (D.D.C. 2020) ............................................................................7, 8

*OAO Alfa Bank v. Center for Public Integrity*,
387 F. Supp. 2d 20 (D.D.C. 2005) ...........................................................................14

*St. Amant v. Thompson*,
390 U.S. 727 (1968) ...................................................................................................14

*Tah v. Global Witness Publ'g, Inc.*,
991 F.3d 231 (D.C. Cir. 2021) .......................................................................8, 11, 15

*Tah v. Global Witness Publ'g, Inc.,*
413 F. Supp. 3d 1 (D.D.C. 2019) ............................................................................8, 9

*Tavoulareas v. Piro*,
817 F.2d 762 (D.C. Cir. 1987) ...........................................................................10, 14

*Willoughby v. Potomac Elec. Power Co.*,
100 F.3d 999 (D.C. Cir. 1996) ....................................................................................7

U. S. CONSTITUTION

First Amendment ................................................................................................5, 8, 16

## FEDERAL RULES

Fed. R. Civ. P. 3 .................................................................................................................3

Fed. R. Civ. P. 12(b)(6) ...............................................................................................1, 2, 6

Fed. R. Civ. P. 15(a) .............................................................................................................1

Fed. R. Civ. P. 59(e) .............................................................................................................3

## I.    INTRODUCTION

On September 30, 2021, this Court granted Defendants Verizon Communications Inc. and Michael Isikoff's (collectively, "Defendants") Rule 12(b)(6) motion to dismiss Plaintiff Matthew Couch's ("Plaintiff's") complaint for failure to state a claim and dismissed this case as to Defendants.  If Plaintiff had any issues with this Court's ruling, he could have: (1) filed a motion for reconsideration, or (2) filed a notice of appeal to the dismissal of his lawsuit against Defendants.  Plaintiff did neither of these things.  Instead, Plaintiff waited two months without taking any action, and only recently filed a cross motion for leave to amend pursuant to Rule 15(a).  Dkt. 70 ("Cross Motion" or "X-Mot.").  Plaintiff's Cross Motion is both procedurally improper—as untimely and prejudicial—and substantively without merit.

Procedurally, a motion for leave to amend is not proper following a complete dismissal of a lawsuit after grant of a motion to dismiss.  In his opposition to Defendants' motion to dismiss, Plaintiff requested at length that the Court allow leave to amend if it was inclined to grant Defendants' motion to dismiss, but this Court did not grant Plaintiff such relief.  Dkt. 51 at 34-37, 43; *see also* Dkt. 60 ("September 30 Opinion"); Dkt. 61.  Even if Plaintiff rightfully believed that the Court's September 30 Opinion left open room for him to amend his complaint, he was required to do so without undue delay, in good faith, and without causing prejudice to Defendants; all of which Plaintiff failed to do.

Substantively, this Court issued a well-reasoned, 14-page decision dismissing Plaintiff's complaint for failing to state a claim because he failed to allege actual malice.  In its decision, this Court also made clear that Plaintiff's "defamation claims suffer from a number of other defects that would provide additional independent bases for dismissal."  September 30 Opinion at 11 n.9.  Plaintiff cannot overcome these deficiencies.  Allowing Plaintiff to proceed with an

1

amended complaint would be futile as Plaintiff's claims would not survive another motion to dismiss.

Accordingly, Defendants respectfully request that the Court exercise its broad discretionary authority and deny Plaintiff's Cross Motion.

## II.    PROCEDURAL BACKGROUND

Plaintiff filed his complaint on August 6, 2020.  Dkt. 1.  Defendants promptly filed a Rule 12(b)(6) motion to dismiss, which challenged each of Plaintiff's causes of action, for failure to state a claim for which relief could be granted.  Dkt. 46.  Defendants' motion to dismiss included a chart identifying each allegedly defamatory statement and purported implication and the several reasons each was not actionable.  Dkt. 46 at App'x A.  On September 30, 2021, this Court granted Defendants' motion to dismiss for failure to state a claim and dismissed this case as to Defendants.

The Court's September 30 Opinion focused on the many reasons that Plaintiff failed to adequately allege that the allegedly defamatory statements and purported implications were published with actual malice, a requirement that Plaintiff must show as a public figure. September 30 Opinion at 7.  After analyzing Plaintiff's allegations, the Court determined that Plaintiff's complaint failed to adequately allege actual malice:

> Couch's complaint contains none of the requisite evidence of actual malice needed to support a defamation claim: Couch relies only on his conclusory statements as to the defendants' knowledge of or recklessness toward the truthfulness of their statements, without providing the Court with any *factual basis* from which to draw the reasonable inference that defendants acted with actual malice.

September 30 Opinion at 10 (emphasis in original).

