## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MATTHEW COUCH,　　　　　　　 )
　　　　　　　　　　　　　　　　 )
　　　　**Plaintiff,**　　　　　　 )
　　　　　　　　　　　　　　　　 )
　　　**v.**　　　　　　　　　　　 )　　　　**Civil Case No. 20-2151 (RJL)**
　　　　　　　　　　　　　　　　 )
VERIZON COMMUNICATIONS,　 )
INC., *et al.*　　　　　　　　　　 )
　　　　　　　　　　　　　　　　 )
　　　　**Defendants.**　　　　　 )

### MEMORANDUM OPINION
(July **29**, 2022) [Dkt. ## 64, 70]

Plaintiff Matthew Couch ("Couch") originally brought this action against defendants Verizon Communications Inc. ("Verizon"), Michael Isikoff ("Isikoff"), National Public Radio, Inc. ("NPR"), Aaron Rich, Deborah Sines ("Sines"), Joe Capone ("Capone"), and Mark Mueller ("Mueller"), asserting a number of tort claims centered on allegedly defamatory remarks made by the defendants on a podcast series and related media appearances.[1]  Earlier, I granted a motion to dismiss by Isikoff and Verizon for failure to state a claim, finding that Couch's complaint did not allege that the defendants acted with the requisite malice in making the challenged statements.  Defendant NPR, which did not move to dismiss for failure to state a claim, now moves for judgment on the pleadings, seeking dismissal of Couch's claims on several bases, including those on which I granted

---

[1] Plaintiff's claims against Rich, Sines, and Mueller were previously voluntarily dismissed.  *See* Pl.'s Not. of Voluntary Dismissal [Dkt. # 42]; Pl.'s Not. of Voluntary Dismissal [Dkt. # 50].  These defendants, along with Capone, are not named in Couch's proposed First Amended Complaint.  *See* Pl.'s Cross-Mot. for Leave to Amend Complaint, Ex. E, Proposed First Amended Complaint [Dkt. # 70-6].  The proposed new complaint would add Yahoo, Apollo Global Management, Inc., and a "John Doe, LLP" as defendants.  *Id.*

the earlier motion as to Isikoff and Verizon.  Couch, meanwhile, has cross-moved to amend

his complaint pursuant to Federal Rule of Civil Procedure 15, seeking leave to file a new

complaint that purportedly cures the defects identified in my earlier opinion.  Upon

consideration of the pleadings and the relevant law, and for the reasons stated below, I find

that NPR is entitled to judgment on the pleadings as to Couch's original complaint and that

allowing Couch to amend his complaint would be futile, because his proposed amended

complaint fails once more to sufficiently plead actual malice and accordingly fails to state

a claim.  Accordingly, NPR's motion for judgment on the pleadings is **GRANTED**,

Couch's motion for leave to file an amended complaint is **DENIED**, and this case is

**DISMISSED** with prejudice.

## BACKGROUND

### a. Factual Background

The background facts giving rise to this case were described in detail in my previous

opinion, *see Couch v. Verizon Comm'ns, Inc.*, No. 20-cv-2151, 2021 WL 4476698, at *1–

2 (D.D.C. Sept. 30, 2021), but for ease of reference those relevant to this decision are again

briefly recounted here.[2]  In the aftermath of the as-yet unsolved murder of Democratic

National Committee ("DNC") staffer Seth Rich in Washington, D.C. in the early morning

of July 10, 2016, a number of individuals began to publicly speculate and theorize that

Rich's murder bore some connection to the 2016 presidential election, and particularly to

---

[2] The facts are drawn from Couch's operative Complaint as well as his proposed First Amended Complaint ("Proposed FAC"), which are assumed to be true for purposes of adjudicating both NPR's motion for judgment on the pleadings as well as Couch's cross-motion for leave to file the Proposed FAC, respectively.

the hack of DNC emails and their leak to Wikileaks that summer.  *See* Compl. ¶¶ 1, 37 [Dkt. # 1].[3]  Plaintiff Couch was among those individuals.  Couch claims that he published a widely read blog at the time and also had a Twitter account with a large following.[4] Couch used those platforms to disseminate his views that Rich "may have downloaded DNC emails and transferred the emails and other data to Wikileaks and received payment in exchange for such data from Wikileaks" and that there were "many anomalies in the reporting on the murder of Seth Rich."  Pl.'s Cross-Mot. for Leave to Amend Complaint, Ex. E, Proposed First Amended Complaint (hereinafter "Proposed FAC"), ¶¶ 1, 6–7, 41 [Dkt. # 70-6]; *see also* Compl. ¶¶ 3, 37.