2

In addition to the dismissal for failure to adequately plead actual malice, the Court specified that Plaintiff's complaint should be dismissed for failure to state a claim on several other grounds:

> Though Couch's failure to allege actual malice alone is sufficient basis on which to dismiss his complaint, it bears noting that his defamation claims suffer from a number of other defects that would provide additional independent bases for dismissal.  Though I will not review each of Couch's claims in detail, the statements underpinning those claims variously: (1) cannot be reasonably implied from the podcast; (2) qualify as "fair comment"; (3) do not contain a verifiable fact; (4) are substantially true; or (5) cannot be said to actually carry a defamatory meaning.  And some of the statements cannot support a defamation claim for more than one of these reasons.

September 30 Opinion at 11 n.9.  The Court's September 30 Opinion could not be clearer that Plaintiff's claims failed to state any actionable causes of action and that any possible amendments would be futile.  Therefore, the Court declined to grant Plaintiff's request for leave to amend and instead determined that "this case is **DISMISSED** as to" Defendants.  September 30 Opinion at 14.

If Plaintiff took issue with the Court's September 30 Opinion, Plaintiff could have filed a motion for reconsideration pursuant to Rule 59(e) or filed a notice of appeal to the D.C. Circuit pursuant to Rule 3.  Both of these options had strict deadlines—28 days to file a motion for reconsideration and 30 days to file a notice of appeal—that Plaintiff failed to follow.  Moreover, if Plaintiff genuinely believed that the Court's September 30 Opinion left an opening for Plaintiff to amend his complaint to address the Court's substantive rulings, Plaintiff should have sought leave to amend his complaint shortly after the Court's September 30 Opinion was issued.  Plaintiff took none of these procedural steps that required diligence and timely action.

Instead, Plaintiff waited two months without taking any action in response to the September 30 Opinion.  It was only on the eve of a filing deadline to oppose National Public

Radio, Inc.'s (the other remaining defendant's) motion for judgment on the pleadings, that Plaintiff finally reached out to Defendants' counsel.  Specifically, on November 29, 2021, counsel for Plaintiff first contacted counsel for Defendants to advise that Plaintiff intended to file a cross-motion for leave to file an amended complaint and asked whether Defendants would oppose Plaintiff's motion.  Dkt. 69-1, Ex. C.  Not having seen Plaintiff's proposed amendments and because the Court definitively dismissed Plaintiff's complaint on several grounds, counsel for Defendants confirmed that they would oppose the motion for leave to file an amended complaint for all of the reasons set forth in this opposition brief.  *Id*.

Perhaps because Plaintiff understood that his request to file a motion for leave to amend his complaint was not timely, Plaintiff, in bad faith, concealed from this Court his delay in reaching out to Defendants about seeking leave to amend.  Nowhere in Plaintiff's brief does he reveal that he waited two months to first contact Defendants about his intention to seek leave to amend his complaint following the Court's September 30 Opinion.  As set forth below, beyond being futile, Plaintiff's cross motion for leave to amend his complaint is untimely, would result in prejudice, and was brought in bad faith against Defendants.

## III.   THE COURT SHOULD EXERCISE ITS DISCRETION AND DENY PLAINTIFF'S CROSS MOTION FOR LEAVE TO AMEND HIS COMPLAINT.

The Court has broad discretion when considering whether to allow Plaintiff leave to amend his complaint following the grant of a motion to dismiss, and the Court's decision will be sustained unless there was an abuse of discretion.  *See Atchinson v. District of Columbia*, 73 F.3d 418, 424 (D.C. Cir. 1996) (abuse of discretion standard of review for court's refusal to allow plaintiff leave to amend his complaint).  Leave to amend should be denied if there is evidence of "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."  *Id*. at 425.

**A.      Plaintiff's Cross Motion For Leave To Amend Should Be Denied Because It Is Untimely, Would Prejudice Defendants, And Was Brought In Bad Faith.**

Plaintiff's delay in seeking leave to amend should be examined against a backdrop long-recognized by the D.C. Circuit that "summary proceedings are essential in the First Amendment area because if a suit entails 'long and expensive litigation,' then the protective purpose of the First Amendment is thwarted even if the defendant ultimately prevails." *Farah v. Esquire Magazine*, 736 F.3d 528, 534 (D.C. Cir. 2013) (affirming dismissal of defamation claim on motion to dismiss).

Following the Court's dismissal of Plaintiff's complaint on September 30, 2021, Plaintiff took no action with respect to Defendants for two months.  Plaintiff did not seek reconsideration of the Court's September 30 Opinion, file a notice of appeal, or alert Defendants about Plaintiff's intent to try to amend his complaint.  It wasn't until November 29, 2021 that Plaintiff's counsel reached out to Defendants' counsel to inquire whether Defendants would oppose Plaintiff's cross motion for leave to file an amended complaint.  Plaintiff did not provide a copy of the proposed amended complaint or the basis for seeking such relief or how an amended complaint could overcome the defects highlighted in the Court's September 30 Opinion.  The Court should exercise its discretionary authority and deny Plaintiff's cross motion because of Plaintiff's undue delay in bringing his motion.