In July and August 2019, Isikoff hosted a six-part podcast series entitled *Conspiracyland*, over the course of which Isikoff and a variety of guests discussed the murder and various conspiracy theories that had taken root in its aftermath.  *See* Proposed FAC ¶¶ 1–2.[5]  In the sixth episode and in a bonus episode of the podcast, released in August, Isikoff and his guests specifically discussed Couch, recounting and challenging Couch's claims alleging a connection between Aaron Rich and his brother Seth's murder. *See id.* ¶¶ 63–96, 113–125; *see also* Ex. A to Defs.' Mot. to Take Judicial Notice at 11:11– 16:19 (Certified Transcript of *Conspiracyland* Episode 6) [Dkt. # 47].

---

[3] As this Court has noted previously, D.C. law enforcement officials believe that Rich was killed during a botched robbery.  *See Bauman v. Butowsky*, 377 F. Supp. 3d 1, 4 (D.D.C. 2019).

[4] Couch's Twitter account has since been suspended.  *See* @RealMattCouch, TWITTER, https://twitter.com/ RealMattCouch.

[5] The podcast series was published by *Yahoo!News*, which at the time was a subsidiary of defendant Verizon. *See* Proposed FAC ¶¶ 1, 11–14.

Case 1:20-cv-02151-RJL   Document 76   Filed 07/29/22   Page 4 of 13

As relevant to Couch's allegations, Isikoff spoke with defendant Capone about how Couch and others identified that Capone had visited the White House a few days prior to Seth Rich's murder. Capone was a manager of the bar Seth Rich had visited the night he was killed and was also his friend. Isikoff and Capone discussed how the White House visit had been the basis for claims that Capone had met and conspired with then-candidate Hilary Clinton, or her aides, regarding the murder. Ex. A to Defs.' Mot. to Take Judicial Notice at 19:20–21:19. Isikoff also spoke with Seth Rich's former neighbor, Mark Mueller. Mueller stated that his address and telephone number were posted on the internet; his face had been superimposed on pictures of serial killer Jeffrey Dahmer; and he had come to believe that people were seeking to rent his basement apartment as a pretext to privately investigate the murder. *Id.* at 21:20–23:7. During the podcast, Isikoff and his guests referred to Couch as a "conspiracy entrepreneur," a "troll," and a "crankster." *Id.* at 7:5, 11:16, 16:7. Isikoff also noted that Couch and a "confederate" had read aloud a letter from Aaron Rich while the two men were live-streaming to Couch's followers on Twitter's Periscope service. *Id.* at 14:20–25.

Finally, shortly after publication of the podcast, Isikoff was interviewed on *Fresh Air*, a radio program broadcast by defendant NPR, during which Isikoff and the host discussed the podcast's contents and claims in general terms. *See* Proposed FAC ¶¶ 97–112; *see also* Ex. A to Decl. of Matthew E. Kelley (transcript of *Fresh Air* episode featuring Isikoff) [Dkt. # 64-2]. As relevant here, Isikoff summarized the sixth episode by noting that Couch and "the Internet horde" had discovered that Capone had been to the White House days before Seth Rich's death, and that this prompted them—Couch and the

"horde"— to "say, a-ha, you see, why is Joe Capone going to the White House just a few days before Seth Rich's death? He must have been consulting with somebody, aides to Hillary Clinton, and this somehow had something to do with Seth Rich's death." Proposed FAC ¶ 105; *see also id.* ¶¶ 102–108. Isikoff also notes again that Mueller was "compared to Jeffrey Dahmer." *Id.* ¶¶ 109–110.

In his proposed FAC, Couch identifies fourteen allegedly defamatory statements and "implications" made during the course of the above-described programming. *Id.* ¶ 116(a)–(n). These statements were that Couch: (1) "asserted that Joe Capone met with Hilary Clinton or aides to Hilary Clinton in the days before Seth Rich's murder;" (2) "asserted that Joe Capone 'conspired' with Hilary Clinton or aides to Hilary Clinton;" (3) "implied that Couch advanced the conspiracy theory that Hilary Clinton Murdered Seth Rich;" (4) "'doxed' Mark Mueller [Seth's neighbor] by publishing the addresses and phone numbers of his siblings and neighbors;" (5) "superimposed Mr. Mueller's head on pictures of serial killer Jeffrey Dahmer and Dexter;" (6) "sought to rent out Mr. Mueller's basement room to gain access to documents relating to Seth Rich;" (7) "harassed Mueller by relentless phone calls and emails;" (8) "asserted that Mueller and Capone were complicit in a 'cover-up;'" (9) "was an Internet 'conspiracy entrepreneur;'" (10) "was an 'Internet troll;'" (11) "was an 'Internet crankster;'" (12) "was an 'Internet bully;'" (13) "was a member of the 'alt-right;'" and (14) "was an associate of a Southern 'confederate.'" *Id.* In addition to his primary defamation claim, Couch also includes claims of defamation per se, intentional infliction of emotional distress, false light, intentional interference with business relations, civil conspiracy (as to Isikoff, Verizon, Yahoo, and NPR), aiding and