In addition, Defendants would be prejudiced if forced to continue to defend a case that already has been dismissed for failure to state a claim for which relief can be granted.  Contrary to Plaintiff's speculation, Defendants have devoted more than "minimal resources to this matter" (X-Mot. at iv), including having to file multiple pleadings in response to Plaintiff's original complaint—which required listening to all of the relevant *Conspiracyland* podcast ("Podcast") episodes, examining the 20 statements and purported implications Plaintiff alleged were

defamatory, and preparing a 43-page Rule 12(b)(6) motion to dismiss breaking down the many reasons Plaintiff's claims are not viable.  Dkt. 46.  If Plaintiff is allowed leave to amend his complaint, Defendants will once again move to dismiss and potentially endure unnecessary discovery—because Plaintiff also seeks pointless discovery about Defendants' corporate structure as part of his Cross Motion—when Defendants already have demonstrated that Plaintiff has no viable claims.

Perhaps realizing that he missed the deadlines to file a motion for reconsideration and notice of appeal, and also belatedly raised amendment of his complaint with Defendants, Plaintiff conspicuously omits from his brief that he waited over two months after the Court's September 30 Opinion to reach out to Defendants.  Indeed, Plaintiff did not share his proposed amended complaint with Defendant until December 10, 2021, when he filed it as part of his Cross Motion.  Plaintiff's only "explanation" for his delay is that Plaintiff "did not have time to meet and confer with opposing counsel prior to filing the present motion," which is transparently false.  Dkt. 70 at 1 n.1.

Plaintiff's delay and failure to take proper action following the Court's September 30 Opinion confirms that Plaintiff's Cross Motion was untimely filed, brought in bad faith, and will cause prejudice to the Defendants.

**B.      It Would Be Futile To Allow Plaintiff To Amend His Complaint.**

Beyond the untimeliness of Plaintiff's request for leave to amend his complaint, the Court should deny Plaintiff's Cross Motion because Plaintiff's proposed amendments would be futile.  The Court has broad discretion to deny Plaintiff leave to amend his complaint, especially when, as here, the proposed amendments "would not survive a motion to dismiss."  *See James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1086, 1099 (D.C. Cir. 1996) (where the alleged facts establish

beyond doubt that plaintiff could not support its claims, "we agree with the district court that amendment was futile"); *Willoughby v. Potomac Elec. Power Co.*, 100 F.3d 999, 1003 (D.C. Cir. 1996) (district court did not abuse its discretion in concluding plaintiff was not entitled to amend complaint where there was "little chance of a successful Title VII claim").

This Court should follow the rationale of District Court Judge Mehta, set forth in *Nunes v. WP Company LLC*, 513 F. Supp. 3d 1 (D.D.C. 2020), where Judge Mehta had to decide whether to grant plaintiff's motion for leave to file an amended complaint following a dismissal of plaintiff's defamation complaint for failure to allege actual malice. *Id*. at 9. Judge Mehta denied plaintiff's motion for leave to amend because, among other reasons, the "Amended Complaint does nothing to address Plaintiff's inability to plead actual malice. Instead, it repeats the same litany of conclusory or otherwise insufficient allegations." *Id*. Accordingly, the court concluded that plaintiff's amendments would be futile, as the new complaint would not survive a motion to dismiss. *Id*. As explained below, Plaintiff's proposed amendment here suffers from the same futility as in *Nunes* as Plaintiff still has not sufficiently alleged "actual malice" to proceed with his defamation claims and has made no attempt—by his own admission—to amend his complaint to try to address this Court's analysis that Plaintiff's "defamation claims suffer from a number of other defects that would provide additional independent bases for dismissal" beyond Plaintiff's failure to allege actual malice. September 30 Opinion at 11 n.9.

1. **Plaintiff's Proposed Amendments Do Not Cure His Failure To Adequately Allege Actual Malice.**

   a. **Courts Routinely Grant Dismissal Based On A Failure To Adequately Plead Actual Malice, Often Without Leave To Amend.**

This Court already addressed Plaintiff's failure to adequately plead actual malice with the requisite degree of clear and convincing evidence. September 30 Opinion at 7-11. The Court

examined, and rejected as inadequate and conclusory, Plaintiff's claims that Defendants'

publications were improbable, lacking in independent verification, knowingly false, and biased.

*Id.* at 8-10.  The Court concluded that Plaintiff neither adequately alleged actual malice nor

indicated that he could possibly do so in an amended complaint:

> In sum, Couch's complaint contains none of the requisite evidence of actual
> malice needed to support a defamation claim:  Couch relies only on his own
> conclusory statements as to the defendants' knowledge of or recklessness toward
> the truthfulness of their statements, without providing the Court with any *factual
> basis* from which to draw the reasonable inference that defendants acted with
> actual malice.  Because Couch has neither included this factual basis in his
> Complaint nor indicated in any way that he would be able to do so if given the
> opportunity to amend his complaint, dismissal of each of the defamation claims
> against Isikoff and Verizon is warranted.