abetting (as to Verizon, Yahoo, and NPR), and negligent supervision and retention (as to Yahoo and NPR). *Id.* ¶¶ 126–200.

### b. Procedural History

Couch filed his initial complaint in August 2020.  Shortly thereafter, Verizon and Isikoff moved to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).  I granted that motion in September 2021, finding that Couch had failed to allege facts sufficient to show the defendants acted with actual malice as required to sustain a defamation claim, and that his other claims were dependent on or duplicative of the defamation claim. *See Couch*, 2021 WL 4476698 at *4–5. At the same time, I denied separate motions to dismiss brought by Verizon, Isikoff, and NPR pursuant to Rule 12(b)(5) based on Couch's failure to serve them within the time period prescribed by the Federal Rules. *See* Minute Order, Sept. 30, 2021.  NPR thereafter moved for judgment on the pleadings in October 2021, arguing that Couch's complaint did not state a cognizable claim against NPR, including for the reasons I granted Isikoff and Verizon's Rule 12(b)(6) motion. *See* NPR Mot. for J. on the Pleadings [Dkt. # 64] ("NPR Mot."). Couch opposed NPR's motion while simultaneously cross-moving for leave to file an amended complaint in an attempt to fix the defects identified in his initial complaint.  He also moved to conduct initial discovery as to the current owner of Yahoo. *See* Pl.'s Mot. Cross-Mot. to Amend/Correct Compl. & Mot. to Conduct Initial Discovery ("Pl.'s Cross-Mot.") [Dkt. # 70].  NPR, as well as Isikoff and Verizon, opposed Couch's cross-motion, primarily arguing that amendment would be futile because the Proposed FAC still does not state a claim for defamation.  Both NPR's motion for judgment on the pleadings as to

Couch's initial complaint and Couch's motion for leave to file his Proposed FAC are now pending before me.

## LEGAL STANDARD

Both motions before me are subject to effectively the same legal standard, albeit applied to different pleadings in this case—NPR's motion asks for judgment on Couch's initial, extant complaint, while NPR, Verizon, and Isikoff oppose Couch's cross-motion for leave to file his new Proposed FAC.  A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is reviewed as if it were a Rule 12(b)(6) motion to dismiss for failure to state a claim, meaning that the Court should "accept as true the allegations in the opponent's pleadings" and "accord the benefit of all reasonable inferences to the non-moving party."  *Stewart v. Evans*, 275 F.3d 1126, 1132 (D.C. Cir. 2002); *see also Rollins v. Wackenhut Servs.*, 703 F.3d 122, 129–30 (D.C. Cir. 2016).  If, having done so, the Court finds that the Complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" then entry of judgment in favor of the moving party is appropriate.  *Rollins*, 703 F.3d at 129 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Likewise, defendants' principal objection to Couch's motion for leave to file an amended complaint pursuant to Federal Rule of Civil Procedure 15(a) is that doing so would be futile.[6]  Though Rule 15 has been construed to limit the discretion of the Court

---

[6] Defendants Isikoff and Verizon further object that Couch's proposed amendment would be untimely and prejudicial, given that Couch filed his cross-motion several weeks after the Court granted their motion to dismiss.  *See* Defs. Verizon and Isikoff's Opp. to Cross-Mot. for Leave to File First Am. Compl. at 5–6 [Dkt. # 74].  However,

to deny leave to amend, *see, e.g., Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1083–84 (D.C. Cir. 1998), it is nonetheless well established that a Court may do so in circumstances where a proposed amended complaint "would not survive a motion to dismiss," *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085 (D.C. Cir. 1996); *see also* 6 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 1487 (3d ed. 2021) ("[I]f a complaint as amended could not withstand a motion to dismiss or summary judgment, then the amendment should be denied as futile."). Adjudication of Couch's motion for leave to amend thus requires the Court to evaluate whether the Proposed FAC "state[s] a claim to relief that is plausible on its face," again taking the allegations of the Proposed FAC as true and drawing all reasonable inferences from those facts in Couch's favor. *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### a. NPR's Motion for Judgment on the Pleadings