September 30 Opinion at 10-11 (emphasis in original, footnote omitted).

The Court's conclusion was consistent with the law of the D.C. Circuit and other

decisions from judges of this Court, all holding that specific facts—not just conclusions or rote

recitations of elements—must be pleaded in order to adequately allege actual malice at the

pleadings stage.  *See Tah v. Global Witness Publ'g, Inc.*, 991 F.3d 231, 240-43 (D.C. Cir. 2021)

(affirming district court's dismissal of complaint on actual malice grounds and simultaneous

closing of case—*i.e.,* foreclosing opportunity to amend—even though plaintiff advanced "four

specific arguments in support of their claim that [defendant] possessed actual malice"); *Nunes*,

513 F. Supp. 3d at 7-10 (rejecting conclusory allegations of actual malice and denying leave to

amend); *Arpaio v. Zucker,* 414 F. Supp. 3d 84, 91-94 (D.D.C. 2019) (Lamberth, J.)

(acknowledging that "the burden of putting forward articulable facts of actual malice is a

difficult one to meet, especially when discovery is not yet available to the parties," and then

dismissing complaint with prejudice in order to "vigorously protect the First Amendment rights

of journalists and the press"); *Tah v. Global Witness Publ'g, Inc.*, 413 F. Supp. 3d 1, 10-15

(D.D.C. 2019) (Collyer, J.) (dismissing complaint for failure to adequately allege actual malice and simultaneously closing case, *see* Case No. 1:18-cv-02109, Dkt. 22)*, aff'd,* 991 F.3d at 239-43; *Deripaska v. Associated Press*, 282 F. Supp. 3d 133, 140 (D.D.C. 2017) (Huvelle, J.) (rejecting argument that "alleging actual malice is unnecessary at this [pleading] stage" and dismissing complaint with prejudice based in part on plaintiff's failure to plead facts to show that defendant "acted with actual malice").

**b.     Plaintiff's Proposed Amendments Do Not Cure The Deficiencies In His Actual Malice Allegations**.

Plaintiff's Cross-Motion contends that the "new detail" in his proposed First Amended Complaint is designed "to address the Court's holding that the original Complaint did not adequately plead 'actual malice.'"  X-Mot. at vii.[1]  But the purported "detail" in his proposed First Amended Complaint is not new, does not provide additional *facts*, and does not adequately plead actual malice.

**i.     Plaintiff's Allegations Regarding The Steele Dossier Do Not Show Actual Malice By Defendants.**

Plaintiff's reference to the Steele Dossier does not set forth any new facts supporting an allegation of actual malice.  X-Mot. at xii; Dkt. 70-5 (Redline of Proposed First Amended Complaint ("FAC")), ¶¶ 30-33.  First, Plaintiff does not tie the Steele Dossier to anything reported in the Podcast, much less the purportedly defamatory statements about Plaintiff himself.

---

[1] Portions of the proposed First Amended Complaint are dedicated not to establishing actual malice, but to furthering Plaintiff's conspiracy theories impugning the character of murder victim Seth Rich.  *See, e.g.,* FAC, ¶ 42 (asserting there is "compelling evidence that Seth Rich had, in fact, been involved in transmitting DNC emails to Wikileaks").  In other words, Plaintiff is using the proposed First Amended Complaint as a vehicle to further smear a murder victim.  Large swaths of redline in the proposed First Amended Complaint are also dedicated to impugning the legitimacy of the Robert Mueller investigation—*i.e.*, more political rabble rousing that is unconnected to Defendants' alleged actual malice.  *See* FAC, ¶¶ 40-46.

In fact, nothing in the Podcast is derived from or relies upon any of the claims in the Steele Dossier.  As a result, the dossier has no direct bearing on Defendants' view toward the truth of any statements or purported implications about *Plaintiff*.  As the Court recognized when evaluating the original complaint:  "Couch also fails to allege—or even attempt to allege—that the defendants acted with actual malice as to the making of each individual statement, instead couching his allegations only in general terms.  *See Tavoulareas v. Piro*, 817 F.2d 762, 794 (D.C. Cir. 1987) ('[D]efamation plaintiffs cannot show actual malice in the abstract; they must demonstrate actual malice *in conjunction* with a false defamatory statement.')."  September 30 Opinion at 8 n.8 (emphasis in original).   Indeed, Plaintiff claims that the "general background" of the Steele Dossier should lead to an inference of recklessness by Defendants.  X-Mot. at xii.  But that is exactly the kind of inference this Court and others reject.

Second, Plaintiff points to the recent indictment of the alleged source of the Steele Dossier, while acknowledging that the source "had not yet been identified" at the time of publication and its bases "had not yet become apparent."  X-Mot. at xii, xlii; FAC, ¶ 33.  But actual malice is measured at the time of publication.  *Kahl v. Bureau of Nat'l Affairs, Inc.*, 856 F.3d 106, 118 (D.C. Cir. 2017) ("The actual malice inquiry focuses on the defendant's state of mind at the time of publication.").  In any event, for the reasons cited above, the source for the Steele Dossier is irrelevant to Plaintiff's claims of defamation.