First, NPR moves for entry of judgment on the pleadings in its favor as to Couch's initial complaint. In that complaint, Couch included claims against NPR of defamation, defamation per se, intentional infliction of emotional distress, false light, intentional interference with business relations, conspiracy, aiding and abetting, and negligent supervision and retention. *See generally* Compl. NPR argues, among other things, that judgment in its favor on all but the negligence claims is compelled by my earlier decision as to Isikoff and Verizon, as each of those claims against NPR ultimately is predicated on

---

because, as discussed below, I find that amendment would be futile, I need not address whether Couch's cross-motion could also be denied on this additional basis.

the same showing of actual malice that I already found to be deficient as to the other defendants. *See* NPR Mot. at 5–9. I agree.

Couch's allegations against NPR regarding actual malice are indeed even weaker than those against Verizon and Isikoff, with Couch alleging only that NPR "displayed a reckless disregard for the truth in not subjecting Isikoff's statements to any scrutiny [and] blindly repeated his claims without any fact-checking," Compl. ¶ 133. Couch provides no factual basis to conclude that NPR knew—or should have known—that anything Isikoff was saying was false, and NPR's alleged failure to independently investigate each of Isikoff's statements, especially after they had already been published by a separate reputable source, cannot alone support a finding of actual malice. *See, e.g.*, *Tavoulareas v. Piro*, 817 F.2d 762, 798 (D.C. Cir. 1987); *see also Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1298 (D.C. Cir. 1988). In sum, Couch's allegations against NPR fail to establish actual malice, and, as with the other defendants, this failure dooms not only Couch's defamation claim, but also all of Couch's other claims except for negligent supervision and retention. *See Couch*, 2021 WL 4476698 at *5–6. As to that latter claim, Couch was required to allege either that NPR or its employee, Terry Gross, committed a tort or otherwise owed and breached a legal duty to Couch. *See Griffin v. Acacia Life Ins. Co.*, 925 A.2d 564, 576 (D.C. 2007). As discussed above, Couch did not allege a cognizable defamation claim, nor any other tort claim, and Couch does not allege any legal duty owed by journalists to their subjects that would form the basis for a negligence claim distinct from the alleged intentional torts here, including defamation, *see, e.g.*, *Teltschik v. Williams & Jensen, PLLC*, 748 F.3d 1285, 1288 (D.C. Cir. 2014) ("[P]laintiffs complaining

about a defamatory statement cannot end-run the requirements for a defamation claim by pleading it as a negligence claim."). In sum, Couch's initial Complaint failed to state a claim against NPR, and judgment on the pleadings in favor of NPR is therefore appropriate.[7]

### b. Couch's Cross-Motion for Leave to File the Proposed FAC

Turning, then, to Couch's cross-motion, I find that the Proposed FAC once more fails to state a cognizable claim of defamation (or of any other tort), and thus leave to file the Proposed FAC must be denied as futile.

Couch's Proposed FAC undoubtedly contains a substantial quantity of new information. The trouble for Couch, however, is that none of his various new allegations and added context, even taken all together, comprise a legally sufficient pleading of actual malice.[8] Indeed, much of the new information only doubles down on the generalized attacks on Isikoff's credibility contained in the first complaint, which I found could not alone support the kind of "inference of actual malice" Couch sought. *See Couch*, 2021 WL 4476698 at *5; *see also, e.g.*, *Tah v. Global Witness Publ'g, Inc.*, 991 F.3d 231, 240–43 (D.C. Cir. 2021). Couch does not include any new facts sufficient to show that Isikoff or any other defendant made a statement about him "with knowledge that it was false or with

---

[7] Indeed, Couch does not particularly contest this outcome, even as he technically filed an opposition to NPR's motion in the course of filing his cross-motion for leave to amend the Complaint. In that filing, Couch states that "if the Court denies [Couch's] Cross-Mot., it should grant [NPR's] Mot. for JOP and enter a final order so that Plaintiff can pursue his rights on appeal." Pl.'s Cross-Mot. at 3. In effect, then, Couch has abandoned his initial Complaint in favor of his Proposed FAC, and the arguments presented in Couch's cross-motion accordingly focus entirely on the Proposed FAC.