Third, the oblique references to the Steele Dossier are not new.  They suffused the original complaint, (at ¶¶ 25-29, 34), and they are just as meaningless now as they were then, if not more so given Plaintiff's acknowledgment that the source and purported lies on which it was based were not "known" until after the Podcast was published.  X-Mot. at xlii.

ii.   **Plaintiff's Allegations Regarding Russian Involvement In The Seth Rich Conspiracy Do Not Show Actual Malice By Defendants.**

Plaintiff spends a great deal of his original Complaint and proposed amended complaint claiming that Michael Isikoff is the "real" conspiracy theorist even where Isikoff's supposedly erroneous theories have nothing to do with Plaintiff.  Plaintiff alleged in his original Complaint that the first two episodes of the Podcast falsely attributed Hillary Clinton's purported involvement in Seth Rich's death to Russian propaganda, and Plaintiff reiterates that narrative in his proposed First Amended Complaint.  *See, e.g.,* Complaint, ¶¶ 108-10; FAC, ¶¶ 50-61, 99-100, 111-12, 176; X-Mot. at xii-xiii, xv, xxii.  But Plaintiff fails to allege specific facts showing that Isikoff acted recklessly toward the truth about a Russian conspiracy.  Plaintiff's only suggestion that Isikoff might have known part of the first two episodes of the Podcast were supposedly wrong is because the *Washington Post* purportedly published an article *after* those episodes, questioning some of Isikoff's conclusions in the Podcast.  Plaintiff then speculates that, because Isikoff "lives in Washington D.C., [he] is presumably an avid reader of the Washington Post."  FAC, ¶¶ 60-61.  Those threadbare allegations ignore the fact that Isikoff's reporting about Russian government promotion of the Seth Rich conspiracy theories was based on interviews for the Podcast with Deborah Sines, the Assistant U.S. Attorney in charge of the investigation into Seth Rich's murder – *i.e.*, a person with firsthand knowledge of the impact those conspiracy theories had on the case.  *See, e.g.,* Dkt. 47-1 at 21-22, 36-37.

Most importantly, none of Plaintiff's allegations concerning the Russia conspiracy articulate the requisite clear and convincing evidence that Isikoff acted recklessly when reporting ***about Plaintiff***.  *See* September 30 Opinion at 8 n.8 (actual malice is not shown generally; it must be tied to allegedly defamatory statements); *Tah*, 991 F.3d at 240 (actual malice must be shown with clear and convincing evidence); *Fairbanks v. Roller*, 314 F. Supp. 3d 85, 93 (D.D.C.

2018) (McFadden, J.) (finding that complaint did not state a defamation claim where it "do[es] not provide clear and convincing evidence of actual malice").  Plaintiff is just using court filings to continue peddling his conspiracy theories, and trying desperately (and failing) to show Isikoff was wrong about something.  None of that establishes actual malice.

### iii.    Regurgitated Allegations That Defendant Isikoff "Fabricated" Quotations Still Do Not Show Actual Malice.

The Court already rejected Plaintiff's contention that Isikoff used "leading questions" to elicit allegedly false responses:  "this allegation fails because it is quintessentially conclusory: Plaintiff asserts a legal conclusion that Isikoff acted with actual malice but is unable to allege any factual premise that would support a finding that Isikoff knew *in fact* that the statements were false."  September 30 Opinion at 9 (emphasis in original).  Undeterred by the Court's holding, Plaintiff makes the same allegations again.  *See* X-Mot. at xiii-xiv, FAC, ¶¶ 80-92, 124, 130.

With respect to Joe Capone, Plaintiff acknowledges that the original Complaint contained the same passage from the Podcast interview with Capone concerning Capone's visit to the White House, but Plaintiff asserts that the amended complaint is different.  *See* X-Mot. at xiii-xv; Complaint, ¶¶ 105-06.  It is not different.  In the original Complaint, which the Court dismissed, Plaintiff alleged that the exchange between Isikoff and Capone about Plaintiff was "a total fabrication."  Complaint, ¶ 107.  Plaintiff now claims—as if it were new—that Isikoff was "fabricating" the same exchange with Capone.  X-Mot. at xiv; *see also* FAC, ¶¶ 80-81.  In both complaints, there is no factual basis for Plaintiff's assertions that Isikoff knew what Capone was saying was false—and plenty of evidence that they were entirely accurate.[2]

---

[2] Plaintiff repeatedly stated that Capone was a "person of interest" in the Seth Rich murder investigation, and Plaintiff repeatedly pointed to Capone's visit to the White House just before the murder to back up this claim.  *See* Dkt. 54, Ex. J.