[8] As noted in my earlier decision, Couch conceded that he was at least a limited-purpose public figure in regards to the Seth Rich controversy, and thus is required to plead actual malice in order to sustain a defamation claim. *See Couch*, 2021 WL 4476698, at *3 & n.7.

reckless disregard of whether it was false or not," *Tah*, 991 F.3d at 240, choosing instead to supplement the initial complaint with allegations concerning Isikoff's partisan bias and relationship with the so-called Steele Dossier and the special counsel investigation into the 2016 election conducted by Robert Mueller, *see, e.g.*, Proposed FAC ¶¶ 30–33, 40–46. Couch draws on these allegations to attack Isikoff's "journalistic standards," *id.* ¶ 33, as well as to explain why Isikoff would have "personal reasons to attempt to discredit or destroy conservatives such as Plaintiff," *id.* ¶ 34.   But, as I explained in my previous opinion, what Couch thinks of Isikoff's journalism or his purported animosity towards Couch, without more, is ultimately irrelevant to pleading actual malice. *Couch*, 2021 WL 4476698 at *5 (citing *Arpaio v. Zucker*, 414 F. Supp. 3d 84, 91 (D.D.C. 2019)).

Couch does introduce two new allegations in the Proposed FAC that are not merely further generalized attacks on Isikoff's credibility.  First, Couch states that an investigative journalist, Seymour Hersh, had previously claimed that Seth Rich had been in touch with Wikileaks. *See* Proposed FAC ¶¶ 7–8, 41–42.  And second, Couch points to an article in the Washington Post, published shortly after the initial two episodes of *Conspiracyland*, that challenged some of Isikoff's reporting in those first two episodes involving Russian involvement in the speculation around Rich's murder.  *See id.* ¶¶ 60–61, 100.  Couch appears to contend, in effect, that both of these sources should have put Isikoff on notice that his reporting was wrong.  *See, e.g.*, *id.* ¶ 61 ("Isikoff's insistence on pursuing a debunked narrative in the face of facts to the contrary reveals his willingness to operate in reckless disregard of the truth.").  But even crediting Couch's allegations that Isikoff would be aware of both the Hersh claims and Washington Post article, Couch's attempt to use

both as evidence that Isikoff knew his statements *about Couch* were false is a bridge to nowhere.  Couch does not, and cannot, show how either piece of information shows the falsity of any of the fourteen challenged statements underpinning Couch's defamation claim.  Instead, these allegations, like those discussed above, ultimately serve no purpose other than to further attempt to paint Isikoff as biased or intent on presenting a preconceived narrative.[9]  And regardless of whether that view of Isikoff's reporting is an accurate one, it alone cannot comprise the basis for Couch's defamation claim against Isikoff or any of the other defendants named in the Proposed FAC.

In sum, then, Couch's Proposed FAC fails to cure the defect identified in my previous opinion, as it still lacks allegations sufficient to show that Isikoff, much less any of the other defendants, acted with actual malice in making any of the statements Couch identifies as defamatory.[10]  And because, as explained in my prior opinion, that failure ultimately dooms not only the defamation claims, but also all of Couch's other claims, *see Couch*, 2021 WL 4476698, at *5–6,[11] Couch's Proposed FAC would not survive a motion to dismiss.  Granting Couch leave to file the Proposed FAC would therefore be futile.

---

[9] Couch once more also points to Isikoff's interview style on the podcast, which he claims leads to Isikoff eliciting statements that he knows to be false, as a basis for inferring actual malice, *see, e.g.*, Proposed FAC ¶¶ 80–81, but I rejected this argument previously as conclusory, and Couch provides no reason to alter that conclusion.  *See Couch*, 2021 WL 4476698, at *4.

[10] I once again conclude that the lack of allegations to support a finding of actual malice is sufficient to conclude that the Proposed FAC does not state a defamation claim and dispose of the motions pending before me. Defendants have raised a number of other bases on which the Court could dismiss Couch's defamation claims— including that many of the statements cannot reasonably be implied from the podcast, are not of verifiable facts, are substantially true, or do not carry a defamatory meaning—but I need not and do not address each of those other arguments here.

[11] As I noted in the prior decision and above, all of Couch's claims of intentional torts are inherently intertwined with the defamation claims.  His negligent supervision and retention claim fails because, in addition to the

## **CONCLUSION**

For the foregoing reasons, NPR's motion for judgment on the pleadings as to Couch's complaint is **GRANTED**, Couch's cross-motion for leave to file an amended complaint and to conduct initial discovery is **DENIED**, and this case is **DISMISSED WITH PREJUDICE** as to all remaining defendants. A separate order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge

---

failure to plead an independent tort, Couch has not identified a duty owed by any defendant to him that was breached so as to sustain a claim of negligence.