Plaintiff also doubles down on the precise allegations that the Court already rejected as to Mark Mueller.  The Court held that it was not reasonable for Plaintiff to allege that the Podcast implied that Plaintiff personally superimposed Mueller's face onto pictures of serial killer Jeffrey Dahmer and "doxed" Mueller and his family.  September 30 Opinion at 9.  The Court further held, "the claim also fails because Plaintiff once again fails to plead sufficient facts from which this Court could infer that Isikoff or any defendant knew the falsity of the statement."  *Id.* Plaintiff ignores the Court's holding on both of these points, insisting that the implication is reasonable and reiterating that Isikoff must have known the nonexistent implications were false because Isikoff said he "reviewed thousands of Seth Rich-related emails."  X-Mot. at xvi-xxi. Plaintiff does not – and cannot – explain how Isikoff's review of "Seth Rich-related emails" should have convinced him that an implication Isikoff neither intended nor made was knowingly false.  Even if the implication were reasonable—which Defendants do not concede—Plaintiff returns to a familiar refrain, calling it "wild and outrageous" to suggest that Plaintiff superimposed Mueller's face on Dahmer or "doxed" Mueller.  X-Mot. at xvi-xvii; *see also* September 30 Opinion at 8 (rejecting Plaintiff's conclusory allegation that statements were "'wild' and a 'departure from reality'" as a basis to show actual malice).  There is no dispute that *someone* did those things, and Plaintiff does not explain why it would be obviously false to think he—who clearly traffics in conspiracy theories and had to retract and apologize for his horrific treatment of Aaron Rich—might be capable of such things.

In an apparent effort to support his theory that Isikoff knew the passages concerning Capone and Mueller were false, Plaintiff alleges that Isikoff failed to conduct an independent investigation into their comments.  X-Mot. at xv-xxii.  Such allegations disregard this Court's repeated holding that "a claim that a defendant did not independently verify published

13

statements, without any independent reason to doubt such statements, is not sufficient to show

actual malice."  September 30 Opinion at 9-10 (citing *Tavoulareas*, 817 F.2d at 798); *id.* at 8.[3]

Plaintiff still offers no *factual* basis or reason for Defendants to doubt what Capone and Mueller

recounted.

iv.      **General Allegations About Defendant Isikoff's
Reporting And Defendants' Alleged Bias Do Not Show Actual
Malice.**

Isikoff is an award-winning investigative journalist.  Plaintiff is a blogger and tweeter

who recently had to retract and apologize for his spectacularly bad "reporting" concerning the

murder of Seth Rich and his gross mistreatment of Seth's brother, Aaron Rich, and the Rich

family.  Nevertheless, Plaintiff—without any foundation or sense of irony—claims that

"recklessness is a fundamental trait of [Isikoff's] journalism" and "Isikoff simply does not care

about facts.  He is a political operative and uses people as fodder for his theories, however

baseless or unsupported[.]"  X-Mot. at xii; FAC, ¶ 62.  Plaintiff's unfounded, unwarranted and

petty missives about Isikoff are akin to the smears in Plaintiff's original papers that Isikoff is a

"'shameless partisan hack'" who is allegedly "motivated to lie about Plaintiff."  *See* September

30 Opinion at 10.  The Court rejected Plaintiff's previous request that the Court use such

allegations to draw an inference of actual malice, calling it "wholly inappropriate" as "courts

have repeatedly held that evidence of bias or even a preconceived agenda, alone, cannot support

a claim of actual malice."  *Id.* (citing *Tavoulareas*, 817 F.2d at 795 and *Arpaio*, 414 F.Supp.3d at

---

[3] *See also St. Amant v. Thompson*, 390 U.S. 727, 733 (1968); *Tavoulareas,* 817 F.2d at 798 ("we cannot agree that an allegation of insufficient investigation may itself constitute the very proof of the 'serious doubts' that is separately required" to show actual malice); *OAO Alfa Bank v. Center for Public Integrity*, 387 F. Supp. 2d 20, 53 (D.D.C. 2005) (Bates, J.) (failure to investigate is not evidence of actual malice, since "a plaintiff will always be able to point to ways in which the defendant could have pursued another lead or sought another piece of corroborating evidence").

92).  Moreover, a speaker's alleged "failure to meet an objective standard of reasonableness is insufficient; rather the speaker must have actually harbored subjective doubt." *Tah*, 991 F.3d at 240 (internal quotation marks and citation omitted).  The same rules apply here.  Plaintiff's unfounded vitriol for Isikoff does nothing to establish that Isikoff harbored actual malice.

### c.    Amendment Is Also Futile Because Plaintiff's Defamation Claims Are Barred For Several Reasons Besides The Failure To Adequately Allege Actual Malice.

Plaintiff acknowledges that his proposed amendments are directed "to address the Court's holding that the original Complaint did not adequately plead 'actual malice' [and] changes in the corporate structure of Yahoo," and not to any other issues.  X-Mot. at vii.  Plaintiff made no effort in his proposed FAC to address the many other defects noted by the Court that would warrant dismissal beyond Plaintiff's failure to allege actual malice.  For example, the Court noted that "the statements underpinning" Plaintiff's claims: cannot reasonably be implied; qualify as fair comment; do not contain verifiable facts; if verifiable, are substantially true; and/or do not carry a defamatory meaning.  September 30 Opinion at 11 n.9.  "And some of the statements," the Court further stated, "cannot support a defamation claim for more than one of these reasons." *Id.*  In other words, even if Plaintiff adequately pleaded actual malice in his proposed amended complaint—which Defendants dispute—his proposed First Amended Complaint is futile because Plaintiff's defamation claims would still fail and warrant dismissal for many other reasons.  *See* Dkt. 46 at 8-29.[4]

---

[4] Although the Cross Motion for leave to amend focuses on actual malice and corporate structure as to Defendants, X-Mot. at vii, there are a couple of tangents where it fruitlessly discusses individual statements and alleged implications.  First, Plaintiff argues with the Court's holding that the Podcast does not reasonably imply that Plaintiff personally superimposed Mark Mueller's face onto pictures of Jeffrey Dahmer and "doxed" Mueller and his family.  *Compare* September 30 Opinion at 9 *with* X-Mot. at xvii-xxiii.  Plaintiff did not seek reconsideration of the Court's ruling, he just tries to convince the Court that it was wrong in his Cross Motion.  *Id.*  The Court was not wrong, and no amount of reparsing of the Podcast itself should change the Court's

Even if Plaintiff tried to address all of the additional reasons his defamation claims against Defendants fail, which he admittedly does not do, no degree of amendment could possibly cure the defects identified by Defendants and the Court.  *See* September 30 Opinion at 11 n.9; Dkt. 46 at 8-29, App'x A.  The Podcast says what it says.  All of the statements and alleged implications are protected as fair comment, and none conveys verifiable statements of fact.  Furthermore, several of the alleged implications are not there, do not carry a defamatory meaning and/or are substantially true regardless of how Plaintiff may want to characterize them.  No amendment could change any of the foregoing, and thus Plaintiff's claims are all doomed to fail.

### d.   Plaintiff's Proposed Amended Complaint Also Cannot Salvage Plaintiff's Ancillary Claims.

The Court previously ruled that all of Plaintiff's remaining causes of action against Defendants should be dismissed, holding that "each of these ancillary claims are either inherently tied to, or duplicative of, Plaintiff's primary defamation claim, and for that reason they fail alongside the defamation claim."  September 30 Opinion at 11-14.  The defamation *per se* claim mirrors the defamation claim and is subject to the same First Amendment protections, including actual malice.  *Id.* at 11-12.  Plaintiff acknowledges that if he cannot cure the actual malice pleading defects—which he cannot and does not—then he cannot support his claims.  X-Mot. at xxxii.

---

conclusion that the alleged implications about Mueller are not reasonably drawn from the Podcast itself.  Second, Plaintiff briefly restates his objection to being called a "troll."  X-Mot. at xxx-xxxi.  That language, in the context of a heated exchange about conspiracy theories, including Plaintiff's reckless statements about the Rich family, are clearly protected as non-actionable opinion and rhetorical hyperbole.  *See* Dkt. 46 at 22-23.

The Court ruled that "Plaintiff's intentional infliction of emotional distress, false light, and intentional interference with business relations claims are wholly duplicative of his defamation claims." September 30 Opinion at 12.  Nothing about the proposed First Amended Complaint changes this conclusion.  Even in the First Amended Complaint, these ancillary claims are still based on Defendants' *same alleged conduct* as the defamation claims and, therefore, are similarly doomed to fail.  FAC, ¶¶ 135-152.[5]

The Court previously determined that Plaintiff's counts alleging civil conspiracy and aiding and abetting fail for two reasons.  September 30 Opinion at 12-13.  First, no such independent torts are recognized in the District of Columbia—a basic legal point that Plaintiff simply ignores.  *Id.* at 12 n.10.  Second, these secondary liability claims fail because "Plaintiff has failed to adequately plead a claim giving rise to primary liability under any of his stated theories, including defamation."  *Id.* at 12-13.  Plaintiff acknowledges that these secondary liability claims are still based on the "same underlying facts" as the defamation claims.  X-Mot. at xxxv.  And indeed they are.  *See* FAC, ¶¶ 154-160, 171-172.[6]

Finally, the Court already held that Plaintiff has no viable claim for negligent supervision and retention because there is no "predicate tort," and, separately, because he failed to "identify and plead any separate common law duty applicable to Verizon that would form the basis for this cause of action."  September 30 Opinion at 13-14.  Plaintiff does not—because he cannot—fix the first defect because he still has no viable predicate tort.  Plaintiff makes no effort to address

---

[5] Plaintiff throws in an allegation that Defendants interfered with his t-shirt selling business, but that, like everything else, is just based on Defendants' speech, which is protected.  *Id.*, ¶ 150.

[6] Plaintiff adds allegations about Verizon's business structure and transactions that are not allegedly tortious on their own, but only as Plaintiff implausibly alleges they relate to Defendants' purported speech about him.  FAC, ¶¶ 164-170.

the second defect in his proposed amended complaint.  *See* FAC, ¶¶ 174-200.  Thus, this claim, along with the other ancillary claims, and underlying claims, is futile.

## IV.    PLAINTIFF'S PROPOSED AMENDMENT TO ADD NEW DEFENDANTS DOES NOT JUSTIFY GRANTING LEAVE TO AMEND.

Defendant Verizon Communications Inc.'s sale of Yahoo (formerly known as Verizon Media) to funds managed by affiliates of Apollo Global Management Inc. during the pendency of the Court's consideration of Defendants' motion to dismiss does not alter in any way the Court's substantive ruling that Plaintiff failed to state a claim for which relief can be granted. Thus, Plaintiff's argument that he should be given leave to amend to add new defendants and to be allowed to conduct discovery about the corporate structure of these defendants is merely a diversion.  Plaintiff's claims fail whether the defendant is Michael Isikoff, Verizon Communications Inc., Yahoo, Apollo, or some unnamed Doe defendant.

Plaintiff correctly points out that in the Defendants' motion to dismiss, Defendants argued that defendant Verizon Communications Inc. should be dismissed for the additional and separate reason that Verizon Communications Inc. was the wrong entity and is merely the parent company of Oath Inc. (now known as Yahoo Inc.), which is the entity that offered the Podcast series alleged in Plaintiff's complaint.  Dkt. 46, at 42.  The Court declined to address Verizon Communication Inc.'s argument that it is an improper defendant because the Court dismissed Plaintiff's claims on several substantive grounds.  September 30 Opinion at 14 n.11 ("I do not address Verizon's argument that it is an improper defendant, . . . due to my dismissal of Plaintiff's claims.").

The Court should similarly reject Plaintiff's request for leave to amend to add new defendants here because Plaintiff's substantive arguments fail regardless of the named defendant. The Court should deny Plaintiff's cross motion because there is no justification to add new

parties to this case, and discovery into the corporate structure of any new defendants would not revive Plaintiff's failed claims.

## V.     CONCLUSION

For all the foregoing reasons, the Court should deny Plaintiff's Cross Motion for Leave to File a First Amended Complaint and to Conduct Discovery.

DATED:  January 18, 2022

Respectfully submitted,

*/s/ Jean-Paul Jassy*
Jean-Paul Jassy (Admitted *Pro Hac Vice*)
William T. Um (Admitted *Pro Hac Vice*)
**JASSY VICK CAROLAN LLP**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (310) 870-7048
Facsimile: (310) 870-7010
jpjassy@jassyvick.com
wum@jassyvick.com

Laura C. Fraher (DC Bar No. 979720)
**SHAPIRO, LIFSCHITZ & SCHRAM P.C.**
1742 N Street NW
Washington, DC 20036
Telephone: (202) 689-1900
Facsimile: (202) 689-1901
fraher@slslaw.com

*Attorneys for Defendants Verizon Communications Inc. and Michael Isikoff*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 18, 2022, a copy of the foregoing **Defendants Verizon Communications Inc. and Michael Isikoff's Opposition to Plaintiff Matthew Couch's Cross Motion for Leave to File a First Amended Complaint and Conduct Discovery** was electronically filed through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Eden P. Quainton                                              *Attorneys for Plaintiff*
QUAINTON LAW, PLLC                                   *Matthew Couch*
2 Park Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 419-0575
Email: equainton@dunnington.com

David J. Bodney                                               *Attorneys for Defendant*
BALLARD SPAHR LLP                                     *National Public Radio, Inc.*
1 East Washington Street, Suite 2300
Phoenix, AZ 85004
Telephone: (602) 798-5454
Email: bodneyd@ballardspahr.com

Matthew E. Kelley
BALLARD SPAHR LLP
1909 K Street, NW, 12th Floor
Washington, DC 20006
Telephone: (202) 508-1112
Email: kelleym@ballardspahr.com

　　　　　　　　　　　*/s/ Jean-Paul Jassy*
　　　　　　　　　　　Jean-Paul Jassy (Admitted *Pro Hac Vice*)
　　　　　　　　　　　William T. Um (Admitted *Pro Hac Vice*)
　　　　　　　　　　　**JASSY VICK CAROLAN LLP**
　　　　　　　　　　　355 South Grand Avenue, Suite 2450
　　　　　　　　　　　Los Angeles, CA 90071
　　　　　　　　　　　Telephone: (310) 870-7048
　　　　　　　　　　　Facsimile: (310) 870-7010
　　　　　　　　　　　jpjassy@jassyvick.com
　　　　　　　　　　　wum@jassyvick.com

　　　　　　　　　　　*Attorneys for Defendants Verizon Communications Inc. and Michael Isikoff*